```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
JONATHAN BANYAN,                                                   :
                                                                   :
                                  Plaintiff,                       :
                                                                   :         17-cv-4942 (LJL)
                  -v-                                              :
                                                                   :         OPINION & ORDER
POLICE OFFICER CRAIG SIKORSKI, POLICE                              :
OFFICER JOSEPH TENNARIELLO, LIEUTENANT                             :
IAN RULE, SERGEANT JOHN BECERRA, ESU                               :
OFFICER PAUL BRAUER, and THE CITY OF NEW                           :
YORK,                                                              :
                                                                   :
                                  Defendants.                      :
                                                                   :
-------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/26/2021

LEWIS J. LIMAN, United States District Judge:

Defendants Craig Sikorski ("Sikorski"), Joseph Tennariello ("Tennariello"), Ian Rule ("Rule"), John Becerra ("Becerra"), and the City of New York (collectively "Defendants") move for summary judgment against Plaintiff Jonathan Banyan ("Plaintiff" or "Banyan"). For the following reasons, Defendants' motion is granted in part and denied in part.

## FACTUAL BACKGROUND

### A.  Undisputed Facts

This case arises out of Plaintiff's arrest on March 20, 2016. The following facts are undisputed. In the early morning, Police Officer Sikorski, Lieutenant Rule, and Police Officer Tennariello were in an unmarked SUV between Seventh and Eighth Avenues in New York. Dkt. No. 176 ¶ 1. Around 4:00 a.m., the officers made a traffic stop of a vehicle on 14th Street. *Id.* ¶ 2. While they were conducting the stop, an individual—whose identity remains unknown— approached the officers and told them that his friend had just been "robbed" of his jacket and

"beat up" by three black males, one of whom was wearing a red vest. *Id*. ¶ 3.  Taking the complainant with them, the officers drove in the direction the complainant informed them that the three individuals had gone. *Id*. ¶ 4.  At Eighth Avenue, the complainant identified a group of three black males, one of whom was Plaintiff here, as the individuals who robbed his friend. *Id*. ¶ 5.  The complainant also identified the jacket as one being held by Plaintiff. *Id*. ¶ 6.

 Much about what happened next is disputed. *See infra*.  Undisputed is that a violent altercation ensued between Plaintiff and Tennariello. *Id*. ¶¶ 8-10.  At some point, Sikorski joined the altercation. *Id*. ¶ 15.  While the struggle was ongoing, other officers arrived on the scene, one of whom, Sergeant Becerra, deployed his taser on Plaintiff three times. *Id*. ¶¶ 23-26.  During the struggle, Plaintiff kicked Rule in the knee. *Id*. ¶ 28.  Rule rolled his baton against the back of Plaintiff's Achilles tendon in an effort to subdue him. *Id*. ¶ 29.  Finally, with the help of seven or eight other officers, who are not named in this action, Sikorski and Tennariello handcuffed Plaintiff. *Id*. ¶ 30.

 After subduing Plaintiff, Defendants took him to the Sixth Precinct, where Plaintiff screamed and cursed at police. *Id*. ¶¶ 31-32.  Plaintiff was taken to the hospital by ambulance. *Id*. ¶ 34.  Because Plaintiff remained highly agitated, the Emergency Services Unit concluded that they would have to use restraints to get Plaintiff onto a stretcher. *Id*. ¶¶ 38-39.  Restraints and a mesh restraint blanket were used to control him. *Id*. ¶ 39.

 Plaintiff arrived at Bellevue Hospital around 7:10 a.m. *Id*. ¶ 41.  Plaintiff was medically cleared and instructed to take ibuprofen for lower back pain. *Id*. ¶ 42.

 Rule suffered injuries during the altercation. *Id*. ¶ 43.  He had surgery to repair a torn meniscus in his left knee. *Id*. ¶ 44.

