UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
JONATHAN C. BANYAN, :
:
:
Plaintiff, :
: 17-cv-4942 (LJL)
-v- :
: ORDER
:
POLICE OFFICER CRAIG SIKORSKI, POLICE :
OFFICER JOSEPH TENNARIELLO, LIEUTENANT :
IAN RULE, SERGEANT JOHN BECERRA, THE CITY :
OF NEW YORK, :
:
Defendants. :
:
------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiff moves, pursuant to Federal Rule of Civil Procedure 16(b)(4), to reopen limited fact and expert discovery to depose the three officers who initiated force against him, Ian Rule, Craig Sikorski, and Joseph Tennariello, the officer who used his taser on him, John Becerra, and one of the medical staff who treated him on the night of his arrest. Dkt. No. 184. He also moves to retain an expert witness on police procedures and to use the Southern District New York Pro Bono Fund for the expert's fees. *Id.* Defendants oppose the motion. Dkt. No. 188.

The motion is granted. Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In the context of a request for the modification of a discovery schedule, that often means a showing by the movant that 'despite due diligence, it could not have reasonable met the scheduled deadlines.'" *Furry Puppet Studio Inc. v. Fall Out Boy*, 2020 WL 4978080, at *1 (S.D.N.Y. Feb. 24, 2020) (quoting 3 J. Moore, Moore's Federal Practice § 16.14[1][a] (3d ed. 2019)). The Court may also consider other factors such as "(1) the imminence of trial; (2) whether the request is opposed; (3) whether

the moving party foresaw the need for additional discovery, in light of the discovery deadline set by the court; (4) prejudice to the non-moving party; and (5) whether further discovery is likely to lead to relevant evidence." *Shapard v. Attea*, 2015 WL 866892, at *1-2 (W.D.N.Y. Mar. 2, 2015) (citing *Krawec v. Kiewit Constructors Inc.*, 2013 WL 1104414, at *8 (S.D.N.Y. Mar. 1, 2013)); *see also Nelson v. Gleason*, 2018 WL 1569381, at *3-4 (W.D.N.Y. Mar. 29, 2018). The Court must also keep in mind the injunction that the rules are intended "to secure the just, speedy, and inexpensive determination of every action and proceeding." *Furry Puppet*, 2020 WL 4978080, at *1 (quoting Fed. R. Civ. P. 1).

Measuring those factors here, and considering them in totality, Plaintiff has established good cause for the limited reopening of discovery he has proposed. As an initial matter, trial is not imminent, Defendants articulate no cognizable prejudice, and the discovery is likely to lead to relevant evidence. Plaintiff, now proceeding through counsel, made clear in his opposition to the motion for summary judgment that he intended to move to reopen discovery, and immediately after that motion was partially denied (*with* the consent of Defendants), he moved to reopen discovery. Trial is not on the horizon; there is ample time for the short period of discovery Plaintiff proposes. Moreover, the mere fact that Defendants would have to undergo discovery and, if the motion to reopen discovery were denied, they would be relieved of the burden of discovery, does not alone establish prejudice. Those are the consequences that follow every decision to reopen discovery. This is not a case where the party opposing the motion to reopen discovery has made decisions during the period of discovery that he would not otherwise had made if he knew the requested discovery would be permitted. Defendants did not subject themselves to deposition discovery at all in this case, relying instead and entirely on documents and on the testimony of their witnesses in another proceeding—the criminal case against

Plaintiff. Any prejudice to Defendants from reopening discovery can be addressed by giving Defendants additional time to response to the introduction of Plaintiff's expert and to proffer an expert of their own. *See Young v. Southwest Airlines Co.*, 2016 WL 3257008, at *3 (E.D.N.Y. May 4, 2016).

Finally, that Defendants believe that the discovery would be unlikely to yield evidence in favor of Plaintiff does not establish that it would not be relevant. The fact witnesses whom Plaintiff seeks to depose are the percipient witnesses to the events about which he complains. They plainly have relevant testimony. Plaintiff is not required simply to accept the testimony they gave at his trial—where he had different interests and a different motive to cross-examine. He has some limited right to press them on their account of his arrest and to attempt to establish his point that his version of the events, and not theirs, represents the truth of what happened. It also cannot seriously be disputed that the testimony of the medical staff member who treated Plaintiff is relevant when the underlying medical records themselves indisputably are relevant. *See Shaw v. Arena*, 2018 WL 324896, at *2 (S.D.N.Y. Jan. 3, 2018) ("Courts in this circuit have held that 'treating physicians may testify as fact, rather than expert, witnesses' and may testify 'as to facts acquired *and* opinions formed during [their] personal consultation' with a patient.") (quoting *Ali v. Connick*, 2016 WL 3002403, at *7 (E.D.N.Y. May 23, 2016)). Moreover, as Plaintiff has demonstrated, that the proposed expert testimony may not be sufficient to establish a constitutional violation does not mean that it cannot be relevant. Expert testimony regarding police practices has been frequently admitted in cases containing allegations of excessive force. *See, e.g.*, *Vazquez v. City of New York*, 2014 WL 4388497, at *13 (S.D.N.Y. Sept. 5, 2014) ("Courts in and out of this Circuit routinely admit testimony on police practices in civil rights cases."); *Cerbelli v. City of New York*, 2006 WL 2792755, at *8 (S.D.N.Y. Sept. 27, 2006)

3

("Courts typically admit police expert testimony").  The Court assumes the expert will prepare a report consistent with *Daubert*.  On the facts, here, Rule 16(b)(4) does not foreclose Plaintiff from attempting to do so.

