```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
JONATHAN C. BANYAN,                                              :
                                                                 :
                               Plaintiff,                        :
                                                                 :        17-cv-4942 (LJL)
                -v-                                              :
                                                                 :        OPINION AND
POLICE OFFICER CRAIG SIKORSKI, POLICE                            :
OFFICER JOSEPH TENNARIELLO, LIEUTENANT                           :        ORDER
IAN RULE, SERGEANT JOHN BECERRA, THE CITY                        :
OF NEW YORK,                                                     :
                                                                 :
                               Defendants.                       :
                                                                 :
-----------------------------------------------------------------X
```

LEWIS J. LIMAN, United States District Judge:

Defendants Craig Sikorski, Joseph Tennariello, and Ian Rule ("Defendants") move for a stay of this civil rights case pending the conclusion of Plaintiff's retrial in New York state Supreme Court on charges of resisting arrest and assault in the second degree. Dkt. No. 199.

## BACKGROUND

Plaintiff, a black male, was arrested on March 20, 2016, in New York, New York. He claims that he was walking down the street in the early morning when Tennariello, an officer with the New York Police department ("NYPD"), exited his vehicle with his gun drawn and, without identifying himself as a police officer, tackled Plaintiff and pushed him against a wall. Tennariello did not answer Plaintiff's questions about why he was stopping Plaintiff but instead told him to "shut the f*** up." At some point, Sikorski, also a NYPD police officer, joined Tennariello in brutally beating Plaintiff. Lieutenant Rule joined the fray at some point. Plaintiff ultimately was charged in New York state court with two counts of assault against a police

officer in violation of N.Y. Penal Law § 120-.05(3) and one count of resisting arrest in violation of N.Y. Penal Law § 205.30.  He denies resisting arrest and assaulting the police.  For their part, the Defendants deny much of Plaintiff's account, including that they arrested him without probable cause.  They claim that they had probable cause because Plaintiff met the description of an individual whom the police had been told had just engaged in a robbery and an assault at that location.

Plaintiff was convicted on the state charges on May 17, 2017, and sentenced to five years' imprisonment but, on October 27, 2020, the New York State Supreme Court, Appellate Division, First Department, reversed Plaintiff's conviction and ordered a new trial.  The Appellate Division found that the trial court had erred in failing to grant Plaintiff's request for a justification charge.  According to the court, "[v]iewed in the light most favorable to the defense, the testimony and video evidence show that after defendant resisted police efforts to handcuff him, approximately eight additional officers joined in a struggle, punching and tasing defendant, and the police lieutenant used a baton to roll defendant's Achilles tendon.  These facts warranted a justification charge."  *People v. Banyan*, 187 A.D.3d 643, 644 (1st Dep't 2020).

Plaintiff filed the complaint in this case on June 29, 2017, after he was convicted but before that conviction was overturned for a new trial.  Dkt. No. 2.  On August 24, 2020, Defendants filed their motion for summary judgment.  Dkt. No. 153.  On November 10, 2020, Plaintiff wrote to the Court requesting appointment of pro bono counsel to represent him on the summary judgment motion.  Dkt. No. 159.  The Court granted the request on the same day.  Dkt. No. 160.

On March 26, 2021, the Court granted in part and denied in part Defendants' motion for summary judgment.  Dkt. No. 181.  The Court dismissed Plaintiff's malicious prosecution claim

as untimely in light of the fact that state charges were still pending against Plaintiff and thus the state case had not been resolved in his favor.  The Court also granted summary judgment to Defendants with respect to Plaintiff's excessive force claims against Defendants Rule and Becerra but denied summary judgment on Plaintiff's excessive force claims against Defendants Tennariello and Sikorski.  Finally, noting that Plaintiff had been appointed counsel and that counsel had requested the opportunity to reopen discovery, the Court denied the motion for summary judgment on Plaintiff's false arrest claim as premature but stated "Defendants have the Court's leave to move for summary judgment again after any motion for additional discovery is decided and any additional discovery is taken."  Dkt. No. 181 at 14.  On May 3, 2021, the court granted Plaintiff's motion to reopen discovery to take the depositions of the three officers who initiated force against him (Rule, Sikorski, and Tennariello), the officer who used the taser on him (Becerra), and one of the medical staff who treated him on the night of his arrest.  Dkt. No. 192.  The Court also granted Plaintiff's motion to retain an expert witness on police procedures and to use the Southern District of New York Pro Bono Fund for the expert fees.  *Id*.  On June 22, 2021, the Court granted Plaintiff's unopposed motion for a one-week extension of the discovery schedule to July 9, 2021, so that Plaintiff would be able to take the depositions of Tennariello, Rule, and Becerra and submit Plaintiff's expert report.  Dkt. Nos. 197, 198.  The Court also granted Defendants' request that they be granted additional time to submit their own expert reports.  *Id.* On May 27, 2021, the Court denied Plaintiff's motion for reconsideration of its order dismissing Plaintiff's claims against defendants Rule and Becerra.  Dkt. No. 194.

