UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JONATHAN C. BANYAN,

                              Plaintiff,

            -against-

POLICE OFFICER CRAIG SIKORSKI, POLICE
OFFICER JOSEPH TENNARIELLO,
LIEUTENANT IAN RULE, SERGEANT JOHN
BECERRA, and THE CITY OF NEW YORK,

                              Defendants.

---

Case No. 1:17-cv-04942 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Jonathan C. Banyan ("Plaintiff") brings this lawsuit against Police Officer Craig Sikorski, Police Officer Joseph Tennariello, Lieutenant Ian Rule, Sergeant John Becerra, and the City of New York (collectively, "Defendants"). ECF No. 239 (the "Amended Complaint" or "Am. Compl.").[1]  Plaintiff asserts three causes of action: first, a cause of action under 42 U.S.C. § 1983 for excessive force against Sikorski and Tennariello, *id.* ¶¶ 74-81; second, a cause of action under 42 U.S.C. § 1983 for false arrest against Sikorski, Tennariello, and Rule, *id.* ¶¶ 82-87; and third, a cause of action under state law for malicious prosecution against all Defendants, *id.* ¶¶ 88-101.  Defendants have moved for partial summary judgment on Plaintiff's false-arrest and malicious-prosecution claims.  ECF Nos. 283 ("Br."), 304 ("Reply").  Plaintiff opposes the motion.  ECF No. 287 ("Opp.").  As explained below, Defendants' motion is granted.

---

[1] Plaintiff originally sued the current defendants as well as Detective Paul Brauer.  ECF No. 2 at 1.  Brauer was not named as a defendant in the Amended Complaint filed on February 9, 2024.  Am. Compl. at 1.  References in this opinion to "Defendants" include Brauer before that date and exclude Brauer after that date.

## BACKGROUND

### I.   The Arrest and State Criminal Proceedings

Except where noted, the following facts are undisputed.  The Court draws all reasonable inferences in favor of Plaintiff as the party opposing summary judgment.  *See Rupp v. City of Buffalo*, 91 F.4th 623, 634 (2d Cir. 2024).

In the early hours of March 20, 2016, Sikorski, Tennariello, and Rule were in an unmarked SUV in the vicinity of 14th Street between Seventh and Eighth Avenues in Manhattan.  ECF No. 277 ("JSUF") ¶ 1.  All were dressed in plain clothes.  ECF Nos. 275-1, 275-2, 275-3, 275-7, and 291-1 (collectively, "Trial Tr.") at 45:4-6.  At around 4:00 a.m., the officers were conducting a traffic stop on 14th Street.  JSUF ¶ 2.  During the traffic stop, an unknown man (the "Complainant") approached the SUV and told the officers that his friend had just been "robbed" of the friend's jacket and "beat up" by three Black men, one of whom was wearing a red vest.  ECF No. 290 ("Pl. RSUF") ¶ 3.  Sikorski, Tennariello, and Rule placed the Complainant in the SUV.  *Id.* ¶ 4.

According to Sikorski's testimony at Plaintiff's subsequent criminal trial, Sikorski spotted "three men . . . walking together" on the corner of 14th Street turning onto Eighth Avenue and "pointed them out to [Tennariello]," who was driving the SUV.  Trial Tr. at 49:22-50:2.  In contrast, Tennariello and Rule testified that the Complainant, not Sikorski, pointed in the direction that the three men went.  *Id.* at 217:12-15, 400:19-401:10.  Either way, Tennariello promptly drove the SUV west on 14th Street and then turned south on Eighth Avenue (going against traffic).  *Id.* at 50:3-7.

By the time Tennariello turned the vehicle onto Eighth Avenue, the three men on foot were turning from Eighth Avenue onto Greenwich Avenue, which diagonally intersects Eighth Avenue just south of the intersection between 14th Street and Eighth Avenue.  *Id.* at

50:10-18.  The Complainant identified the three men as the assailants; he also identified a

jacket held by one of the men, Plaintiff, as the jacket belonging to his friend.  Pl. RSUF ¶¶ 5-

6; *see* Trial Tr. at 50:21-23 (Sikorski testifying that "[a]s [Tennariello] turned [the SUV] onto

Greenwich [Avenue], the witness that was in the car with us said, that's them, those are the

guys, that's my friend's jacket"); *id.* at 218:7-10 (Tennariello testifying that "[w]e went

westbound to Eighth Avenue and that's when we looked left and there were three males fitting

that description and the witness pointed them out and he said those are the guys that did it and

he was carrying the coat").[2]  Plaintiff, who is Black, was wearing a red vest, black pants,

white hat, and red sneakers, and was carrying a jacket.  Am. Compl. ¶ 27; JSUF ¶ 3.