B.     **Disputed Facts**

Defendants and Plaintiff offer differing accounts of the struggle, each supported by record evidence. According to Defendants, after the complainant identified Plaintiff and his companions as the individuals who had robbed his friend, Tennariello exited the vehicle, identified himself as a police officer, and told Plaintiff that he was under arrest and to get against a wall. *Id.* ¶ 8. Plaintiff faced the wall, but then grew paranoid and "started screaming 'Help, help, the police are trying to kill me'" and "tried to squirm away." *Id.* ¶ 10. At this point, Tennariello told Plaintiff he was under arrest, but Plaintiff continued to try to escape. *Id.* ¶ 11. Rule identified himself as a police officer and told the other two members of the group to put their hands against the wall. *Id.* ¶ 12. Rule saw that Tennariello and Plaintiff were struggling and directed Sikorski to assist Tennariello. Sikorski saw that Tennariello was holding onto a handcuff that had been attached to Plaintiff's wrist and that Plaintiff continued to resist. *Id.* ¶ 15. Rule used his radio to call for assistance. *Id.* ¶ 16. An unidentified officer grabbed Plaintiff's legs and brought Plaintiff to the ground. *Id.* ¶ 18. As Plaintiff was falling, he grabbed Tennariello's shirt and vest, pulling him to the ground along with him. *Id.* ¶ 19. Once other officers arrived on the scene, Rule went to assist Tennariello and Sikorski. *Id.* ¶ 20. At this point, Becerra, having responded to Rule's radio call, arrived on the scene, and saw Sikorski, Rule, Tennariello, and perhaps one other officer struggling with Plaintiff. *Id.* ¶ 21. Becerra deployed his taser in stun mode to Plaintiff's lower back. *Id.* ¶ 23. After Becerra deployed his taser, Plaintiff continued to resist. *Id.* ¶ 24. Becerra warned Plaintiff that he would deploy the taser again if he continued to resist. *Id.* ¶ 26. Plaintiff continued to resist, and Becerra deployed his taser again. *Id.* ¶ 27. Finally, Sikorski and Tennariello, with the help of seven or eight other officers were able to get Plaintiff's left arm out from underneath him and to handcuff him. *Id.* ¶

3

30.

Plaintiff tells a different story.  According to Plaintiff, Tennariello exited the vehicle with his gun drawn and did not identify himself as a police officer.  *Id.* ¶ 8.  He tackled Plaintiff and pushed him against the wall.  *Id*.  Plaintiff asked Tennariello why he was stopping him, but he did not answer his question and told him instead to "shut the f*** up."  *Id.* ¶ 10.  He then began punching Plaintiff in the face, at which point Plaintiff began to try to escape by squirming.  *Id*.  Plaintiff maintains that he never fought back, and only that he attempted to squirm away from the violence.  *Id.* ¶ 13.  At some point, Sikorski joined Tennariello in brutally beating Plaintiff.  *Id.* ¶ 14.  Plaintiff alleges that no attempt was made to handcuff him until after he was on the ground and had already been beaten.  *Id.* ¶ 15.  He was tackled so violently that his face struck the pavement and his vision was blurred.  *Id.* ¶ 18.  Plaintiff denies that he brought Tennariello to the ground along with him.  *Id.* ¶ 19.  He maintains that the officers continued to beat him after pinning him to the ground.  *Id.* ¶ 21.  He also recounts that Becerra used his taser on him, but maintains that he used it three times in quick succession without any warning.  *Id.* ¶ 26.  Plaintiff denies that he kicked Rule in the leg intentionally, and states that any flailing was merely an attempt to squirm away and protect himself.  *Id.* ¶ 28.  Plaintiff acknowledges that he was eventually handcuffed, but he denies that this occurred prior to the end of the encounter.  *Id.* ¶ 30.

## PROCEDURAL HISTORY

### A.     Criminal Proceedings

As a result of the incident described above, Banyan was charged in New York state court with two counts of assault against a police officer in violation of N.Y. Penal Law § 120.05(3) and one count of resisting arrest in violation of N.Y. Penal Law § 205.30.  *People v. Banyan*, 187

A.D.3d 643 (1st Dep't 2020).  Banyan requested that the jury be given a justification charge, which would have permitted the jury to acquit him if it found that he was acting in self-defense.  *Id*.  The trial court denied the charge.  During jury deliberations, the jury sent several notes to the judge expressing discomfort with the charges.  One note questioned whether the jurors could acquit Banyan if they believed the law was immoral and requested instruction on jury nullification.  Dkt. No. 170, Ex. D.  The trial court told the jury that its request was improper.  Banyan was convicted on May 17, 2017 and was sentenced to five years' imprisonment.