The motion thus comes down to whether Plaintiff foresaw the need for additional discovery in light of the discovery deadline set by the Court and whether he has demonstrated diligence.  The Court is satisfied that Plaintiff has made the necessary showing.  This is not a case where the party seeking a modification of the discovery schedule sat on his hands and let deadlines expire.  *Compare Furry Puppet*, 2020 WL 4978080, at *1 (listing "carelessness, an attorney's otherwise busy schedule, or a change in litigation strategy" as factors "not compatible with a finding of diligence").  Plaintiff was until recently proceeding pro se and was incarcerated after his conviction in state court on charges of assault against a police officer in violation of N.Y. Penal Law § 120.05(3) and resisting arrest in violation of N.Y. Penal Law § 205.30.  Notwithstanding those limitations, he diligently sought to pursue discovery.  Early on, Plantiff wrote to the Court seeking information on how to conduct discovery because he was "a layperson with the law and civil litigation."  Dkt. No. 47 at 3.  He also diligently sought counsel to represent him, at first through listings in the prison's law library and through referrals from other prisoners and then by reaching out to many attorneys who never responded and to others who referred him to services which declined to represent him.  Dkt. No. 191-1 ¶¶ 4-9.  Indeed, in his first application to this Court for pro bono counsel, he noted that he had "written to several different lawyers and attorneys, who have denied any form of counsel and as always stated to seek Prisoners' Legal Services (PLS), whom [sic] has told the plaintiff that they do not have funding for such actions and referres [sic] him to others who in turn sends him back to PLS."  Dkt. No. 151 ¶ 7; *see Young*, 2016 WL 3257008, at *3 (relying on plaintiff's efforts to obtain

4

counsel in determining that plaintiff diligently pursued her case and discovery should be reopened). Even then, Plaintiff filed numerous interrogatories and document demands and went back and forth with opposing counsel on those requests, filing three motions to compel, each one handwritten and researched from prison.

To be sure, Plaintiff did not seek to take depositions until after the close of discovery and when he sought to do so by written questions (because he was still incarcerated), that motion was denied as untimely. Dkt. Nos. 141, 144. But this case has taken on different dimensions since that motion was made on December 17, 2019 and denied on June 23, 2020. On October 27, 2020, the Appellate Division reversed Plaintiff's conviction, finding that the trial court had erred in failing to grant Banyan's request for a justification charge. *People v. Banyan*, 187 A.D.3d 643 (1st Dep't 2020). According to the court, "[v]iewed in the light most favorable to the defense, the testimony and video evidence show that after defendant resisted police efforts to handcuff him, approximately eight additional officers joined in a struggle, punching and tasing defendant, and the police lieutenant used a baton to roll defendant's Achilles tendon. These facts warranted a justification charge." *Id.* at 644. The reversal changed fundamental parts of this case; after the decision came down, Defendants admitted that at least some of the excessive force claims would have to go to trial. Dkt. No. 179.

Plaintiff previously had asked for appointment of pro bono counsel. On November 10, 2020, the Court granted Plaintiff's request for the appointment of pro bono counsel, Dkt. No. 160, and on November 12, 2020, pro bono counsel appeared, Dkt. No. 161. Defendants' motions for summary judgment were then pending. In response to those summary judgment motions, Plaintiff, now represented by counsel, foreshadowed that he would be making the instant motion to reopen discovery. Dkt. No. 176. The knowledge that an oral deposition might be valuable,

5

the opportunity to take that deposition fruitfully, and the relevance of that deposition all had changed fundamentally with (1) the New York state court's determination that Plaintiff was no longer guilty of a crime, and (2) the fact that Plaintiff now had counsel who could take the deposition and he would not be left with either depositions on written questions or the logistics of trying to determine how to take a deposition from prison.  *See Nelson*, 2018 WL 1569381, at *3 (granting motion to reopen discovery after appointment of pro bono counsel, noting that "[t]here are limitations inherent in plaintiff's incarceration that limit the devices and means for his discovery" and "[a]s an inmate proceeding *pro se*, [plaintiff's] ability (or perceived ability) to depose witnesses including the parties is restricted").