      The parties have completed the five depositions the Court permitted and Plaintiff has provided Defendants with an expert report.  Defendants report that they do not intend to depose Plaintiff's expert or to submit their own report but plan to move to preclude him from testifying

at trial. Dkt. No. 199 at 2. (Defendants also note that they are awaiting document discovery from Plaintiff. *Id.* at 2 n.2.) Defendants indicate that they plan to move again for summary judgment.

Defendants now argue for a stay of all further proceedings, including summary judgment briefing and motions to preclude, on both Plaintiff's excessive force and on his false arrest claims. They report, "upon information and belief, the District Attorney's Office intends to, once again, prosecute Plaintiff for charges stemming from his March 20, 2016 arrest," and that the case is in the "Trials calendar section and the new appearance date is September 8, 2021." Dkt. No. 199. In the event that Plaintiff is convicted of the charges against him in state court, they note that his false arrest claims would be barred and they would move for summary judgment. *Id.* at 3.[1]

This is Defendants' second motion for a stay of this case. On November 16, 2020, while the motion for summary judgment was pending, Defendants moved for a stay by letter motion. Dkt. No. 162. Defendants noted that Plaintiff's criminal case was remanded for a new trial and thus that the "criminal action giving rise to the instant civil action is currently pending once again." *Id.* at 2. Defendants argued that if the criminal case were resolved in the State's favor that would bar Plaintiff's false arrest and malicious prosecution claims and thus that a stay was prudent. *Id.* On December 1, 2020, the Court denied the motion for a stay, adding that Defendants could renew the motion for a stay after a decision on the then-pending motions for summary judgment. Dkt. No. 165. On December 2, 2020, Defendants moved for reconsideration of that Order. Dkt. No. 166. The Court denied the motion for reconsideration

---

[1] Defendants also note that Plaintiff would be barred from bringing a malicious prosecution claim, but the Court has already dismissed that claim.

4

because Defendants did not state any facts or law that the Court did not consider when it initially denied the motion for a stay.

The then-pending motion for summary judgment has been decided. The Court will consider the motion for a stay based on the current procedural posture of the case.

## DISCUSSION

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). At the same time, however, "[a] stay of a civil case is an extraordinary remedy," *Hicks v. City of New York*, 268 F. Supp. 2d 238, 241 (E.D.N.Y. 2003) (denying stay of a § 1983 claim pending a state court action); *see Louis Vuitton Malletier S.A.*, 676 F.3d at 98, and the burden is on the person seeking a stay to establish its need, *see Clinton v. Jones*, 520 U.S. 681, 708 (1997). In the past, courts have considered the following six factors in determining whether to grant a stay of a civil proceeding in favor of a parallel criminal proceeding: "1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighted against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest." *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) (Chin, J.); *see also Johnson v. N.Y.C. Police Dep't*, 2003 WL 21664882, at *1 (S.D.N.Y. July 16, 2003) (applying 6-factor test to civil rights claim); *Estes-El v. Long Island Jewish Med. Ctr.*, 916 F. Supp. 268, 270 (S.D.NY. 1995) (holding that court

should consider the following five factors in deciding whether to stay civil rights claim in favor of state court criminal action: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest") (quoting *Volmar Distribs., Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)). "These tests, however, no matter how carefully refined, can do no more than act as a rough guide for the district court as it exercises its discretion." *Louis Vuitton Malletier S.A.*, 676 F.3d at 99. Ultimately, the determination whether to grant a stay depends on "the district court's studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." *Id*. In exercising that discretion, the Court is sensitive to the public interest in the "prompt resolution" of claims as well as "the public's interest" in the prosecution of the rights established by the Constitution and enforceable through congressional statute. *Id.* at 101,

A court's decision whether to grant a stay involves a balancing act. In weighing the relevant factors, the Court reaches different conclusions with respect to Plaintiff's false arrest claim and his excessive force claim viewed as a standalone and will require further briefing from Plaintiff as to whether he intends to pursue his false arrest claims and whether, if so, the Court can and should permit the two claims to be tried separately or should stay the entire case.