Sikorski, Tennariello, and Rule exited the SUV.  JSUF ¶ 5.  According to Plaintiff,

Tennariello "collided with" and "tackled" him.  Pl. RSUF ¶ 12.  After tackling Plaintiff,

Tennariello told Plaintiff that he was under arrest.  *Id.* ¶ 11.  Plaintiff asked Tennariello why

he was being arrested.  *Id.* ¶ 14.  Then, "paranoia kicked in," and Plaintiff "started screaming

'Help, help, the police are trying to kill me,'" and "tried to squirm away from [Tennariello]."

ECF No. 291-6 at 60:9-11.

Rule used his radio to call for assistance.  JSUF ¶ 6.  Becerra, who was at Lenox Hill

Hospital (by the intersection of West 12th Street and Seventh Avenue), heard the radio call for

help and immediately began to respond to the location.  *Id.* ¶ 7; Trial Tr. at 305:5-10.  When

he arrived, Becerra saw Plaintiff "struggling on the ground with several police officers."  Trial

Tr. at 306:4-6.  Becerra saw that Plaintiff was "face down," "screaming," and "attempting to

---

[2] Plaintiff asserts that these facts are "[d]enied" and/or "genuinely disputed" because "[t]his
alleged 'identification' was far too unreliable to stand as an undisputed fact.  The Unknown
Complainant allegedly identified Plaintiff from at least twenty feet away but up to sixty feet
away."  Pl. RSUF ¶¶ 5-6.  Plaintiff does not deny, however, that the Complainant made these
statements to the officers.

get up off the ground" while the "other officers on the scene were telling him to put his hands behind his back." *Id.* at 306:12-14.  Becerra "interpreted [Plaintiff's] actions as resisting arrest and trying to get away from the police" and "immediately decided to deploy" his taser. *Id.* at 306:15-22.

At some point during the struggle to arrest Plaintiff, Rule felt a kick on his left knee. JSUF ¶ 8.  According to Rule, he "looked down almost instantaneously" and "saw [Plaintiff's] red sneaker . . . on [his] knee."  ECF No. 275-8 at 95:14-16.  Meanwhile, during the struggle to arrest Plaintiff, the Complainant took the jacket and left the scene.  Am. Compl. ¶ 8; ECF No. 241 ("Ans.") ¶ 8.

Upon being subdued, Plaintiff was arrested for robbery in the second degree, in violation of N.Y. Penal Law § 160.10; assault on a police officer, in violation of N.Y. Penal Law § 120.08; criminal possession of stolen property in the fourth degree, in violation of N.Y. Penal Law § 165.45; resisting arrest, in violation of N.Y. Penal Law § 205.30; and criminal possession of stolen property in the fifth degree, in violation of N.Y. Penal Law § 165.40. JSUF ¶ 9; ECF No. 275-9 at 2.  On March 20, 2016, at 5:15 p.m., Sikorski signed a criminal complaint charging Plaintiff with three counts of assault on a peace officer, one count of criminal possession of stolen property in the fifth degree, and one count of resisting arrest. JSUF ¶ 12; ECF No. 275-10 at 2-3.  The complaint stated that during the incident, Sikorski "suffered a sprained ankle," Tennariello "suffered a concussion and swelling to his hand and finger," and Rule "sustained an injury to his neck that causes him pain."  ECF No. 275-10 at 2.  Some time thereafter, Rule underwent an MRI of his left shoulder and left knee for injuries that he sustained during the incident; he learned that the meniscus in his left knee was torn. JSUF ¶ 10.  Rule ultimately had surgery to repair the torn meniscus in his left knee.  *Id.* ¶ 11.

A grand jury indicted Plaintiff on two counts of assault in the second degree for allegedly assaulting Rule and Sikorski and one count of resisting arrest. *Id.* ¶ 13. Sikorski, Rule, Tennariello, and Becerra testified at Plaintiff's trial. ECF No. 301 ("Defs. RSUF") ¶ 33. On May 2, 2017, a petit jury convicted Plaintiff of resisting arrest and assaulting Rule but acquitted Plaintiff of assaulting Sikorski. ECF No. 291-3. Plaintiff was sentenced to five years' imprisonment. Am. Compl. ¶ 14; Ans. ¶ 14.