Banyan appealed the trial court's decision.  On October 27, 2020, the Appellate Division found that the trial court had erred in failing to grant Banyan's request for a justification charge.  *Id*.  According to the court, "[v]iewed in the light most favorable to the defense, the testimony and video evidence show that after defendant resisted police efforts to handcuff him, approximately eight additional officers joined in a struggle, punching and tasing defendant, and the police lieutenant used a baton to roll defendant's Achilles tendon.  These facts warranted a justification charge."  *Id*. at 644.  The Appellate Division ordered a new trial, which is currently pending.

      **B.**    **The Instant Proceedings**

Banyan filed the complaint in this case on June 29, 2017, after he was convicted but before that conviction was overturned for a new trial.  Dkt. No. 2.  On August 24, 2020, Defendants filed their motion for summary judgment.  Dkt. No. 153.  On November 10, 2020, Plaintiff wrote to the Court requesting appointment of pro bono counsel to represent him on his summary judgment motion.  Dkt. No. 159.  The Court granted the request on the same day.  Dkt. No. 160.

On November 16, 2020, after the Appellate Division had reversed Plaintiff's criminal

conviction and remanded for a new trial, Defendants moved to stay the case pending the resolution of Plaintiff's criminal case. Dkt. No. 162. Plaintiff opposed the motion on November 30, 2020. Dkt. No. 163. On December 2, 2020, the Court denied the motion for a stay. Dkt. No. 167. Plaintiff, now represented by counsel, filed his memorandum of law in opposition to Defendants' motion for summary judgment on February 22, 2021. Dkt. No. 170. Defendants' file their reply on March 22, 2021. Dkt. No. 179.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In determining whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to the non-moving party," *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008), and the movant bears the burden of demonstrating that "no genuine issue of material fact exists." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).

Nor may the non-moving party "rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010). Rather, to survive a summary judgment motion, the non-moving party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). It "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible," *Gottlieb v. Cnty. Of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted), but rather must demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

### A.   Excessive Force

Plaintiff brings excessive force claims against Rule, Becerra, Sikorksi, and Tennariello. Claims for use of "excessive force in the course of making an arrest, investigatory stop, or other 'seizure' . . . are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989); *see also Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) ("The Fourth Amendment prohibits the use of excessive force in making an arrest.") (quoting *Graham*, 490 U.S. at 395). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment, . . . [and] [t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular

7

situation." *Id.* at 396-97. The application of the reasonableness inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by light." *Id*. "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).

### 1. Claims against Rule and Becerra

In their memorandum in support of the motion to dismiss, Defendants advance several arguments as to why summary judgment should be granted in favor of Rule and Becerra. Defendants argue that Becerra's use of a taser under the circumstances did not constitute excessive force. *See Crowell v. Kirkpatrick*, 400 F. App'x 592, 595 (2d Cir. 2010) (holding that the use of a taser on individuals who were resisting arrest was reasonable as a matter of law). They argue that because Banyan was resisting the officers, Becerra's use of the taser was lawful. Defendants also argue that using the taser three times was objectively reasonable, in light of the facts that Becerra had arrived on the scene in response to a call for help, had observed the other officers struggling with Banyan, and that Banyan continued to resist after he deployed the taser one time. Dkt. No. 156 at 18-19.

As for Rule, Defendants argue that his use of his baton on Banyan's Achilles tendon was objectively reasonable in light of the evidence that Rule saw Banyan resisting the other officers and that Banyan injured Rule's meniscus in the struggle. Dkt. No. 156 at 19. Defendants additionally argue that, because Banyan's medical records showed no injuries to his Achilles

8

tendon or to his legs, no reasonable jury could conclude that Rule's use of force towards Banyan was excessive, even if Rule did kick him or stomp on his legs.

Plaintiff did not answer Defendants' arguments in his response. Plaintiff never mentions Becerra in his brief. As for Rule, Plaintiff mentions in his statement of facts only that Rule yelled at him to raise his hands and performed a "pain-inducing so-called 'compliance technique' by rolling his baton up and down Banyan's Achilles Tendon." Dkt. No. 170 at 8. His opposition contains no arguments responsive to Defendants' arguments regarding Rule and Becerra in their initial brief.