The remaining arguments presented by Defendants are not persuasive.  The Court accepts that the law of the case doctrine applies to the magistrate judge's prior determination that good cause did not exist to reopen discovery and that, in the ordinary case, a party disappointed by such a ruling should appeal to the district court, rather than make a new motion at a later time.  However, the law of the case doctrine is discretionary.  It is addressed to the Court's "good sense," *Colvin v. Keen*, 900 F.3d 63, 67-68 (2d Cir. 2018) (Leval, J., quoting Friendly, J. and L. Hand, J.), and is not a "rule that bars a court from reconsidering prior rulings."  *Id.*   A court can reconsider a prior interlocutory order where, for example, there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice."  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992), and "where to do so would not be inconsistent with the objectives of efficiency and finality," *Vicuna v. O.P. Schuman & Sons, Inc.*, 298 F. Supp. 3d 419, 433 (E.D.N.Y. 2017).  Circumstances have changed significantly since Magistrate Judge Freeman's decision and there is no good sense in applying that doctrine in a wooden manner to bar the application to seek

highly relevant evidence on claims that all parties acknowledge will go to trial.  At the time of Judge Freeman's decision, Defendants had argued that Plaintiff's conviction barred him from pursuing allegations of false arrest, false imprisonment, and malicious prosecution unless that conviction was reversed.  Dkt. No. 69.  Defendants continued to make those arguments even after Judge Freeman's decision.  Dkt. No. 156.  It was not until after Plaintiff's conviction was reversed and the Court had appointed pro bono counsel that Defendants reversed course and admitted that at least some of Plaintiff's claims required trial.  Dkt. No. 179.  Under these circumstances, and where no trial has been scheduled, it makes no good sense for the Court rigidly to adhere to Judge Freeman's prior decision where the requested discovery plainly has relevance that it did not appear to have at the earlier date.  *Cf.* Fed. R. Civ. P. 26(b) (the scope of discovery should be "proportional to the needs of the case" and to "the importance of the discovery in resolving the issues").

Next, Defendants rely on a long line of cases in which courts have denied motions to reopen discovery where it was obvious that the requested discovery would be relevant but where there were no good excuses for not seeking it earlier.  Dkt. No. 188 at 13-14.  But, with a sole exception, the parties seeking discovery in each of these cases had been represented by counsel.[1]

---

[11] The single exception is *Jeannite v. City of N.Y. Department of Buildings*, 2010 WL 2542050 (S.D.N.Y. June 21, 2010), but that case is easily distinguishable from this one for several reasons: (1) the court simultaneously denied the pro se plaintiff's request for appointment of counsel, finding that he had failed to demonstrate a potentially meritorious claim; (2) the plaintiff had failed to make any document requests or pursue discovery during the time allotted for discovery under the scheduling order and thus had not pursued his claims diligently; (3) the request to reopen discovery was vague—plaintiff stated only and "without explanation, that reopening discovery will 'help prove [his case],'" *id.* at *2; and (4) the defendant would have been prejudiced by reopening discovery because it had a pending pre-motion conference in anticipation of seeking leave to move for summary judgment.  In this case by contrast, at least some of Plaintiff's claims will require trial, he did pursue discovery diligently although he did not request oral depositions, the request for discovery is targeted and specific, and there are no pending deadlines so that Defendants will not be prejudiced.

7

It blinks reality, for reasons the Court has explained, to blindly rule that a prisoner then housed in Attica State Prison and now represented by counsel should be denied the opportunity to reopen discovery because a well-healed client represented by knowledgeable counsel would have known of, and been able to take, the requested discovery.

Finally, Defendants argue that pro bono counsel was not diligent in seeking the discovery. Counsel first indicated he would move for discovery in his opposition to the summary judgment motions on February 22, 2021, a little more than three months after he was appointed. Counsel has proffered good reasons that he did not make the motion earlier. Plaintiff was still incarcerated for the first month after counsel was appointed and was in sole possession of approximately 1,600 documents that counsel needed to review. Dkt. No. 190 at 8. In any event, counsel behaved diligently and appropriately in indicating in the summary judgment opposition brief—filed shortly after he was appointed—that he intended to seek discovery should the motion for summary judgment be denied. *See Young*, 2016 WL 3257008, at *4 (citing cases). The Court would have been concerned had counsel made the motion to reopen immediately after being appointed and without sufficient consultation with his client and deliberation regarding whether the discovery truly was necessary and could be obtained. The Court would have had no opportunity to entertain and grant the request to reopen discovery—even had it been unopposed—until it had the opportunity to review the summary judgment papers and determine that there remained factual issues to be tried as to which discovery would be both helpful and necessary to secure the "just" determination of the action.

## CONCLUSION

The motion to reopen discovery is GRANTED. Defendants have requested that, if the motion is granted, they be granted additional time to submit their own expert reports. That

request is GRANTED as is the request to use the Southern District of New York Pro Bono Fund for the expert's fees.  The parties shall meet and confer regarding a proposed plan for the remaining discovery, with Plaintiff to have no more than the requested 60 days for discovery, and to submit his plan to the Court for its approval by May 10, 2021.  The Clerk of Court is respectfully directed to close the motion at Dkt. No. 184.


SO ORDERED.

Dated: May 3, 2021
      New York, New York
                                    LEWIS J. LIMAN
                                 United States District Judge