The Court reads the Supreme Court and the Second Circuit as strongly suggesting, if not holding, that a stay should be granted of a Section 1983 false arrest claim when a state court criminal prosecution is pending. The Supreme Court stated in *Wallace v. Kato*, 549 U.S. 384 (2007), that "[i]f a plaintiff files a false-arrest claim before he has been convicted (or files any

6

other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Id*. at 393-94. The Court explained: "If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* [*v. Humphrey*, 512 U.S. 477 (1994)] will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit." *Id.* at 394 (quoting *Edwards v. Balisok*, 520 U.S. 641, 649 (1997)).

The Second Circuit held in *Mack v. Varelas*, 835 F.2d 995 (2d Cir. 1987) that where "one possible outcome of the state court proceedings could negate an essential element" of a plaintiff's civil rights claim, "adjudication [of the civil claim] should not proceed until the state court criminal proceedings have been concluded." *Id.* at 999. The court thus stated in *Mack* that "the postponement of adjudication of Mack's present claim is warranted because a sequence leading to conviction at a new trial could definitively establish that Mack has suffered no injury." *Id.*

It could be argued that neither *Mack* nor *Wallace* are dispositive of Defendants' request that further proceedings be stayed with respect to the false arrest claim. *Wallace* stated that it is in "accord with common practice" to stay the action with the false arrest claim. It did not say it was required, regardless of the facts. In *Mack*, the question before the Court was whether the case should be stayed rather than dismissed. It is not clear that the plaintiff, or anyone, was pressing for immediate trial.

However, Defendants are on solid grounds in arguing that they should not be required to go to trial on the false arrest claim here before the conclusion of the state criminal case. Were Plaintiff to be convicted of the state criminal charges he is facing, his false arrest claim would be

barred for two separate reasons.

First, under the common law rule adopted as part of Section 1983, "a conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause." *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986). The rule "constitutes a refusal as a matter of principle to permit any inference that the arrest of a person thereafter adjudged guilty had no reasonable basis." *Id.*

Second, "probable cause to arrest is a prerequisite" to the crime of resisting arrest with which Plaintiff is charged in state court and if there were no probable cause Plaintiff could not be guilty of resisting arrest. *Curry v. City of Syracuse*, 316 F.3d 324, 336 (2d Cir. 2003) (quoting *People v. Mohamadou*, 698 N.Y.S.2d 445, 447–48 (N.Y. Crim. Ct.1999)); *see also People v. Jensen*, 654 N.E.2d 1237, 1240 (N.Y. 1995) ("A key element of resisting arrest is the existence of an authorized arrest, including a finding that the arrest was premised on probable cause"); *People v. Peacock*, 496 N.E.2d 683, 683-84, 676-77 (N.Y. 1986) (holding that a defendant cannot be guilty of resisting arrest when there was no probable cause that authorized defendant's arrest). Plaintiff's false arrest claim rests on the notion that he was arrested without probable cause. Assuming Plaintiff is convicted of resisting arrest, then, the successful prosecution of his false arrest claim would necessarily "demonstrate the invalidity of his conviction" and would be barred under *Heck*. *Heck v. Humphrey*, 512 U.S. 477, 486-87 & n.6 (noting that "[a]n example of . . . a § 1983 action that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful—would be the following: A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest. . . . He then brings a § 1983 action against the arresting officer,

seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures.  In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concerning res judicata . . . the § 1983 action will not lie.").