On October 27, 2020, the First Department held that Plaintiff's "request to charge justification, with regard to his kicking and flailing as officers tried to subdue and arrest him, should have been granted." *People v. Banyan*, 131 N.Y.S.3d 150, 150 (1st Dep't 2020) ("Viewed in the light most favorable to the defense, the testimony and video evidence show that after defendant resisted police efforts to handcuff him, approximately eight additional officers joined in a struggle, punching and tazing defendant, and the police lieutenant used a baton to roll defendant's Achilles tendon."). The First Department reversed Plaintiff's conviction and remanded for a new trial. *Id.*

All criminal charges against Plaintiff were dismissed on speedy-trial grounds on September 9, 2022. Am. Compl. ¶ 73; Ans. ¶ 73; ECF No. 223.

## II. Federal Procedural History

Plaintiff filed this suit on June 29, 2017. ECF No. 2.[3] On September 4, 2018, Defendants moved for summary judgment. ECF No. 68. The motion was denied without prejudice on September 26, 2018, based on Plaintiff's unresolved motion to compel additional discovery responses. ECF No. 78; *see also* ECF No. 82.

---

[3] Plaintiff initially proceeded *pro se*. On November 10, 2020, Judge Liman granted Plaintiff's request for *pro bono* counsel. ECF No. 160. The Court expresses its gratitude to Huth Reynolds LLP (and, previously, Pryor Cashman LLP) for providing *pro bono* services to Plaintiff.

On August 24, 2020, Defendants moved for summary judgment again.  ECF No. 152.

On March 26, 2021, Judge Liman granted in part and denied in part Defendants' motion.

*Banyan v. Sikorski*, No. 17-cv-04942 (LJL), 2021 WL 1163653 (S.D.N.Y. Mar. 26, 2021),

*reconsideration denied*, 2021 WL 2156226 (S.D.N.Y. May 27, 2021).  On November 1, 2021,

Judge Liman stayed the case "until the conclusion of Plaintiff's state-court criminal trial" on

remand from the First Department.  ECF No. 210 at 1; *see* ECF No. 223 (Plaintiff's letter

reporting that all charges were dropped on September 9, 2022).  The case was reassigned to

the undersigned on September 26, 2022.  ECF No. 225.

On February 3, 2023, the Court granted Plaintiff's motion for leave to file an amended

complaint.  *Banyan v. Sikorski*, No. 17-cv-04942 (JLR), 2023 WL 1765869 (S.D.N.Y. Feb. 3,

2023).  Plaintiff filed the Amended Complaint on February 9, 2023.  Am. Compl.  Defendants

answered the Amended Complaint on February 23, 2023.  Ans.

On October 2, 2023, the Court granted Plaintiff's request to extend the close of expert

discovery (and, thus, of all discovery) until January 15, 2024.  ECF No. 258 at 1; *see also*

ECF No. 259 at 2-3.  On October 17, 2023, the Court – citing its interest in "expediting the

resolution of this 2017 case" – set down a schedule for pre-motion letters "on any anticipated

dispositive motions, assuming that such motions do not depend on expert discovery."  ECF

No. 266.  The Court instructed the parties to "advise the Court if this assumption is incorrect,"

and added that "motions to exclude experts, if any, will not be due until a later date to be set

by this Court."  *Id.*; *see Clark v. Hanley*, 89 F.4th 78, 96 n.22 (2d Cir. 2023) ("It is well-

established that district courts have discretion to structure the sequence of issues to be

adjudicated in a given case.").  Following receipt of the parties' pre-motion letters, the Court

set a briefing schedule for summary judgment.  ECF Nos. 267-270.

On December 6, 2023, Defendants moved for partial summary judgment on Plaintiff's claims of false arrest and malicious prosecution.  Br.  The motion is fully briefed.  Opp.; Reply.

## LEGAL STANDARD

Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies this burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 108 (2d Cir. 2023) (citation omitted).  "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Anderson*, 477 U.S. at 252.

## DISCUSSION

### I.   False Arrest

Plaintiff's false-arrest claim under Section 1983 "derives from his Fourth Amendment right to remain free from unreasonable seizures."  *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006) (Sotomayor, J.).  "In analyzing § 1983 false arrest claims, [courts] look to the law of the state in which the arrest occurred."  *Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022).  "Under New York law, to prevail on a claim for false arrest, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the

confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (brackets, quotation marks, and citation omitted); *accord Roberts v. City of New York*, 97 N.Y.S.3d 3, 8 (1st Dep't), *aff'd*, 137 N.E.3d 497 (N.Y. 2019).  Because "an act of confinement is privileged if it stems from a lawful arrest supported by probable cause," *De Lourdes Torres v. Jones*, 47 N.E.3d 747, 760 (N.Y. 2016), "probable cause is a complete defense to an action for false arrest brought under New York law or § 1983," *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quotation marks and citation omitted); *accord DelGrosso v. McCann*, 162 N.Y.S.3d 738, 738 (1st Dep't 2022).