Because Plaintiff has not responded to Defendants' arguments with respect to Rule and Becerra, the Court considers those arguments abandoned. "[A] court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Lipton v. Cnty. of Orange, N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (citing *Jessamy v. City of New Rochelle, N.Y.*, 292 F. Supp. 2d 498, 515 (S.D.N.Y. 2003)). Plaintiff has not disputed Defendants' arguments that Becerra's use of the taser was reasonable under the circumstances. Nor has Plaintiff responded to the argument that any use of force by Rule was reasonable. Accordingly, these arguments are deemed abandoned and summary judgment is granted against Plaintiff's excessive force claims against Rule and Becerra.

### 2. Claims against Sikorski and Tennariello

While maintaining that Tennariello and Sikorskis' use of force was reasonable under the circumstances, Defendants concede in their reply that there are material issues of fact concerning the excessive force claims that require a trial. Dkt. No. 179 at 10. Plaintiff has pointed out a number of disputed facts, supported by citations to the record, between Plaintiff's account of

9

events and Defendants' account, including whether Tennariello identified himself as a police officer before tackling Banyan, whether Tennariello told Banyan to get against a wall before tackling him, whether Tennariello began handcuffing Banyan at the beginning of the encounter, and whether the officers used more force than was necessary to apprehend him.  Dkt. No. 170 at 2.  Because Defendants concede that genuine issues of material facts are disputed with respect to these claims, the Court will not grant summary judgment to these two officers.  *See United States v. Int'l Bus. Machines Corp.*, 1975 WL 940, at *2 (S.D.N.Y. Aug. 6, 1975) ("It is, of course, axiomatic that summary judgment may be granted only when there is no genuine issue as to any material fact.").

### B.     Malicious Prosecution

Defendants argue that the Court should grant summary judgment in their favor on Plaintiff's malicious prosecution claim.  "[C]laims for malicious prosecution under § 1983 are 'substantially the same' as claims for 'malicious prosecution under state law.'"  *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003)).  To prevail on a claim for malicious prosecution under New York law, a plaintiff must establish that "(1) the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted in actual malice." *Conway v. Village of Mount Kisco*, 750 F.2d 205, 214 (2d Cir. 1984) (internal quotation marks omitted).

At the time Defendants filed their initial motion for summary judgment in this case, Plaintiff's criminal conviction had not yet been reversed by the Appellate Division.  Accordingly, Defendants argued that Plaintiff's conviction barred any claim of malicious

10

prosecution, because a plaintiff cannot bring a Section 1983 malicious prosecution claim when the underlying prosecution resulted in a conviction. *See Heck v. Humphrey*, 512 U.S. 477, 489 (1994). Now, however, the conviction has been overturned and the case has returned to the trial court for a new trial.

Because Plaintiff's criminal trial is still ongoing, Plaintiff's claim of malicious prosecution has not yet accrued. A malicious prosecution claim does not accrue until the prosecution has been terminated in favor of the accused. *See id.* ("[A] cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor."); *Beckett v. Inc. Vill. of Freeport*, 2014 WL 1330557, at *2 (E.D.N.Y. Mar. 31, 2014) ("It is axiomatic that . . . a claim for malicious prosecution does not arise until the underlying charges are dismissed in the plaintiff's favor."); *see also Thompson v. Rovella*, 734 F. App'x 787, 789 (2d Cir. 2018) ("'[T]he prosecution terminates in the plaintiff's favor,' . . . when 'the prosecution against the plaintiff has conclusively ended,' such that 'the underlying indictment or criminal information has been vacated and cannot be revived.'") (quoting *Spak v. Phillips*, 857 F.3d 458, 462 (2d Cir. 2017)); *Sanders v. Simonovic*, 2021 WL 707060, *5 (S.D.N.Y. Feb. 23, 2021) ("A 'favorable termination' does not occur until the prosecution against the plaintiff has 'conclusively' ended."). Thus, disposition of Plaintiff's malicious prosecution claim must await the resolution of his criminal case.

Plaintiff has opposed a stay of this case pending the outcome of his criminal case. Dkt. No. 163. Accordingly, Plaintiff's claim is dismissed in this case without prejudice as unripe. Plaintiff may replead his malicious prosecution claim when and if the criminal case is resolved in his favor.

11

### C.     False Arrest

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (internal quotation marks omitted). "Probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id*. In determining whether an officer had probable cause, a court may consider only "those facts available to the officer at the time of the arrest and immediately before it." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (emphasis omitted).