Each of those reasons why a false arrest claim cannot proceed in the face of a state criminal conviction also supports the notion that a false arrest verdict should not stand in the face of a state criminal conviction and thus supports the contention that Plaintiff's false arrest claim should not proceed ahead of his state criminal trial.  If, as the Second Circuit explained in *Cameron*, as a matter of policy, a person adjudged guilty of a crime should not be permitted to pursue a claim for false arrest, it follows he should not be able to recover on a false arrest claim on a theory that would require him to prove that there was no probable cause he committed a crime.  It should make no difference whether the conviction of the state crime precedes trial of his civil claim or immediately follows it.  Plaintiff seeks to have the Court adjudicate a summary judgment motion and a jury to decide Plaintiff's false arrest claim only to have that verdict upset if defendant is later found guilty.

The rationale that supports a stay of the false arrest claim until the conclusion of Plaintiff's criminal case applies even if Plaintiff has appended to it an excessive force claim.  The same inefficiencies would apply to trial of the false arrest claim even if, as part of that same trial, a jury would also have to decide whether excessive force was used.  The jury would still be forced, in the context of the false arrest claim, to decide an issue presented—and that will shortly be resolved—in the criminal case.  Indeed, claims of false arrest frequently are coupled with claims of use of excessive force.  After all, the elements of the two claims are similar.  "To determine whether the amount of force applied to a plaintiff was unreasonable [i.e., sufficient to

9

give rise to an excessive force claim], courts consider 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers and others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *Henry v. City of New York*, 2021 WL 1648029, at *5 (S.D.N.Y. Apr. 27, 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)); *see also Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (same). Thus, the protection against duplicative and unnecessary litigation the stay is intended to provide would be rendered illusory if it could be evaded by the simple expedient of adding an additional claim of excessive force.

The Court reaches a different conclusion with respect to a standalone excessive force claim. *Heck* does not prevent a plaintiff convicted of assault and resisting arrest from successfully claiming that excessive force was used in his arrest. *See Shepard v. Attea*, 710 F. App'x 15, 17-18 (2d Cir. 2017); *Tracy v. Freshwater*, 623 F.3d 90, 99-100 (2d Cir. 2010); *Baez v. City of New York*, 2019 WL 1050996, at *4 (E.D.N.Y. Mar. 3, 2019) ("[a]lthough plaintiff cannot deny in this case that he attempted to assault the court officers, that does not prohibit him from claiming that even after the attempted assault, the amount of forced used by the court officers was unreasonable under the Fourth Amendment."); *Gardner v. Robinson*, 2017 WL 8890294, at *3 (S.D.N.Y. Nov. 22, 2017), *report and recommendation adopted in part and rejected in part*, 2018 WL 722858 (S.D.N.Y. Feb. 6, 2018) ("a plaintiff may still bring a claim for excessive force when he has been convicted of assault, because even if he assaulted officers during an altercation, he could show that the officers used excessive force in subduing him."). A defendant's conduct in initiating an altercation or resisting arrest does not give law enforcement license thereafter to use excessive force against him. *See Shepard*, 710 F. App'x at 17 ("the elements of excessive force and second degree assault under N.Y. Penal Law § 120.05(7) are not

incompatible"); *Johnson v. Suffolk County*, 2021 WL 1163021, at *3 (E.D.N.Y. Mar. 26, 2021). Indeed, "it is axiomatic that a lawful arrest can be accomplished by excessive force." *Kuar v. Mawn*, 2011 WL 838911, at *11 (E.D.N.Y. Mar. 4, 2011) (Bianco, J.); *see Poventud v. City of New York*, 750 F.3d 121, 132 (2d Cir. 2014) ("when a suspect sues his arresting officer for excessive force, a § 1983 suit may proceed even if the suspect is ultimately convicted of resisting arrest.").

"[P]laintiff's excessive force claim has no bearing or impact on his underlying conviction" or on the state court criminal proceedings. *Kuar*, 2011 WL 838911, at *11. Defendants do not argue that this is a case like *Mack* in which the outcome of a trial could "negate an essential element" of the plaintiff's claim, 835 F.2d at 999, or even like *Jackson v. Suffolk County Homicide Bureau*, 135 F.3d 254 (2d Cir. 1998), in which the plaintiff sought to try in his civil case an issue (the use of force) that he claimed in his criminal appeal made his confessions inadmissible. The State's criminal case can proceed even if there is a favorable verdict for Plaintiff on his excessive force claim and Plaintiff's civil case will proceed even if there is a favorable verdict for the State in the criminal case.