Here, the central dispute pertaining to Plaintiff's false-arrest claim is whether Sikorski, Tennariello, and Rule (collectively, the "Arresting Officers") had actual and/or arguable probable cause to arrest Plaintiff.  "Officers have probable cause when they have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Ashley*, 992 F.3d at 136 (quotation marks and citation omitted). "[W]hen faced with a claim for false arrest, [a court must] focus on the validity of the *arrest*, and not on the validity of each charge." *Jaegly*, 439 F.3d at 154.  "In other words, a police officer is not liable for a false arrest under Section 1983 if probable cause to arrest the plaintiff existed for *any* crime – whether or not that particular crime was closely related to the offense the officers said was the reason for arrest." *Kee v. City of New York*, 12 F.4th 150, 158-59 (2d Cir. 2021) (quotation marks and citation omitted).  Even in the absence of probable cause, "[q]ualified immunity protects an officer so long as he had arguable probable cause to arrest, which exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the

probable cause test was met." *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (quotation marks and citation omitted).

Importantly here, an officer has probable cause to arrest if she has "received information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (brackets and citation omitted). Stated differently, "an eyewitness's unequivocal identification of an individual as the perpetrator of the crime generally establishes probable cause, as long as it is reasonable to believe the eyewitness under the circumstances." *Nunez v. Diedrick*, No. 14-cv-04182 (RJS), 2017 WL 2257350, at *3 (S.D.N.Y. May 19, 2017) (brackets and citation omitted), *aff'd sub nom. Nunez v. City of New York*, 735 F. App'x 756 (2d Cir. 2018) (summary order).

Based on the Complainant's initial account of his friend having been beaten and robbed, the Complainant's subsequent visual identification of Plaintiff and the jacket just minutes after his friend's alleged assault, and the fact that Plaintiff matched the physical description initially given by the Complainant, the Arresting Officers had probable cause to arrest Plaintiff for several offenses including robbery in the second degree, criminal possession of stolen property in the fifth degree, and harassment in the second degree.[4] Therefore, Plaintiff's false-arrest claim fails because there was probable cause to arrest Plaintiff. *See, e.g., Tortora v. City of New York*, 804 F. App'x 35, 37 (2d Cir. 2020)

---

[4] "A person is guilty of robbery in the second degree when he forcibly steals property and when . . . [h]e is aided by another person actually present." N.Y. Penal Law § 160.10(1). "A person is guilty of criminal possession of stolen property in the fifth degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof." *Id.* § 165.40. "A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person . . . [,] [h]e or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same." *Id.* § 240.26(1).

(summary order) ("[A]n eyewitness told [the officer] that she observed men in her neighbor's shed.  The eyewitness identified Tortora as one of the perpetrators.  Based on the eyewitness's initial identification, [the officer] had probable cause to arrest Tortora."); *Zalewski v. Nappi*, No. 15-cv-00141 (AMD), 2016 WL 11408357, at *3 (E.D.N.Y. Sept. 1, 2016) (shortly after a shooting, an eyewitness "identified the plaintiff as he sat in the back of a police car, saying, 'It's him'"; this identification provided probable cause to arrest the plaintiff, given the absence of "any reason [for the arresting officers] to question the truthfulness or reliability of this identification, which was made in close temporal and physical proximity to the shooting"); *Merritt v. City of New York*, No. 97-cv-04929 (DC), 2001 WL 1097866, at *2 (S.D.N.Y. Sept. 19, 2001) ("Officer Bradley certainly had probable cause, after the eyewitness had identified [the] plaintiff as a perpetrator[,] to arrest [the] plaintiff for burglary.").

Plaintiff's attempts to raise several disputes of material fact on this claim are unavailing.  For example, Plaintiff notes that although Tennariello and Rule testified that the Complainant identified the direction in which the three men had fled, Sikorski testified "that he, not the Unknown Complainant, was the one who saw [the] three men . . . [and] pointed them out to Officer Tenn[ari]ello."  Pl. RSUF ¶ 4 (quotation marks omitted).  The Court assumes that, as Plaintiff urges, Sikorski's recollection on this point is more accurate than that of his colleagues.  *See Rupp*, 91 F.4th at 634 (on summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party" (emphasis and citation omitted)).  But Plaintiff never explains why this fact is salient.  Far more significant is the unrebutted evidence that the Complainant identified Plaintiff and the other two men as the individuals who beat up the Complainant's friend and stole his friend's jacket.  *See* Trial Tr. at 50:21-23, 218:7-10.  Regardless of who first spotted the three men, the Complainant's subsequent

identification provided the Arresting Officers with probable cause to arrest Plaintiff in this case.