In their initial brief, Defendants argue that Plaintiff's federal false arrest claim was barred because Plaintiff had been convicted. Since Defendants filed their motion to dismiss, Plaintiff's state court criminal conviction has been overturned. Accordingly, Defendants no longer rely on the state court conviction to argue that Plaintiff had no Section 1983 cause of action for false arrest. Instead, in their reply, Defendants now argue that probable cause to arrest existed because a complainant identified Plaintiff to the police as the individual who beat up and robbed his friend. Defendants argue that those undisputed facts give rise to probable cause.

Plaintiff responds that he "has no knowledge" regarding Defendants' assertions of fact but notes that "newly appointed *pro bono* counsel will move to reopen discovery to adduce inconsistencies in th[e officers'] account[s] or further credibility issues for the officers." Dkt. No. 176 ¶¶ 1-4.

There is no per se rule against the police relying on a tip—even an anonymous one—to make an arrest. *Illinois v. Gates*, 462 U.S. 213, 237-38 (1983). Whether probable cause exists

depends on the totality of the circumstances. *Id.* at 230-31; *see also Roberts v. Azize*, 767 F. App'x 196, 200 (2d Cir. 2019) ("Whether an anonymous tip contains sufficient indicia of reliability to support probable cause is a fact-dependent inquiry that largely depends on whether the tipster conveys information that 'demonstrates inside information,' evincing 'a special familiarity with [the subject of the tip's] affairs.'") (quoting *Alabama v. White*, 496 U.S. 325, 332 (1990)); *United States v. Elmore*, 482 F.3d 172, 179 (2d Cir. 2007) (citation omitted) ("Even a tip from a completely anonymous informant—though it will seldom demonstrate basis of knowledge and the veracity of an anonymous informant is largely unknowable—can form the basis of reasonable suspicion or probable cause if it is sufficiently corroborated."). Moreover, a non-movant may not resist summary judgment by raising issues of credibility alone. *See Rodriguez v. Schneider*, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("If the non-movant asserts that a fact claimed by the movant to be undisputed is actually in dispute, the non-movant *must* cite evidence on the record to support its contention.").

At the same time, however, the law disfavors granting summary judgment prior to the close of discovery, *see Hellstrom v. U.S. Dep't of Veterans Affs.*, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."); *GMA Accessories, Inc. v. Croscill, Inc.*, 2007 WL 766294, at *1 (S.D.N.Y. Mar. 13, 2007) (Lynch, J.) ("[S]ummary judgment motions prior to discovery are disfavored."), and Plaintiff—now represented by counsel—has indicated he will move to take discovery that the unrepresented Plaintiff did not take, Dkt. No. 174 ¶¶ 1-6; *see Rivas v. Suffolk Cnty.*, 2008 WL 45406, at *2 (2d Cir. Jan. 3, 2008) ("Appointed counsel should be given the opportunity to file in the district court any and all motions that counsel deems appropriate, including motions . . . to reopen discovery."). In these circumstances, where

13

the case will proceed to trial on the excessive force claim in any event, it would be premature for the Court to rule upon Defendants' summary judgment motion before it has had the opportunity to consider whether discovery should be reopened.  The Court's decision is without prejudice to Defendants moving the Court for summary judgment again after pro bono counsel moves to reopen discovery and after any additional period for discovery has closed.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.  Summary judgment is granted with respect to Plaintiff's excessive force claims against Rule and Becerra.  Summary judgment is denied with respect to Plaintiff's excessive force claims against Tennariello and Sikorski.  Summary judgment is also denied as premature on Plaintiff's false arrest claim, though Defendants have the Court's leave to move for summary judgment again after any motion for additional discovery is decided and any additional discovery is taken.  Plaintiff's malicious prosecution claim is dismissed as untimely, without prejudice to renewal when and if Plaintiff's criminal case is resolved in his favor.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 153.  Parties are directed to appear for a telephonic status conference on April 8, 2021 at 2:00 p.m.  Parties are directed to dial (888) 251-2909 and use access code 2123101.  In advance of that conference, the parties are directed to meet and confer regarding Plaintiff's motion to reopen discovery (including the number of depositions Plaintiff seeks leave to take) and a proposed schedule for the remainder of the case.

SO ORDERED.

Dated: March 26, 2021
      New York, New York
                                                    LEWIS J. LIMAN
                                            United States District Judge