With respect to Plaintiff's excessive force claim, the *Plumbers* factors, adopted by the Second Circuit in *Louis Vuitton Malletier S.A.*, weigh against a stay. There is overlap between the criminal case and the civil case in that they both arise from the same incident and that evidence developed in one case might be relevant to a defense to the other; Defendants are correct that Plaintiff's resistance and the question whether he assaulted the police officers are relevant to whether the force exercised by the police against him was excessive. At the same time, it is not dispositive. The status of the criminal case also weighs in favor of the Defendants. Plaintiff has been indicted.

11

The other *Plumbers* factors, however, all weigh in favor of Plaintiff. The Plaintiff has a private interest in proceeding expeditiously. This case has now been pending for over four years with Plaintiff unable to get a public airing of his claims of police brutality, and Defendants are now asking for further delay. There has been no showing that the "related criminal proceedings are imminent or pending." *Louis Vuitton Malletier S.A.*, 676 F.3d at 98. It is not clear when the case will be tried. That further delay, moreover, will not be the result of any conduct by Plaintiff. It will be the result of mistakes that the prosecution and the trial court made in Plaintiff's criminal proceedings. Defendants also have articulated no prejudice to them from proceeding to trial on the excessive force claim. This is not a case where the Defendants are invoking their Fifth Amendment rights. *See Louis Vuitton Malletier S.A.*, 676 F.3d at 97-98. Nor have Defendants argued that the "public's 'weighty interest in the prosecution of the criminal matter' weight in favor of granting a stay" of the excessive force claim or that there is a risk to "the integrity of the criminal proceeding." *SEC v. Berman*, 2021 WL 2895148, at *3 (S.D.N.Y. June 8, 2021) (quoting *SEC v. Carroll*, 2020 WL 1272287, at *5 (S.D.N.Y. Mar. 17, 2020)). Defendants presumably already have testified in the state criminal case to the extent they have relevant testimony to offer. The element of surprise inherent to certain criminal proceedings, if there was one here, has already been compromised. Plaintiff is being retried. Defendants have testified at depositions in this case as well. They will also have to testify at a trial in this case regardless when it happens; the burden will be identical.

There is also a judicial interest in the adjudication of the excessive force claims without further delay. This Court will have to adjudicate the case at some point. The law encourages the timely filing and pursuit of lawsuits and frowns on delay to the point where there is a risk that "evidence has been lost, memories have faded, and witnesses have disappeared." *See Gabelli v. S.E.C.*, 568 U.S. 442, 448 (2013) (quoting *R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S.

342, 348-49 (1944)).

Finally, the public interest disfavors a stay. Plaintiff and Defendants present diametrically opposed views of the facts. On Plaintiff's account, he was assaulted senselessly by a horde of officers who did not tell him why he was being stopped. On Defendants' account, they had probable cause and Plaintiff resisted arrest. The public interest lies in the dispute being speedily resolved so that, if Plaintiff is right, officers who have violated a civilian's rights are appropriately identified and punished and so that, if Defendants are right, their names are cleared and they can perform their jobs free of the cloud created by Plaintiff's accusations.

The Court would permit Plaintiff's case to go forward if only the excessive force claim were involved. It is not clear from the record before the Court, however, whether Plaintiff is prepared to proceed on his excessive force claim alone and to dismiss his false arrest claim or whether—assuming he still intends to prosecute his false arrest claim—the Court has authority to bifurcate the two claims and should exercise it. Accordingly, the Court directs Plaintiff to inform the Court by three weeks from the date of this Order whether he is prepared to proceed on his excessive force claim alone and to dismiss his false arrest claim or whether—assuming he still intends to prosecute his false arrest claim—the Court has authority and should exercise it to bifurcate the two claims under Federal Rule of Civil Procedure 42(b). Plaintiff's submission should be no longer than 3-single spaced pages and filed on ECF. Defendants shall have one week from the date of Plaintiff's submission to address the question whether the excessive force and false arrest claims may be severed. Assuming that Plaintiff does not wish to drop the false arrest claims and the Court concludes that the two claims cannot be severed, the Court will stay the entire case pending the conclusion of the state court proceedings.

SO ORDERED.

Dated: July 30, 2021
      New York, New York

                                         LEWIS J. LIMAN
                                 United States District Judge