Plaintiff makes much of the fact that the Complainant "made his identification from 20-60 feet away, at night, from the backseat of a moving vehicle with tinted windows." Opp. at 1; *see also id.* ("The Officers prevented the Unknown Complainant from making a reliable identification by attacking Plaintiff rather than approaching him."); *id.* at 8-9 (expanding on these assertions). But Plaintiff cites no facts or law suggesting that these conditions rendered the Complainant's eyewitness account and in-person identification so unreliable as to preclude probable cause. Indeed, courts in this Circuit have held that even imperfect eyewitness accounts can support probable cause. *See, e.g.*, *Harig v. City of Buffalo*, No. 22-30, 2023 WL 3579367, at *4 (2d Cir. May 22, 2023) (summary order) ("Although Zachary was intoxicated when he gave his supporting deposition identifying Harig as an assailant in the August 25, 2016 fight, we have previously held that intoxicated witnesses' accounts can furnish probable cause in certain circumstances."); *Newton v. City of New York*, 640 F. Supp. 2d 426, 442 (S.D.N.Y. 2009) ("Even if a victim is hospitalized and under the influence of medication, when the victim identif[ies] a photo from an array, this provides the police with probable cause to arrest." (original brackets, quotation marks, and citation omitted)); *see also Rizzo v. Edison, Inc.*, 419 F. Supp. 2d 338, 343-44, 346-49 (W.D.N.Y. 2005) (school secretary received a bomb-threat phone call from someone identifying herself as plaintiff; school secretary told the responding officer that she recognized the caller's voice as plaintiff's voice; this vocal identification, by itself, sufficiently supported probable cause to defeat plaintiff's subsequent false-arrest claim), *aff'd*, 172 F. App'x 391 (2d Cir. 2006) (summary order). Apart from innuendo, Plaintiff gives no reason to conclude that the Arresting Officers should have doubted the Complainant's veracity. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (a

party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" (citation omitted)).

Plaintiff further attempts to create an issue of fact by relying on an expert report authored by Dr. Jon Shane, an associate professor of criminal justice at John Jay College of Criminal Justice. ECF No. 291-2 (the "Shane Report" or "Shane Rep.") at 1. Plaintiff's submission of the Shane Report conflicts with the Court's order setting the scope of the present motion practice. The Court scheduled briefing on the assumption that any forthcoming motions would "not depend on expert discovery," and "[t]he parties [we]re instructed to *advise the Court if this assumption [wa]s incorrect*." ECF No. 266 (emphasis added). Once Plaintiff realized – either before or after Defendants filed their motion – that his opposition might rely on expert testimony, he should have promptly alerted the Court. *See* Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."). Plaintiff did not do so. Instead, by filing the Shane Report, Plaintiff acted inconsistently with this Court's instruction and potentially subjected Defendants to unfair surprise.

Notwithstanding the foregoing, the Shane Report raises no genuine dispute of material fact on Plaintiff's false-arrest claim.[5] Although "the issue of whether or not probable cause to arrest exists is a legal determination that is not properly the subject of expert opinion testimony," *Cameron v. City of New York*, 598 F.3d 50, 62 (2d Cir. 2010) (citation omitted), an expert may offer "an opinion relevant to applying a legal standard such as probable cause"

---

[5] The Shane Report also discusses matters pertaining to Plaintiff's excessive-force claim. The Court expresses no view at this time on those portions of the Shane Report.

by "describing sound professional standards and identifying departures from them," *Restivo v. Hessemann*, 846 F.3d 547, 580 (2d Cir. 2017) (citation omitted).  Ultimately, however, "[t]he Fourth Amendment – not police protocols – determines whether an officer had probable cause." *Borges v. City of New York*, 621 F. Supp. 3d 362, 371 (E.D.N.Y. 2022); *see Wren v. United States*, 517 U.S. 806, 815 (1996) ("[P]olice enforcement practices . . . vary from place to place and from time to time.  We cannot accept that the search and seizure protections of the Fourth Amendment are so variable and can be made to turn upon such trivialities." (citations omitted)).

Dr. Shane opines that "[p]olice academy training and accepted police industry standards require officers to independently corroborate the account given to them by someone, including a crime victim and or an eyewitness."  Shane Rep. at 17-18.  Dr. Shane faults the Arresting Officers for "fail[ing] to investigate by asking salient questions about the alleged crime or even attempt to speak to the victim before they employed force against" Plaintiff, and for "not ask[ing] whether the Unknown Complainant was an eyewitness to the alleged crime."  *Id.* at 18.[6]  Dr. Shane suggests that the Arresting Officers "should have parked the car, approached [Plaintiff] without attempting to arrest him, initiated an investigative detention (based upon reasonable suspicion)[,] and asked the Unknown Complainant to view

---

[6] Dr. Shane also asserts that "[t]he fact that the officers ignored their responsibility to check the condition of the alleged victim so that they could instead initiate a violent encounter with [Plaintiff] indicates that their mindset was not focused on public safety, but rather on evoking a confrontation."  Shane Rep. at 18.  This opinion regarding the Arresting Officers' state of mind is improper, as "it is well established that an expert may not opine on the state of mind or knowledge of a party."  *In re Bristol-Myers Squibb Co. CVR Sec. Litig.*, 658 F. Supp. 3d 220, 234 (S.D.N.Y. 2023); *accord In re Rezulin Products Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony.").

[Plaintiff] with none of the above-listed obstructions [such as tinted windows, the distance between Plaintiff and the Complainant, and a moving vehicle]." *Id.* at 20.

Regardless of whether such measures may have been advisable, nothing in the Shane Report undercuts the clear law of this Circuit that an officer has probable cause if she receives information from an eyewitness "unless the circumstances raise doubt as to the [eyewitness's] veracity." *Betts*, 751 F.3d at 82 (citation omitted). "[E]ven assuming . . . that additional police investigation could somehow have uncovered evidence that conflicted with the [Complainant's] statements, that evidence might have been relevant to the issue of reasonable doubt at the criminal trial at the back end of the prosecution." *Roberts*, 97 N.Y.S.3d at 10. But "it would have provided no sound basis to controvert probable cause to arrest plaintiff at the front end of the criminal investigation predicated on the information and accusations provided to police by [the Complainant]." *Id.* In short, nothing in the Shane Report casts doubt on the conclusion that, under the circumstances here, the Arresting Officers had probable cause to arrest Plaintiff based on the Complainant's contemporaneous eyewitness report, matching physical description, and possession of an allegedly stolen jacket. Thus, the Arresting Defendants – Sikorski, Tennariello, and Rule – are entitled to summary judgment on Plaintiff's claim for false arrest.

## II.   Malicious Prosecution

The Court now turns to Plaintiff's claim for malicious prosecution. "[T]he parties' briefs assume that New York law controls this issue, and such implied consent is sufficient to establish choice of law." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004) (ellipsis, quotation marks, and citation omitted). "Under New York law, a malicious-prosecution claim requires a plaintiff to show (1) the initiation or continuation of a criminal proceeding against [the] plaintiff; (2) termination of the proceeding in [the] plaintiff's favor;

14

(3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." *Dettelis v. Sharbaugh*, 919 F.3d 161, 163-64 (2d Cir. 2019) (quotation marks and citation omitted); *accord De Lourdes Torres*, 47 N.E.3d at 760. Plaintiff's malicious-prosecution claim fails for several reasons.

To start, several Defendants – Tennariello, Rule, and Becerra – did not initiate or continue a criminal proceeding against Plaintiff.  "Under New York law, police officers can 'initiate' prosecution by filing charges or other accusatory instruments." *Cameron*, 598 F.3d at 63.  Only Sikorski signed the criminal complaint against Plaintiff; Tennariello, Rule, and Becerra did not.  ECF No. 275-10 at 3.  To be sure, "a claim for malicious prosecution can still be maintained against a police officer" that did not directly file charges "if the officer is found to play an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (brackets, quotation marks, and citation omitted).  "This element might be satisfied by, for example, showing that an officer generated witness statements or was regularly in touch with the prosecutor regarding the case." *Id.*  "[A]n arresting officer may [also] be held liable for malicious prosecution when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors or when he or she withholds relevant and material information." *Deanda v. Hicks*, 137 F. Supp. 3d 543, 575 (S.D.N.Y. 2015) (original brackets, ellipsis, and citation omitted).  Merely testifying, however, is not enough. *See Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010) ("To initiate a prosecution, a defendant must do more than report the crime or give testimony."); *Burgess v. DeJoseph*, 725 F. App'x 36, 40 (2d Cir. 2018) (summary order) (plaintiff "failed to present sufficient evidence to permit a jury to find defendants responsible for continuing [plaintiff's] prosecution," insofar as "defendants' post-arraignment involvement in the prosecution" was

limited to "the normal police tasks of reporting information [and] giving testimony" (original brackets, quotation marks, and citation omitted)).

Here, Plaintiff principally relies on the fact that Tennariello, Rule, and Becerra testified at Plaintiff's criminal trial. *See* Opp. at 10-11. But Plaintiff does not produce evidence that Tennariello, Rule, and/or Becerra "generated witness statements," *Bermudez*, 790 F.3d at 377, were "regularly in touch with the prosecutor regarding the case," *id.*, "create[d] false information likely to influence a jury's decision and forward[ed] that information to prosecutors," *Deanda*, 137 F. Supp. 3d at 575 (citation omitted), or "withh[eld] relevant and material information," *id.* (citation omitted). Thus, Plaintiff's claim against Tennariello, Rule, and Becerra fails on the first prong. *See Manganiello*, 612 F.3d at 163.

Although Sikorski signed the criminal complaint, Defendants argue – and the Court agrees – that Plaintiff's claim against Sikorski for malicious prosecution is deficient because Sikorski had probable cause to charge Plaintiff on all charged counts. "In the context of a malicious prosecution claim, probable cause under New York law is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Cardoza v. City of New York*, 29 N.Y.S.3d 330, 340 (1st Dep't 2016) (quoting *Rounseville v. Zahl*, 13 F.3d 625, 629-30 (2d Cir. 1994)). "The existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Manganiello*, 612 F.3d at 161-62 (brackets and citation omitted); *accord DelGrosso*, 162 N.Y.S.3d at 738. "While a false arrest claim fails if there was probable cause to arrest the plaintiff for *any* offense, in the malicious prosecution context, there must be probable cause for the offenses *charged*." *Guillen v. City of New York*, 625 F. Supp. 3d 139, 155 (S.D.N.Y. 2022) (brackets and citation omitted). As noted, Plaintiff was charged with three counts of assault on a peace officer (as against Sikorski, Tennariello, and

Rule), one count of criminal possession of stolen property in the fifth degree, and one count of resisting arrest.  JSUF ¶ 12; ECF No. 275-10 at 2.  Therefore, the question is whether Sikorski had arguable and/or actual probable cause to charge Plaintiff with those offenses.

The Court starts with the counts on which the grand jury indicted Plaintiff: the two assault counts (for Sikorski and Rule) and the single count of resisting arrest.  JSUF ¶ 13.  "Where, as here, a grand jury indicted the plaintiff on the relevant criminal charge, New York law creates a presumption of probable cause that can only be overcome by evidence that the indictment was the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith."  *Bermudez*, 790 F.3d at 377 (quotation marks and citation omitted); *accord Colon v. City of New York*, 455 N.E.2d 1248, 1251 (N.Y. 1983).  Plaintiff does not overcome the presumption of probable cause here.

Plaintiff's argument on this point centers on a surveillance video from a Starbucks near the scene of the arrest (the "Starbucks Video").  Opp. at 11-17; *see* ECF No. 300-1.  According to Plaintiff, Sikorski's testimony to the grand jury ███████████████ was ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████  Plaintiff contrasts these statements with those Sikorski made during the state criminal trial and during his deposition in the case at bar, arguing that "during the criminal trial, [Sikorski] makes clear that a significant portion of the [e]ncounter took place on the Starbucks Video, and in the deposition testimony he easily interprets what the video shows."  Opp. at 13; *see* Trial Tr. at 60:13-19, 70:11-22, 111:20-112:4; ECF No. 291-10 at 83:3-19.  In Plaintiff's view, these "direct[] contradict[ions] . . . rebut the presumption of probable cause."  Opp. at 14.  Plaintiff further asserts that ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

Having reviewed the submitted portions of Sikorski's testimony before the grand jury, at trial, and at the deposition, as well as the Starbucks Video itself, the Court is unpersuaded by this line of argument.  Notwithstanding Plaintiff's assertions to the contrary, Sikorski's grand-jury testimony did not "directly contradict" his subsequent testimony at trial or during his deposition.  Opp. at 14; *see Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").  Inasmuch as Sikorski testified before the grand jury ████████████████████████████████████████, the footage in the record confirms this characterization.

Sikorski's grand-jury testimony certainly was not so replete with issues as to suggest that it was fraudulent, perjurious, or otherwise undertaken in bad faith.  *See Bermudez*, 790 F.3d at 377.  The supposedly inconsistent trial testimony highlighted by Plaintiff centered primarily on Sikorski's recollections of the incident, and nothing that Sikorski stated at trial contradicted his earlier grand-jury testimony.  Many of the questions at trial inquired about Sikorski's recollections, ████████████████████████████████████  Even when asked about the Starbucks Video, Sikorski gave qualified answers about what he could see.  *See id.* at 14 (qualifying his testimony repeatedly by relaying what he "thinks" and "believes" is shown in the video).  Sikorski's trial testimony is thus reconcilable with his characterization of the Starbucks Video as unclear in testifying before the grand jury.

Further, even if Plaintiff is correct ████████████████████████████████ ██████, Plaintiff offers no plausible reason to conclude that this omission was Sikorski's

18

fault.  Presumably a prosecutor, not a police officer, chose what evidence to present to the grand jury.  Plaintiff has presented no evidence to the contrary, let alone sufficient evidence for a reasonable juror to conclude that Sikorski's conduct rose to the level of suppressing potentially exculpatory evidence.  *See, e.g.*, *Salim v. City of New York*, No. 15-cv-08521 (CM), 2016 WL 7489083, at *6 (S.D.N.Y. Dec. 22, 2016) ("The grand jury acted on the basis of a presentment that was made by the [prosecutor] – not the police.  It was the [prosecutor] who decided what evidence to present and what argument to make.  The defendant officers have no role to play in grand jury proceedings (except as witnesses if called upon to testify), and nothing in the instant complaint suggests that any of the four named defendants did anything more than what police officers routinely do when interacting with a prosecutor's office.").  The Court thus rejects the argument that Sikorski's grand-jury testimony overcomes the presumption of probable cause for the offenses on which the grand jury indicted.

The Court turns next to the unindicted count of assaulting Tennariello.  "A person is guilty of assault on a peace officer[] [or a] police officer . . . when, with intent to prevent a peace officer[] [or a] police officer . . . from performing a lawful duty, he or she causes serious physical injury to such peace officer[] [or] police officer."  N.Y. Penal Law § 120.08.  The "facts, actual or apparent," known to Sikorski, *Cardoza*, 29 N.Y.S.3d at 340 (citation omitted) – that Tennariello had suffered "a concussion and swelling to his hand and finger" while arresting Plaintiff, ECF No. 275-10 at 2, and that Plaintiff had appeared to be resisting Tennariello's attempts to arrest Plaintiff – were "strong enough to justify a reasonable man in the belief that [Sikorski] ha[d] lawful grounds for prosecuting" Plaintiff for assaulting Tennariello, *Cardoza*, 29 N.Y.S.3d at 340 (citation omitted).  Accordingly, Sikorski had probable cause to charge Plaintiff under N.Y. Penal Law § 120.08, thus defeating Plaintiff's claim of malicious prosecution based on this charge.  *See Manganiello*, 612 F.3d at 161-62.

The Court concludes with the unindicted count of criminal possession of stolen property in the fifth degree.  As explained above, there was probable cause to arrest Plaintiff for this offense.  "Where, as here, probable cause existed for the arrest itself, a plaintiff pursuing a malicious prosecution claim must establish that probable cause somehow 'dissipated' between the time of arrest and the commencement of the prosecution."  *Barua v. City of New York*, No. 14-cv-00584 (NRB), 2016 WL 7494875, at *10 (S.D.N.Y. Dec. 29, 2016) (further quotation marks and citation omitted); *accord Brown v. City of New York*, 458 N.E.2d 1248, 1249 (N.Y. 1983).  "In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996); *accord McFall v. City of New York*, 132 N.Y.S.3d 283, 284 (1st Dep't 2020); *Coleman v. City of New York*, 177 F. Supp. 2d 151, 158 n.5 (S.D.N.Y. 2001), *aff'd*, 49 F. App'x 342 (2d Cir. 2002) (summary order).  Plaintiff identifies no intervening fact that arose between his arrest around 4:00 a.m. on March 20, 2016 (for which, as discussed above, Sikorski had probable cause) and Sikorski's signing of the criminal-court complaint about 13 hours later, or even thereafter. JSUF ¶ 2; ECF No. 275-10 at 3.  Sikorski therefore had probable cause to charge Plaintiff with criminal possession of stolen property in the fifth degree.

In sum, Defendants are entitled to summary judgment on Plaintiff's malicious-prosecution claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgment is GRANTED.  The Clerk of Court is respectfully directed to terminate the motion at ECF No. 274.  The Clerk of Court is further respectfully directed to file this opinion and order under seal with "case participants" set as the viewing level.  Within **thirty (30) days** of this

decision, the parties shall submit all materials required by Section 5 of the Court's Individual

Rules for purposes of proceeding to trial on the remaining excessive-force claims against

Sikorski and Tennariello, as well as any motions with respect to expert testimony.

Dated:  May 6, 2024
        New York, New York

                                SO ORDERED.


                                _Jennifer Rochon_____
                                JENNIFER L. ROCHON
                                United States District Judge