UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN C. BANYAN, | |
| Plaintiff, | |
| -against- | 17-cv-04942 (JLR) |
| POLICE OFFICER CRAIG SIKORSKI and POLICE OFFICER JOSEPH TENNARIELLO, | **ORDER** |
| Defendants. | |

JENNIFER L. ROCHON, United States District Judge:

    This Court having held a jury trial from April 7, 2025 to April 14, 2025, IT IS

HEREBY ORDERED that the attached Court Exhibits be filed on the docket:

- Court Exhibit 1: Draft Voir Dire Questionnaire.

- Court Exhibit 2: Preliminary Jury Instructions.

- Court Exhibit 3: Draft Jury Instructions.

- Court Exhibit 4: Draft Verdict Sheet

- Court Exhibit 5: Final Jury Instructions.

- Court Exhibit 6: Final Verdict Sheet

- Court Exhibit 7: Draft Special Verdict Form.

- Court Exhibit 8: Jury Note.

- Court Exhibit 9: Excerpt of Trial Transcript in response to Jury Note.

- Court Exhibit 10: Jury Note.

- Court Exhibit 11: Jury Note.

- Court Exhibit 12: Jury Note.

- Court Exhibit 13: Jury Note.

- Court Exhibit 14: Final Special Verdict Form.

- Court Exhibit 15: Verdict Form completed by the Jury.

- Court Exhibit 16: Jury Note.

- Court Exhibit 17: Jury Note.

- Court Exhibit 18: Special Verdict Form completed by the Jury.

Dated: April 16, 2025
       New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge

Court Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN BANYAN,

                              Plaintiff,

            -against-

POLICE OFFICER CRAIG SIKORSKI,
POLICE OFFICER JOSEPH TENNARIELLO,

                              Defendants.

Case No. 17 cv 4942 (JLR)

JENNIFER L. ROCHON, United States District Judge:

## QUESTIONS FOR JURORS

**Please indicate if your answer to any of the following questions is "yes" by circling the number of that question. If your answer to a question is "no," you need not do anything. <u>Do not write your name or make any other marks on the questionnaire.</u> The only marks you should make are circles around the questions for which the answer is "yes." If, when asked about a "yes" answer, there is a particularly sensitive issue, please say so and we will speak at the bench.**

### A.  General Questions

1.   Do you have any commitments that would interfere with your serving as a juror on this trial that is expected to end by early next week?

2.   Do you have any personal knowledge of the allegations in this case as I have described them?

3.   Have you read or heard anything about this case through the media, the Internet, or any other source?

4.   Do you have any ideas or prejudices that would make it difficult for you to follow my instructions as to the law?

5.   Do you have any doubt that you will be able to apply the law as I explain it to you, even if you disagree with the law or believe that it should be different?

6.   Are you unable to follow my instruction that you must deliberate solely on the evidence presented at trial and not based on any other information?

7.   Do you have any religious or ethical beliefs that would prevent you from passing judgment on another person or finding them liable?

8.   If you are chosen as a juror, do you know of any reason why you could not be fair and impartial?

## B.  Knowledge of People or Places

9.   The plaintiff in this case is Jonathan Banyan.  Do you know, or have you had any dealings, directly or indirectly, with Jonathan Banyan?

10.  The plaintiff will be represented at trial by attorneys Joshua Luke Rushing, Karl Huth and J. Zachary Morris from Huth Reynolds LLP?  Do you know any of these attorneys or the firm? Have you, or has anyone close to you, ever had any dealings with these attorneys or their firm?

11.  The defendants in this case are Police Officers Craig Sikorski and Joseph Tennariello from the New York City Police Department.  Do you or anyone close to you know, or had any dealings, directly or indirectly, with either officer?

12.  The lawyer for Officers Sikorski and Tennariello is Muriel Goode-Trufant, who is the corporation counsel. She is in charge of that entire office and will not personally appear at this trial. The trial will be handled by KellyAnne Holohan and Jacquelyn Dainow, who are trial counsel in the Office of the Corporation Counsel.  Do you know any of these attorneys?  Have you, or anyone close to you ever had any dealings with Ms. Holphan, Ms. Dainow, or the Office of the Corporation Counsel?

13.  The following individuals and entities may be mentioned during the trial, or may be witnesses in this case:

     a.   Jonathan Banyan

     b.   Joseph Tennariello

     c.   Craig Sikorski

     d.   Ian Rule

     e.   Dr. Shobhit Minhas

     f.   Dr. Elliott Rosenbaum

     g.   Jon Shane

     h.   Greenwich Avenue and Eighth Avenue in New York County

     i.   T.D. Bank at 122 Greenwich Avenue, New York, New York

     j.   Starbucks at 122 Greenwich Ave, New York, New York

     k.   Paul Brauer

     l.   Sean DeQuatro

Other than what you have disclosed in response to previous questions, do you know any of these individuals or places?  Have you, or has anyone close to you, had any dealings, directly or indirectly, with any of these individuals or places?

## C.  Personal Experiences and Opinions

14.    Have you, or has anyone close to you, ever studied or practiced law, or worked in any capacity in the legal field or court system?

15.    Have you, or has anyone close to you, ever worked for the New York City Police Department or in law enforcement or security?

16.    Have you or anyone close to you had an interaction with a New York City police officer or employees of the police department?

17.    Have you, or anyone close to you, ever been arrested?

18.    Do you have any feelings or views about the New York City Police Department or law enforcement generally that would affect your ability to be a fair and impartial juror in this case?

19.    Would you be unable or unwilling to follow my instruction that the testimony of a law enforcement officer is entitled to no more and no less weight than the testimony of another witness simply because the witness is a law enforcement officer?

20.    Have you ever made a complaint against a law enforcement officer?

21.    Would you be unable to follow my instruction that if you have ever watched television shows or movies about law enforcement, lawyers, police or trials, you must put aside any expectations you might have about this trial that are based on these shows?

22.    Do you have any feelings or views about the New York City Police Department or law enforcement generally that would affect your ability to listen to the evidence in this case with an open mind and to follow my instructions on the law?

23.    Have you ever served as a member of a grand jury?

24.    Have you ever served as a juror in any court?

25.    Have you or any member of your family ever been employed by a city, state or federal government?

26.    Have you ever been a party to a lawsuit, criminal or civil?

27.    Do you have any difficulty being fair and impartial in assessing the testimony of witnesses regardless of the witness's gender, race, national origin, religion, age, or disability?

**D. Difficulties in Understanding or Serving**

28.    Do you have any problems with your hearing or vision that would prevent you from giving full attention to all of the evidence at this trial?

29.    Are you taking any medication, or do you have any medical condition, that would prevent you from giving full attention to all of the evidence at this trial?

30.    Do you have any difficulty in reading or understanding English?

31.    Is there anything that I have not asked you about that would make you uncomfortable about sitting on this case, or that makes you feel like you cannot be a fair and impartial juror in this case?

**Court Exhibit 1**

<u>Questions for Individual Jurors</u>

1.  Please state your name, your county of residence, your borough if you live in one, and your neighborhood.  Have you lived in this county for more than 5 years?

2.  How old are you?

3.  Do you rent or own your home?

4.  How far did you go in school and what schools did you attend, beginning with high school?  (If college, what was your field of study in college?)

5.  Are you employed?  If so, who is your employer and what are your general job duties?  (If retired or unemployed, please identify your last employer and general job duties.)

6.  How long have you been employed in your current position?  If fewer than five (5) years, where else did you work in the last five (5) years?

7.  Who are the members of your household and for whom do they work?

8.  If you have grown children, for whom do they work?  If any are college students, what is their field of study?

9.  Do you belong to any social, union, professional, political, or religious organizations or clubs?  If so, which ones?

10. Where do you typically get your news (for example, print, television, cable news, radio, websites, social media)?  Which papers, shows, or sites in particular?

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN BANYAN,

                              Plaintiff,

              -against-                                    Case No. 17-cv-4942 (JLR)

POLICE OFFICER CRAIG SIKORSKI,
POLICE OFFICER JOSEPH TENNARIELLO,

                              Defendants.

JENNIFER L. ROCHON, United States District Judge:

## PRELIMINARY JURY INSTRUCTIONS

**1.  Role of Judge and Jury**

   **A.** Now that you have been sworn, let me give you some instructions about your duties as jurors. In the American system of justice, the judge and the jury have separate roles.

      **i.** My job is to instruct you as to the law that will govern this case, and I will give you most of those instructions at the very end of the trial, although I will give you some, including these, before the end. You **must** take your instructions from the Court — that is, from me —and you are bound by those instructions. You may not substitute your own ideas of what the law is or what you think the law should be.

      **ii.** Your job as jurors will be to determine the facts based on the evidence that comes in during the course of the trial. You are the only deciders of the fact issues, and your determination of the facts will control.

      **iii.** Please do not take anything that I say or do during the course of the trial as indicating that I have a view as to your factual determination. Those decisions are for you.

    **iv.** At the conclusion of the case, your job will be to determine whether the plaintiff has proven its claims against each defendant according to my instructions on the law.

## 2. Order of Trial

    **A.** Let me explain how the trial will proceed.

    **B.** The first/next step in the trial will be opening statements. First, counsel for the plaintiff will make an opening statement, which is simply an outline to help you understand the evidence as it is presented. Then counsel for the defendants will make an opening statement. I instruct you, however, that opening statements are not evidence.

    **C.** After opening statements, the plaintiff will present its evidence. That evidence will consist of the testimony of witnesses as well as documents and exhibits. The plaintiff's lawyers will examine the witnesses and then the defendants' lawyers may cross-examine them. Following the plaintiff's case, the defendants may present a case and may call additional witnesses. The plaintiff's lawyers will have the opportunity to cross-examine any witnesses testifying for the defendants.

    **D.** For the efficiency of the trial and convenience of the witnesses, witnesses will generally be called just once whether they are called by the plaintiff or defendants and both parties will conduct their examination of that witness at that time. Do not concern yourself with order of the witnesses; you may consider the relevant testimony of all witnesses, regardless of who may have called them.

    **E.** After the presentation of evidence is completed, counsel for the parties will deliver their closing arguments to summarize and interpret the evidence. Just as the lawyers' opening statements are not evidence, their closing arguments are not evidence either.

    **F.** Following closing arguments, I will instruct you on the law. Then you will retire to deliberate on your verdict, which must be unanimous, and must be based on the evidence presented at trial.

    **G.** It is important to remember that this is a civil case. You may have heard of the "beyond a reasonable doubt" standard in criminal cases. That requirement does not apply to a civil case and you should put it entirely out of your mind. In civil cases, the burden is different and it is called proof by a "preponderance of the evidence." To establish facts by a preponderance of the evidence means to prove that the facts are more likely true than not true. I will, however, instruct you fully on the burden of proof after all of the evidence has been received.

### 3.    What Is and Isn't Evidence

**A.** What, then, is evidence?  Evidence consists only of the testimony of witnesses, documents and other things admitted as evidence, or any stipulations agreed to by the attorneys.  Some of you probably have heard the terms "circumstantial evidence" and "direct evidence."  Do not be concerned with these terms.  You are to consider all the evidence given in this trial.

**B.** Certain things are not evidence and must not be considered by you.  The following is a list of what is not evidence:

    **i.** <u>First</u>, statements and questions by any of the attorneys are not evidence.  Nor are statements I make or questions I ask of a witness.  And, as I said a moment ago, opening and closing statements by the parties are not evidence.

    **ii.** <u>Second</u>, objections to questions are not evidence.  Counsel for the parties are permitted to raise an objection when they believe that evidence being offered is improper under the rules of evidence.  You should not be influenced by the objections or by my rulings on them.  If an objection is sustained, ignore the question and any answer that may have been given.  If it is overruled, treat the answer like any other.  If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

    **iii.** <u>Third</u>, testimony that I have excluded or told you to disregard is not evidence and must not be considered.

    **iv.** <u>Fourth</u>, anything you may have seen or heard outside the courtroom is not evidence and must be disregarded.  You are to decide the case based solely on the evidence presented here in the courtroom.

### 4.    Evaluating the Evidence

**A.** In deciding the facts of the case, you will have to decide the credibility of the witnesses — that is, how truthful and believable they are.  There is no formula to evaluate evidence.

    **i.** For now, suffice it to say that you bring with you into this courtroom all of the experience and background of your lives.  Do not leave your common sense outside the courtroom.  The same types of tests that you use in your everyday dealings are the tests that you should apply in deciding how much weight, if any,

to give to the evidence in this case.  You can apply the same tests here in this courtroom that you use in your everyday life when judging whether someone is telling you the truth:

    **a.**  Did they appear to be telling the truth?

    **b.**  Did they have a motive to tell you the truth or to lie?

    **c.**  Did they appear to have a good recollection of the events they're describing?

  **ii.**  Any test that you apply normally in making assessments of reliability and credibility, you can use here.  Sometimes, of course, it's not what a witness says but how they say it that can be important to that determination.

**B.**  The law does not require you to accept all of the evidence admitted at trial.  In determining what evidence you accept, you must make your own evaluation of the testimony from each of the witnesses and the exhibits that are received in evidence.

**C.**  It is essential, however, that you keep an open mind until you have heard all of the evidence in the case.  A case can be presented only step by step, witness by witness.

**D.**  As you know from experience, you can hear one person give his or her version of an event and think it sounds very impressive or even compelling, and yet, upon hearing another person's version of the same event — or even the same person cross-examined with respect to the event — things may seem very different.  In other words, there may be another side to any witness's story.

**E.**  You should use your common sense and good judgment to evaluate each witness's testimony based on all of the circumstances.  Again, I cannot emphasize too strongly that you must keep an open mind until the trial is over.  You should not reach any conclusions until you have all the evidence before you.

**5.**    **Rules of Conduct**

**A.**  Finally, let me caution you about certain rules and principles governing your conduct as jurors in this case.

**i.** <u>First</u>, you must <u>not</u> talk to <u>each other</u> about this case or about anyone who has anything to do with the case when you go to the jury room to decide on your verdict. And why do we have that rule? We have that rule because we know it's human nature, if you start discussing something, you start expressing a point of view, and then you start defending the point of view, and then you start agreeing or disagreeing with each other. We don't want you to do that until all the evidence is before you. During deliberations, that's the time to discuss the case. As I have said, keep an open mind until you start your deliberations at the end of the case.

**ii.** <u>Second</u>, do <u>not</u> communicate with <u>anyone else</u> about this case or with anyone who has anything to do with it until the trial has ended and you have been discharged as jurors. Anyone else includes members of your family and your friends. And no communicating about the case means no communicating on Facebook, Twitter, blogs, whatever. You may tell your family and friends that you are a juror in a civil case, but please do not tell them anything else about it until you have been discharged by me. Do not comment on social media about this case or the fact that you are a juror; do not update your status or any website to reflect that you are a juror.

**iii.** <u>Third</u>, do <u>not</u> let anyone talk to <u>you</u> about the case or about anyone who has anything to do with it. If any person should attempt to communicate with you about this case at any time throughout the trial, either in or out of the courthouse, you must immediately report that to my Deputy and to no one else. When I say report that communication to no one else, I mean that you should not tell anyone, including your fellow jurors.

    **a.** To minimize the probability of any such improper communication, it is important that you go straight to the jury room when you come in in the morning and that you remain in the courtroom or the jury room for the duration of the trial day. You should use the bathrooms in the jury room rather than the bathrooms on this or any other floor; as you were probably told already, you may not use the cafeteria. Given that our morning and afternoon breaks will be short, it is best that you remain in the jury room if you can.

**iv.** <u>Fourth</u>, do <u>not</u> do any research or any investigation on your own about the case or about anyone who has anything to do with the case. During the course of the trial, you will receive all the evidence you may properly consider to decide the case. Because of this, unless and until you are excused as a juror, you should not attempt to gather any information on your own relating to the case.

    **a.** Do <u>not</u> engage in any outside reading on this case.

    **b.** Do <u>not</u> attempt to visit any places mentioned in the case.

    **c.** Do <u>not</u> use the Internet — Google, Facebook, Twitter, or any other social media site — to learn anything about the case or anyone involved in the case, including the lawyers, witnesses, or me.

    **d.** Do <u>not</u> do research of any nature or talk to anyone about the facts of the case or anyone involved in it.

    **e.** The reason for these rules, as I am certain you understand, is that your decision in this case must be made solely on the evidence presented at trial, or lack of evidence.

  **v.** I expect you to inform me immediately, through my Deputy, if you become aware of another juror's violation of these instructions.

  **vi.** This is a public courtroom. People can come and go. It may be that you even know someone who enters this courtroom during this trial. If you do, that's fine. Just let my Deputy know so that I can give you a separate instruction.

## 6. Notetaking

  **A.** <u>Finally</u>, each of you will be given a notebook and pen. That is because I permit jurors to take notes. But you do not have to take notes. Notes are just an aid to your own recollection. The court reporters in this case record everything that is said in the courtroom and any portion of the testimony can be read back to you during your deliberations. If you do take notes, be aware that note-taking may distract you from something important that is happening on the witness stand. Also, if you do take notes, please begin writing on the second page of your legal pad, and please put your juror number on the first page of the pad, so that we can be sure that only you will be making and reviewing the notes that are written in your pad.

  **B.** I want to emphasize that your notes are not to be shared with fellow jurors during deliberations, that the fact that a juror has taken notes will not entitle him or her to any greater voice in the deliberations, and that a transcript will be available to all jurors if there is any difficulty remembering the testimony. If you do take notes, all notes must be left each day in the jury room. My Deputy will make sure that they are secure.

## 7.  Final Instructions

    **A.**  From this point until the time when you retire to deliberate, it is your duty not to discuss this case, and not to remain in the presence of other persons who may be discussing this case.  In that regard, please remember that the parties and counsel in this case have been instructed to have no contact with any of you.  So if you happen to see any of them outside this courtroom, and they do not acknowledge you, say hello, or make small talk, please do not take offense.  As I mentioned earlier, they are not being rude — they are simply following my instructions.

    **B.**  Now we will begin with the initial stage of the case, which, as I said to you, is opening statements, and we are going to begin with the plaintiff.  So at this time I am going to ask all of you to give your undivided attention to the lawyers as they make their opening statements.

**Court Exhibit 3**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN BANYAN,

                              Plaintiff,

          -against-                                          Case No. 17-cv-04942 (JLR)

POLICE OFFICER CRAIG SIKORSKI,
POLICE OFFICER JOSEPH TENNARIELLO,

                    Defendants.

JENNIFER L. ROCHON, United States District Judge:

# JURY INSTRUCTIONS

# TABLE OF CONTENTSr

I.    GENERAL INSTRUCTIONS ..................................................................................... 1

    A.    Introductory Remarks ................................................................................... 1

    B.    Role of the Court ........................................................................................... 1

    C.    Role of the Jury ............................................................................................ 2

    D.    Role of Counsel ............................................................................................ 2

    E.    Sympathy or Bias ......................................................................................... 3

    F.    Burden of Proof ........................................................................................... 4

    G.    What Is and Is Not Evidence ....................................................................... 5

    H.    Direct and Circumstantial Evidence ........................................................... 6

    I.    Witness Credibility ...................................................................................... 7

    J.    Prior Inconsistent Statement ....................................................................... 9

    K.    Use of Deposition Testimony .................................................................... 10

    L.    Stipulation of Facts ................................................................................... 10

II.    SUBSTANTIVE INSTRUCTIONS ....................................................................... 10

    A.    Section 1983 ............................................................................................... 11

            **1.**    **First Element – Action under Color of State Law** ....................... 12

            **2.**    **Second Element – Deprivation of a Federal Right** ...................... 12

                i.    Deprivation of a Federal Right: Excessive Force ................. 13

            **3.**    **Third Element – Proximate Cause** ............................................. 15

    B.    Plaintiff's Arrest ........................................................................................ 16

III.    DAMAGES ............................................................................................................ 16

    A.    Compensatory Damages ............................................................................ 17

    B.    Nominal Damages ...................................................................................... 19

    C.    Punitive Damages ...................................................................................... 19

IV.    DELIBERATIONS OF THE JURY ...................................................................... 20

    A.    Selection and Duties of Foreperson ......................................................... 20

    B.    Right to See Exhibits and Hear Testimony; Communication with the Court ....... 20

    C.    Notes ......................................................................................................... 21

    D.    Duty to Deliberate; Unanimous Verdict .................................................. 21

    E.    Verdict Form ............................................................................................. 22

    F.    Return of Verdict ....................................................................................... 23

V.    CONCLUSION ...................................................................................................... 23

# I.    GENERAL INSTRUCTIONS

## A.    Introductory Remarks

Members of the jury, I will now instruct you as to the law that governs this case.  You have

been handed a copy of the instructions I will read.  You should feel free to read along or to just

listen to me.  You will be able to take your copy of these instructions into the jury room.

Listening to these instructions may not be easy because they are long and extensive.  It is

important, however, that you listen carefully and concentrate.  You'll notice that I'm reading these

instructions from a prepared text.  It would be more lively, no doubt, if I just improvised.  But it's

important that I not do that.  The law is made up of words, and those words are very carefully

chosen.  So, when I tell you the law, it's critical that I use exactly the right words.

You have now heard all of the evidence in the case as well as the final arguments of the

parties.  You have paid careful attention to the evidence, and I am confident that you will act

together with fairness and impartiality to reach a just verdict in the case.

There are three parts to these instructions.  First, I'm going to give you some general

instructions about your role, and about how you are to decide the facts of the case.  Most of these

instructions would apply to just about any trial.  Second, I'll give you some specific instructions

about the legal rules applicable to this particular case.  Third, I'll give you some final instructions

about procedures and deliberations.

## B.    Role of the Court

My duty at this point is to instruct you as to the law.  It is your duty to accept these

instructions of law and to apply them to the facts as you determine them.  With respect to legal

matters, you must take the law as I give it to you.  If any attorney or witness has stated a legal

principle different from any that I state to you in my instructions, it is my instructions that you

must follow.  You must not substitute your own notions or opinions of what the law is or what you think it ought to be.  You are to consider these instructions together as a whole; in other words, you are not to isolate or give undue weight to any particular instruction.

### C.     Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts.  You evaluate the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Do not conclude from any of my rulings on objections or anything else I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case.  Any opinion I might have regarding the facts is of absolutely no consequence.

It is your sworn duty, and you have taken the oath as jurors, to determine the facts and to render judgment impartially and fairly, solely on the evidence in this case and the applicable law.

### D.     Role of Counsel

It is the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  It is my job to rule on those objections.  Therefore, why an objection was made or why I ruled on it the way I did is not your concern.  You should draw no inference from the fact that an attorney objects to any evidence.  Nor should you draw any inference from the fact that I might have sustained or overruled an objection.  If I sustained the objection, you may not consider the testimony or exhibit at issue; if I overruled the objection, you may consider the testimony or exhibit just as you would any other evidence in the case.

The personalities and the conduct of counsel in the courtroom are not in any way at issue. If you formed opinions or had reactions of any kind to the lawyers here, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those opinions or reactions should not enter into your deliberations.

During the course of the trial, I may have had to correct the presentation of an attorney, for example, to ask them to rephrase a question. You should draw no inference against the attorney or the client. It is the duty of the attorneys to advocate on behalf of their clients.

From time to time, the lawyers and I have had conferences out of your hearing. These conferences involved procedural and other legal matters, and should not enter into your deliberations at all.

### E.    Sympathy or Bias

You must evaluate the evidence calmly and objectively, without prejudice or sympathy. You must be completely fair and impartial. Your verdict must be based solely on the evidence presented at this trial, or the lack of evidence.

You may not consider, in deciding the facts of the case, any personal feelings you may have about the race, religion, national origin, gender, age, sexual orientation, disability, or physical appearance of any party or witness. It is equally improper for you to allow any personal feeling that you might have about the nature of the claims or defenses to influence you in any way. The parties in this case are entitled to a trial free from prejudice and bias. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

The case should be decided by you as an action between parties of equal standing in the community, of equal worth, and holding the same or similar stations in life. The defendants are not to be favored or disfavored because they are members of the New York City Police

Department, nor is the plaintiff to be favored or disfavored because of his status, employment, or background.  All parties are entitled to the same fair trial by you.

### F.    Burden of Proof

At various times in these instructions I will use the term "burden of proof" in order to inform you which party has the burden of proof on a particular claim or a particular issue.  As this is a civil case, the standard of proof is a preponderance of the evidence.

The party who has the burden of proof on a particular issue has the burden of establishing their position on that issue by a preponderance of the evidence. If you conclude that the party who has the burden of proof on an issue has failed to establish their position by a preponderance of the evidence, you must decide against that party on that issue.

What does a "preponderance of the evidence" mean?  To establish by a preponderance of evidence means to prove something is more likely so than not so.  A preponderance of the evidence means the greater weight of the evidence.  It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.  In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties, then you must decide that issue against the party having this burden of proof.  That is because the party bearing this burden must prove more than simple equality of evidence – the party must prove the element at issue by a preponderance of the evidence.  On the other hand, the party with this burden of proof need prove no more than a preponderance of the evidence.  So long as you find

that the scales tip, however slightly, in favor of the party with this burden of proof then that element will have been proved by a preponderance of the evidence.

One final note on the burden of proof: some of you may have heard of "proof beyond a reasonable doubt."  As I told you at the beginning of the trial, "beyond a reasonable doubt" is the standard of proof in a criminal trial.  It does not apply to a civil case such as this and you should put it out of your mind.

### G.    What Is and Is Not Evidence

In determining the facts, you must rely upon your own recollection of the evidence.  The evidence in this case is the sworn testimony of the witnesses and the exhibits received in evidence.

The only exhibits that are evidence in this case are those that were received in evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials that were used only to refresh a witness's recollection.  [DETERMINE IF NEEDED -- Some exhibits have redactions on them, or places where the text has been blocked out.  You should not concern yourself with what was redacted, nor why anything was redacted from a document.]

As I told you at the start of this case, statements and arguments by the lawyers are not evidence, because the lawyers are not witnesses.  What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict.  If your recollection of the facts differs from the lawyers' statements, however, it is your recollection that controls.

For the same reasons, you are not to consider a lawyer's questions, restatements of exhibits, or summarizing of the witness's testimony as evidence.  It is the witnesses' answers to those questions, evaluated in the context of the question asked, or the exhibits themselves that are

evidence.  Similarly, any statements that I may have made do not constitute evidence.  It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

Finally, this means, of course, that anything you may have heard or read outside of this courtroom – on the internet, in the news media, or anywhere else – may play no role in your deliberations.  Your decision in this case must be made solely on the evidence presented at trial.

### H.    Direct and Circumstantial Evidence

Generally, there are two types of evidence that you may consider in reaching your verdict.  One type of evidence is direct evidence.  Direct evidence is testimony by a witness about something he or she knows by virtue of his or her own senses – something the witness has seen, felt, touched, or heard.  For example, if a witness testified that when he or she left the house this morning, it was raining, that would be direct evidence about the weather.  Direct evidence may also be in the form of an exhibit.

Circumstantial evidence is evidence from which you may infer the existence of certain facts.  For example, assume that when you came into the courthouse this morning the sun was shining and it was a nice day.  Assume that the courtroom blinds were drawn and you could not look outside.  As you were sitting here, someone walked in with an umbrella, which was dripping wet.  Then a few minutes later another person entered with a wet raincoat.  Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining.  So, you have no direct evidence of that fact.  But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence.  You infer on the basis of reason, experience, and common sense from one established fact the existence or non-existence of some other fact.

As you can see, the matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a logical, factual conclusion that you might reasonably draw from other facts that have been proven.  Many material facts – such as what a person was thinking or intending – are not easily proven by direct evidence.  Proof of such matters may be established by circumstantial evidence.

Circumstantial evidence is as valuable as direct evidence.  The law makes no distinction between direct and circumstantial evidence.

There are times when different inferences may be drawn from the evidence.  The plaintiff asks you to draw one set of inferences.  The defendants ask you to draw another.  It is for you, and for you alone, to decide what inferences you will draw.

## I.      Witness Credibility

You have had the opportunity to observe the witnesses.  It is now your job to decide how believable each witness was in his or her testimony.  You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

You should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, the relationship of the witness to the controversy and the parties, the witness's bias or impartiality, the reasonableness of the witness's statement, the strength or weakness of the witness's recollection viewed in the light of all other testimony, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given and all of the other evidence in the case.  How did the witness appear?  Was the witness candid, frank, and forthright; or, did the witness seem to

be evasive or suspect in some way? How did the way the witness testified on direct examination compare with how the witness testified on cross-examination? Was the witness consistent or contradictory? Did the witness appear to know what he or she was talking about? Did the witness strike you as someone who was trying to report his or her knowledge accurately? These are examples of the kinds of common-sense questions you should ask yourselves in deciding whether a witness is, or is not, truthful. Often it is not what a person says but how he or she says it that moves us.

In passing upon the credibility of a witness, you may take into account any inconsistencies or contradictions as to material matters in his or her testimony. You should also take into account any evidence that the witness who testified may benefit in some way from the outcome in this case. Likewise, you should note any evidence of hostility or affection that the witness may have towards one of the parties. Such bias or interest in the outcome creates a motive to testify falsely. It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony and bear that factor in mind when evaluating the credibility of the testimony.

This is not to suggest that every witness who has an interest in the outcome of a case will testify falsely. It is for you to decide to what extent, if at all, the witness's interest has affected or colored his or her testimony.

If you find that any witness has willfully testified falsely as to any material fact, you have the right to reject the testimony of that witness in its entirety. On the other hand, even if you find that a witness has testified falsely about one matter, you may reject as false that portion of his or her testimony and accept as true any other portion of the testimony which you find credible or which you may find corroborated by other evidence in this case. A witness may be inaccurate,

contradictory, or even untruthful in some aspects, and yet be truthful and entirely credible in other aspects of his or her testimony.

You have heard testimony from witnesses who are police officers.  You should not give the testimony of a police officer any more or less weight solely because they are a police officer.  You must evaluate a police officer's testimony in the same way that you would evaluate the testimony of any other witness.

The ultimate question for you to decide in passing upon credibility is: did the witness tell the truth before you?  It is for you to say whether his or her testimony at this trial was truthful in whole or in part.

### J.    Prior Inconsistent Statement

You have heard evidence that certain witnesses may have made statements on earlier occasions which counsel argue are inconsistent with their trial testimony.  If you find that a witness made an earlier statement that conflicts with that witness's trial testimony, you may consider that fact in deciding how much of the trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency; and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so, how much, if any, weight to be given to the inconsistent statement in determining whether to believe all or part of the witness' testimony.

### K.      Use of Deposition Testimony

Some of the testimony before you is in the form of a deposition which has been received in evidence.  A deposition is simply a procedure where the attorneys for one side may question a witness or an adversary party under oath before a court stenographer prior to trial.  This is part of the pretrial discovery process, and each side is entitled to take depositions.  You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at this trial.

### L.      Stipulation of Facts

A stipulation of facts is an agreement among the parties that a certain fact is true. You must regard such agreed facts as true.

## II.      SUBSTANTIVE INSTRUCTIONS

I will turn now to my instructions on the substantive law to be applied to this case.

This is a civil case with claims brought by the plaintiff against the defendants. Parties who bring claims are called plaintiffs. The plaintiff in this case is Jonathan Banyan.  After a plaintiff brings claims, the defendants are then called upon to respond to the claims. The defendants in this case are New York City Police Officers Craig Sikorski and Joseph Tennariello.

You should consider plaintiff's claims against each of the defendants separately.  Each defendant is entitled to a fair consideration of the evidence relating to that defendant, and is not to be prejudiced by any finding you make for the other defendant.

I will now discuss each of the claims in this case and the elements of each of these claims.

### A.    Section 1983

Plaintiff asserts a claim under a federal civil rights law, 42 U.S.C. § 1983, or "Section 1983" for short.  Section 1983 provides a remedy for individuals who have been deprived of their federal constitutional rights under color of state law.  Section 1983 states, in relevant part that:

> Every person who, under color of [state law], subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the [United States] Constitution and [federal] laws, shall be liable to the party injured [for damages].

Section 1983 itself does not establish or create any federally protected right.  Rather, it is the statute that allows people to enforce rights guaranteed to them by the United States Constitution, including their rights under the Fourth Amendment to the United States Constitution, to be free from excessive force.  Plaintiff alleges that the defendants deprived him of his constitutional right to be free from the use of excessive force under the Fourth Amendment. Defendants deny plaintiff's claims.

To establish claims under Section 1983, plaintiff must demonstrate, by a preponderance of the evidence, the following three elements:

First, that the acts complained of were committed by the defendant acting under color of state law;

Second, that this conduct deprived the plaintiff of a right protected by the United States Constitution; and

 Third, that the defendant's conduct was a proximate cause of the injuries and damages sustained by the plaintiff.

I will now explain each of these elements in greater detail.

### 1.    First Element – Action under Color of State Law

As to the first element — whether the defendants were acting under color of state law — I instruct you that there is no dispute in this case that, during their interactions with plaintiff, the defendants were acting as on-duty members of the New York City Police Department, and that they were therefore acting under color of state law. Plaintiff has therefore established this element, and you do not have to consider it.

### 2.    Second Element – Deprivation of a Federal Right

In order for plaintiff to establish this second element of a Section 1983 claim, he must show that defendants' actions caused plaintiff to suffer the loss of his right to be free from excessive force under the Fourth Amendment; and that the defendants performed these acts intentionally or recklessly, rather than accidently.

Specifically, in order for plaintiff to establish this element of a Section 1983 claim, a plaintiff must prove two things by a preponderance of the evidence with respect to each defendant:

First, the plaintiff must prove by a preponderance of the evidence that the defendant you are considering took actions that the plaintiff claims violated plaintiff's constitutional rights. Section 1983 does not require the plaintiff to demonstrate that the defendant you are considering acted with the specific intent to violate plaintiff's federally protected rights. It only requires that the effects of defendant's actions with respect to plaintiff were not accidental effects of otherwise lawful conduct.

Second, the plaintiff must prove that the defendant's conduct caused plaintiff to suffer the loss of a constitutional right, here to be free from excessive force under the Fourth Amendment.

Before I continue, I also wish to instruct you that you must consider separately each defendant's involvement, if any, in the alleged use of excessive force and return a separate verdict

for each defendant.  In reaching your verdict, bear in mind that liability is individual. Your verdict must be based solely upon the evidence, or lack of evidence, concerning each defendant. In other words, each defendant is entitled to a fair consideration of his own defense, and is not to be prejudiced by the fact, if it should become a fact, that you find against any other defendant.

### i.    Deprivation of a Federal Right: Excessive Force

Plaintiff contends that the defendants subjected him to excessive force, and that therefore he was deprived of his rights guaranteed by the Fourth Amendment to the United States Constitution.  Defendants dispute plaintiff's version of events, and contend that their actions were justified, reasonable under the circumstances, and in accordance with the law. Therefore, you must first determine whose version of events you believe.

The Constitution protects people from being subjected to unreasonable uses of force by police officers. A use of force can be applied through any physical means, such as, for example, blows inflicted, pushing, or shoving.  Even if you find that there was some forcible contact between the plaintiff and the defendants, that mere fact would not be sufficient by itself to demonstrate that the defendants violated the plaintiff's constitutional rights.  But under the Fourth Amendment, a police officer may only use such force as is "objectively reasonable" under all of the circumstances.

Reasonable force means the amount of force a reasonable and prudent police officer would use under the same facts and circumstances, without considering the intent or motivation of the particular defendant officer who actually used the force.  In fact, in restraining an individual or taking an individual into custody, a police officer is not constitutionally required to be courteous. Even if the individual defendants acted with evil intent, the force used will not be considered excessive if it was reasonable under all of the surrounding circumstances. On the other hand, even if the individual defendants acted with good intent and in good faith, if the force used was unreasonable given the surrounding circumstances, then it was a constitutional violation. In other

words, a police officer's good intentions will not make an excessive use of force permissible, and his bad intentions will not make a reasonable use of force excessive.

In determining whether the defendant you are considering used unreasonable force in this case, you should consider the facts known to the defendant at the time, and other relevant circumstances at the time any force was used, including the severity of the alleged offense at issue, whether plaintiff posed an immediate threat to the safety of the defendants or others, and/or whether the plaintiff actively resisted arrest or attempted to evade arrest by flight. Because police officers are often forced to make split-second judgments about the amount of force that is necessary in a given situation, you must judge the reasonableness of the force used from the perspective of a reasonable police officer on the scene at the time, rather than with the 20/20 vision of hindsight.

Under the Fourth Amendment, an officer can only use force that was objectively reasonable under all of the circumstances and, therefore, whether the force was excessive is an issue for you to decide based on the degree of force that a prudent and reasonable police officer would have applied under the same circumstances disclosed in this case. An officer has the right to use such force as is necessary under a given set of circumstances. Not every push or shove by a police officer constitutes excessive force, even if it may later seem unnecessary in the peace and quiet of this courtroom. Minor scrapes, bumps or bruises potentially could occur, often unintended, during an arrest, and an officer cannot be held liable for every such incident. On the other hand, you may find that plaintiff was injured even if you do not find that plaintiff suffered ongoing or permanent injury. Although the severity of plaintiff's alleged injuries is not determinative, it is relevant to the consideration of whether there was force used and, if so, whether the alleged force was reasonable. It is also relevant to damages, as I will later instruct.

14

You must allow for the fact that police officers are forced to work in circumstances that are tense, uncertain, and rapidly evolving. They must make rapid judgments about their actions and about the amount of force that is necessary in a particular situation. The question is only whether the officer's actions are objectively reasonable in light of all the facts and circumstances confronting him.  In this regard, you may consider but do not have to determine, whether the defendant had less intrusive alternatives available or whether there were less harmful types of force available.  Rather, you are only to decide if the defendant acted within that range of conduct identified as objectively reasonable.  If you find that the amount of force used was greater than a reasonable person would have employed, the plaintiff will have established that the defendant exercised excessive force.  If you find that the amount of force used was not greater than a reasonable person would have employed, then you must find against the plaintiff on the claim of excessive force.

Finally, you have heard testimony about general police policies and procedures.  General police practices or protocols may be relevant in determining how a reasonable officer may comport himself under the circumstances presented to him.  However, a violation of a particular police practice or protocol does not necessarily constitute a violation of an arrestee's constitutional rights. To determine if excessive force was used in violation of the Constitution, you must evaluate the totality of the circumstances and determine if the force was objectively reasonable by evaluating the degree of force that a prudent and reasonable police officer would have applied under the same circumstances.

### 3.    Third Element – Proximate Cause

The third element that plaintiff must prove with respect to a Section 1983 claim is that the defendants' conduct was a proximate cause of the injuries sustained by plaintiff. An act is a

proximate cause of compensable injury if it was a substantial factor in bringing about plaintiff's injury, and if the injury was a reasonably foreseeable consequence of the defendants' conduct.

The question is whether a reasonable person would regard the defendants' conduct as being a cause of the injury. If so, the conduct is a proximate cause.

A proximate cause need not always be the nearest cause either in time or in space. In addition, there may be more than one proximate cause of an injury or damage. Many factors or the conduct of two or more people may operate at the same time, either independently or together, to cause an injury.

### B.    Plaintiff's Arrest

I instruct you that this Court has already found that plaintiff's arrest was lawful.  In addition, no conviction resulted from the arrest.  You may not consider the fact that he was arrested, or that he was not convicted or tried on robbery charges in evaluating whether the force used by the officer was excessive or not.

## III.   DAMAGES

If you find that the plaintiff has proved, by a preponderance of the evidence, all of the elements of his claim for relief against the defendants, you must then decide if he suffered any injuries as a result of the violation of his rights and the appropriate damages to award.

The fact that I am instructing you as to the proper measure of damages does not indicate any view of mine as to which party is entitled to your verdict in this case.  Instructions as to the measure of damages are given for your guidance only in the event that you should find that plaintiff has proven all of the element of his claim in accordance with my other instructions.

If you decide that both defendants are liable for violating plaintiff's rights, then you must simply determine the overall amount of damages that will fairly and justly compensate plaintiff's

injury, without breaking that figure down into individual percentages for which each defendant is liable.  Each individual who is liable is jointly and severally liable for the entire amount of compensatory or nominal damages.  The verdict form I will give you will assist you in recording the determinations, if any, that you make as to damages.

There are three types of damages you may consider: compensatory damages, nominal damages, and punitive damages. I will discuss each in turn.

### A.    Compensatory Damages

If you return a verdict for the plaintiff on his claim, then you may award him such sum of money as you believe will fairly and justly compensate him for any injury—including pain and suffering—that you believe he actually sustained as a direct consequence of the conduct of the defendants. These damages are called compensatory damages. The purpose of compensatory damages is to make the plaintiff whole – that is, to compensate the plaintiff for the damage that he has proven by a preponderance of the credible evidence.

Compensatory damages are not only for out-of-pocket expenses that a plaintiff may have borne. A prevailing plaintiff is entitled to compensatory damages for physical injury, pain and suffering, and emotional and mental anguish that the plaintiff suffered because of the defendant's conduct.

Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize the defendant. You should not award compensatory damages for speculative injuries, but only for those injuries—including pain and suffering—which the plaintiff has actually suffered, or that the plaintiff is reasonably likely to suffer in the future.

Moreover, you shall award actual damages only for those injuries that you find plaintiff has proven by a preponderance of credible evidence to have been the direct result of conduct by

17

the defendants you have found liable. That is, you may not simply award actual damages for any injury suffered by plaintiff — you must award actual damages only for those injuries that are a direct result of actions by the defendants, and that are a direct result of conduct by the defendants that was a violation of plaintiff's rights.

The damages that you award must be fair and reasonable, neither inadequate nor excessive. It is plaintiff's burden to prove the amount of his damages and to prove that the damages were caused by the defendant's actions.  If you decide to award compensatory damages, you should be guided by dispassionate common sense. Your determination of damages must not be based on speculation or guesswork.  However, the law does not require a plaintiff to prove the amount of losses with mathematical precision, but only with the as much definiteness and accuracy as the circumstances permit.  If you award compensatory damages you will have to determine, based on your common sense and experience, that amount of money that will fairly and reasonably make plaintiff whole or compensate plaintiff for the injuries and pain and suffering that plaintiff sustained as a consequence of any acts that violated his rights.

You are to use your sound discretion in fixing an award of compensatory damages, drawing all reasonable inferences where you deem appropriate from the facts and circumstances in evidence. Damages must not be based on speculation or sympathy. They must be based on the evidence presented at trial, and only on that evidence.

Plaintiff may not recover for any injury that existed prior to the incidents at issue, or for any injury which he suffered after the incident or that was not caused by the violation of his rights at issue here. You may, however, compensate the plaintiff to the extent that you find that defendants' violations of his rights further exacerbated prior injuries.

18

In addition, there is no claim in this case that the plaintiff sustained any loss of income or other economic loss. So, in calculating compensatory damages, you may not include any amount for such losses.

In sum, your award of compensatory damages, if any, should reasonably compensate plaintiff for such injury and damage as you find that plaintiff has sustained as a direct result of conduct by the defendants that was a violation of plaintiff's rights.

### B.    Nominal Damages

If you return a verdict for the plaintiff, but find that plaintiff has failed to prove by a preponderance of the credible evidence that plaintiff is entitled to any actual compensatory damages, then you must return an award of damages in the sum of one dollar. This is to show that liability has been proved and that plaintiff has been deprived of a constitutional right, but that plaintiff has not proven that plaintiff suffered an actual injury as a result of that constitutional deprivation. This type of damages is called "nominal damages."

### C.    Punitive Damages

If you find that plaintiff has proven his claim against the defendants, then you must decide whether, in your discretion, to award plaintiff punitive damages.

Keep in mind that the fact that I am giving you instructions on punitive damages should not be considered as an indication of any view on my part as to what your verdict should be or on whether punitive damages should be awarded. It is entirely up to you to decide whether or not punitive damages should be awarded in this case.

You may award punitive damages if you believe that the defendants should be punished for conduct that was motivated by an evil motive or intent, or that involved callous disregard or reckless indifference to plaintiff's rights.

Plaintiff is not entitled to punitive damages as a matter of right. You must make a judgment about the defendants' conduct. To make that judgment, it is important to keep in mind the reasons for awarding punitive damages: to punish a defendant for malicious conduct against a plaintiff or callous disregard or reckless indifference for a plaintiff's rights, and to deter the defendant or others like the defendant from engaging in similar conduct. Thus, you should consider whether the award of punitive damages will accomplish this dual purpose of punishment and deterrence.

## IV.    DELIBERATIONS OF THE JURY

Ladies and gentlemen of the jury, that concludes the substantive portion of my instructions to you. You are about to go into the jury room and begin your deliberations. I will now give you a few final instructions on those deliberations.

### A.    Selection and Duties of Foreperson

The first thing that you should do when you retire to deliberate is to select one of you to function as your foreperson. Traditionally Juror Number 1 serves as the foreperson, but that is not mandatory. You are free to select any member as your foreperson. The foreperson doesn't have any more power or authority than any other juror, and his or her vote or opinion doesn't count for any more than any other juror's vote or opinion. The foreperson is merely your spokesperson to the Court. The foreperson will send out any notes, and when the jury has reached a verdict, the foreperson will notify the marshal that the jury has reached a verdict, and you will come into open court and give the verdict.

### B.    Right to See Exhibits and Hear Testimony; Communication with the Court

All of the exhibits admitted into evidence will be sent to the jury room with you. If you want any of the testimony read, you may request that. Please remember that it is not always easy

to locate what you might want, so be as specific as you possibly can be in requesting portions of the testimony.

Your requests for testimony – in fact <u>any</u> communications with the Court – should be made to me in writing, signed, dated, and timed by your foreperson, and given to one of the marshals. Please make any notes as clear and precise as possible.  Do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached and announced in open court by your foreperson.

### C.    Notes

Some of you have taken notes periodically throughout this trial.  I want to emphasize to you, as you are about to begin your deliberations, that notes are solely to assist you as an aid to your memory.  Do not share your notes with other jurors during deliberations.  Notes that any of you may have taken may not be given any greater weight or influence than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence.  All jurors' recollections are equal.  If you can't agree on what you remember the testimony was, you can ask to have the transcript read back.

### D.    Duty to Deliberate; Unanimous Verdict

Shortly, you will retire to decide the case.  You are to discuss the case only when all jurors are present.  A majority of jurors together are only a gathering of individuals. Only when all jurors are present do you constitute the jury, and only then may you deliberate.

You must base your verdict solely on the evidence and these instructions as to the law, and you are obliged on your oath as jurors to follow the law as I instruct you, whether you agree or disagree with the particular law in question.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for any party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

Remember at all times, you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case. Nothing said in these instructions and nothing in any verdict form prepared for your convenience is meant to suggest or convey in any way or manner any suggestion or hint as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

If you are divided, do *not* report how the vote stands and if you have reached a verdict, do not report what it is until you are asked in open court.

### E.    Verdict Form

In a few moments, I will give you the verdict form with the questions for you to answer and you will retire to deliberate on your decision. As I stated, the questions are not to be taken as

any indication that I have any opinion as to how they should be answered. I have no such opinion, and even if I did, it would not be binding on you.

You should answer every question except where the verdict form indicates otherwise. You should also proceed through the questions in the order in which they are listed and follow all instructions. Remember, all answers must be unanimous.

### F.    Return of Verdict

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it, and advise the marshal outside your door that you are ready to return to the courtroom.

Each of you must be in agreement with the verdict which is announced in court. Once your verdict is announced and officially recorded, it cannot ordinarily be revoked.

## V.    CONCLUSION

In conclusion, ladies and gentlemen, I am sure that if you listen to the views of your fellow jurors, consider all of the evidence, apply your common sense, and follow my instructions on the law, you will reach a fair verdict here. Thank you for your time and attention.

Court Exhibit 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN BANYAN,

                              Plaintiff,

            -against-                                    Case No. 17-cv-04942 (JLR)

POLICE OFFICER CRAIG SIKORSKI,
POLICE OFFICER JOSEPH TENNARIELLO,

                              Defendants.

JENNIFER L. ROCHON, United States District Judge:

## **VERDICT FORM**

**All Jurors must agree unanimously to the answers to each question.  Please proceed through the questions in order and follow all directions.**

**Question 1**

Has plaintiff proved by a preponderance of the evidence that he was subjected to excessive force on March 20, 2016 by:

   a.   Officer Craig Sikorski:          No _____          Yes _____

   b.   Officer Joseph Tennariello:     No _____          Yes_____

*If you answered "No" to both parts of Question 1, your deliberations are finished. Please proceed to the final page and sign this form.*

*If you answered "Yes" to either of the questions above, proceed to Questions 2.*

**Question 2:**

(a)     Has plaintiff proved, by a preponderance of the evidence, that he suffered any compensatory damages as a result of the injury or harm proximately caused by either Defendant?

               No_____          Yes_____

(b)     If you answered YES to Question 2a, what amount of money should plaintiff be awarded in compensatory damages that would fairly and adequately compensate plaintiff for any injuries proximately caused by plaintiff's false arrest?

        $_____

(c)     If you answered YES to any part of Question 1, but you did not award <u>any</u> compensatory damages to plaintiff in Questions 2(b), you must enter a nominal damages award of $1.

        $_____

*(Please proceed to Question 3)*

2

**Question 3:**  If you answered YES with respect to either defendant listed in Question 1, has plaintiff proved, by a preponderance of the evidence, that he is entitled to receive punitive damages from that defendant:

    a.   Officer Craig Sikorski:      Yes _____        No _____

           If you answered YES regarding this defendant, state the amount of punitive damages that you award plaintiff: _____

    b.   Officer Joseph Tennariello:   Yes _____        No _____

           If you answered YES regarding this defendant, state the amount of punitive damages that you award plaintiff: _____

*(Please proceed to the last page, page 4)*

**You have completed all questions.  Please proceed to the signature line below.**

**SIGNATURE LINE**

Foreperson, please sign and date the verdict sheet if it represents the unanimous verdict of all jurors.  Then, without disclosing your verdict, advise the Marshal, that you have reached a verdict and are ready to return to the courtroom to announce your verdict.

_____
Foreperson


Dated:        _____

**Court Exhibit 5**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN BANYAN,

                      Plaintiff,

        -against-

POLICE OFFICER CRAIG SIKORSKI,
POLICE OFFICER JOSEPH TENNARIELLO,

               Defendants.

Case No. 17-cv-04942 (JLR)

JENNIFER L. ROCHON, United States District Judge:

## JURY INSTRUCTIONS

# TABLE OF CONTENTSr

I.      GENERAL INSTRUCTIONS .................................................................................. 1

        A.      Introductory Remarks ......................................................................... 1

        B.      Role of the Court ................................................................................ 1

        C.      Role of the Jury .................................................................................. 2

        D.      Role of Counsel .................................................................................. 2

        E.      Sympathy or Bias ............................................................................... 3

        F.      Burden of Proof .................................................................................. 4

        G.      What Is and Is Not Evidence .............................................................. 5

        H.      Direct and Circumstantial Evidence .................................................. 6

        I.      Witness Credibility ............................................................................ 7

        J.      Prior Inconsistent Statement .............................................................. 9

        K.      Use of Deposition Testimony ........................................................... 10

        L.      Stipulation of Facts .......................................................................... 10

II.     SUBSTANTIVE INSTRUCTIONS .................................................................... 10

        A.      Section 1983 ..................................................................................... 11

                1.      First Element – Action under Color of State Law ......................... 12

                2.      Second Element – Deprivation of a Federal Right ........................ 12

                        i.      Deprivation of a Federal Right: Excessive Force ............. 13

                3.      Third Element – Proximate Cause ................................................ 15

        B.      Plaintiff's Arrest ............................................................................... 16

III.    DAMAGES ........................................................................................................ 16

        A.      Compensatory Damages ................................................................... 17

        B.      Nominal Damages ............................................................................ 19

        C.      Punitive Damages ............................................................................. 19

IV.     DELIBERATIONS OF THE JURY .................................................................... 20

        A.      Selection and Duties of Foreperson .................................................. 20

        B.      Right to See Exhibits and Hear Testimony; Communication with the Court ....... 20

        C.      Notes ................................................................................................ 21

        D.      Duty to Deliberate; Unanimous Verdict ........................................... 21

        E.      Verdict Form .................................................................................... 22

        F.      Return of Verdict .............................................................................. 23

V.      CONCLUSION .................................................................................................. 23

# I.    GENERAL INSTRUCTIONS

## A.    Introductory Remarks

Members of the jury, I will now instruct you as to the law that governs this case.  You have been handed a copy of the instructions I will read.  You should feel free to read along or to just listen to me.  You will be able to take your copy of these instructions into the jury room.

Listening to these instructions may not be easy because they are long and extensive.  It is important, however, that you listen carefully and concentrate.  You'll notice that I'm reading these instructions from a prepared text.  It would be more lively, no doubt, if I just improvised.  But it's important that I not do that.  The law is made up of words, and those words are very carefully chosen.  So, when I tell you the law, it's critical that I use exactly the right words.

You have now heard all of the evidence in the case as well as the final arguments of the parties.  You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

There are three parts to these instructions.  First, I'm going to give you some general instructions about your role, and about how you are to decide the facts of the case.  Most of these instructions would apply to just about any trial.  Second, I'll give you some specific instructions about the legal rules applicable to this particular case.  Third, I'll give you some final instructions about procedures and deliberations.

## B.    Role of the Court

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and to apply them to the facts as you determine them.  With respect to legal matters, you must take the law as I give it to you.  If any attorney or witness has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you

1

must follow.  You must not substitute your own notions or opinions of what the law is or what you think it ought to be.  You are to consider these instructions together as a whole; in other words, you are not to isolate or give undue weight to any particular instruction.

### C.    Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts.  You evaluate the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Do not conclude from any of my rulings on objections or anything else I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case.  Any opinion I might have regarding the facts is of absolutely no consequence.

It is your sworn duty, and you have taken the oath as jurors, to determine the facts and to render judgment impartially and fairly, solely on the evidence in this case and the applicable law.

### D.    Role of Counsel

It is the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  It is my job to rule on those objections.  Therefore, why an objection was made or why I ruled on it the way I did is not your concern.  You should draw no inference from the fact that an attorney objects to any evidence.  Nor should you draw any inference from the fact that I might have sustained or overruled an objection.  If I sustained the objection, you may not consider the testimony or exhibit at issue; if I overruled the objection, you may consider the testimony or exhibit just as you would any other evidence in the case.

The personalities and the conduct of counsel in the courtroom are not in any way at issue. If you formed opinions or had reactions of any kind to the lawyers here, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those opinions or reactions should not enter into your deliberations.

During the course of the trial, I may have had to correct the presentation of an attorney, for example, to ask them to rephrase a question. You should draw no inference against the attorney or the client. It is the duty of the attorneys to advocate on behalf of their clients.

From time to time, the lawyers and I have had conferences out of your hearing. These conferences involved procedural and other legal matters, and should not enter into your deliberations at all.

### E.    Sympathy or Bias

You must evaluate the evidence calmly and objectively, without prejudice or sympathy. You must be completely fair and impartial. Your verdict must be based solely on the evidence presented at this trial, or the lack of evidence.

You may not consider, in deciding the facts of the case, any personal feelings you may have about the race, religion, national origin, gender, age, sexual orientation, disability, or physical appearance of any party or witness. It is equally improper for you to allow any personal feeling that you might have about the nature of the claims or defenses to influence you in any way. The parties in this case are entitled to a trial free from prejudice and bias. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

The case should be decided by you as an action between parties of equal standing in the community, of equal worth, and holding the same or similar stations in life. The defendants are not to be favored or disfavored because they are members of the New York City Police

Department, nor is the plaintiff to be favored or disfavored because of his status, employment, or background.  All parties are entitled to the same fair trial by you.

**F.      Burden of Proof**

At various times in these instructions I will use the term "burden of proof." As this is a civil case, the standard of proof is a preponderance of the evidence.

The party who has the burden of proof on a particular issue has the burden of establishing their position on that issue by a preponderance of the evidence. If you conclude that the party who has the burden of proof on an issue has failed to establish their position by a preponderance of the evidence, you must decide against that party on that issue.  Here, Plaintiff has the burden of proof to prove his claim and damages by a preponderance of the evidence.

What does a "preponderance of the evidence" mean?  To establish by a preponderance of evidence means to prove something is more likely so than not so.  A preponderance of the evidence means the greater weight of the evidence.  It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.  In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties, then you must decide that issue against the party having this burden of proof, here the Plaintiff. That is because the party bearing this burden must prove more than simple equality of evidence – the party must prove the element at issue by a preponderance of the evidence.  On the other hand, Plaintiff need prove no more than a preponderance of the evidence.  So long as you find that the

scales tip, however slightly, in favor of the party with this burden of proof, here the Plaintiff, then that element will have been proved by a preponderance of the evidence.

One final note on the burden of proof: some of you may have heard of "proof beyond a reasonable doubt." As I told you at the beginning of the trial, "beyond a reasonable doubt" is the standard of proof in a criminal trial. It does not apply to a civil case such as this and you should put it out of your mind.

### G.    What Is and Is Not Evidence

In determining the facts, you must rely upon your own recollection of the evidence. The evidence in this case is the sworn testimony of the witnesses and the exhibits received in evidence.

The only exhibits that are evidence in this case are those that were received in evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials that were used only to refresh a witness's recollection. Some exhibits have redactions on them, or places where the text has been blocked out. You should not concern yourself with what was redacted, nor why anything was redacted from a document.

As I told you at the start of this case, statements and arguments by the lawyers are not evidence, because the lawyers are not witnesses. What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict. If your recollection of the facts differs from the lawyers' statements, however, it is your recollection that controls.

For the same reasons, you are not to consider a lawyer's questions, restatements of exhibits, or summarizing of the witness's testimony as evidence. It is the witnesses' answers to those questions, evaluated in the context of the question asked, or the exhibits themselves that are

evidence. Similarly, any statements that I may have made do not constitute evidence. It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

Finally, this means, of course, that anything you may have heard or read outside of this courtroom – on the internet, in the news media, or anywhere else – may play no role in your deliberations. Your decision in this case must be made solely on the evidence presented at trial.

### H.    Direct and Circumstantial Evidence

Generally, there are two types of evidence that you may consider in reaching your verdict. One type of evidence is direct evidence. Direct evidence is testimony by a witness about something he or she knows by virtue of his or her own senses – something the witness has seen, felt, touched, or heard. For example, if a witness testified that when he or she left the house this morning, it was raining, that would be direct evidence about the weather. Direct evidence may also be in the form of an exhibit.

Circumstantial evidence is evidence from which you may infer the existence of certain facts. For example, assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella, which was dripping wet. Then a few minutes later another person entered with a wet raincoat. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So, you have no direct evidence of that fact. But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason, experience, and common sense from one established fact the existence or non-existence of some other fact.

As you can see, the matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a logical, factual conclusion that you might reasonably draw from other facts that have been proven. Many material facts – such as what a person was thinking or intending – are not easily proven by direct evidence. Proof of such matters may be established by circumstantial evidence.

Circumstantial evidence is as valuable as direct evidence. The law makes no distinction between direct and circumstantial evidence.

There are times when different inferences may be drawn from the evidence. The plaintiff asks you to draw one set of inferences. The defendants ask you to draw another. It is for you, and for you alone, to decide what inferences you will draw.

## I.    Witness Credibility

You have had the opportunity to observe the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

You should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, the relationship of the witness to the controversy and the parties, the witness's bias or impartiality, the reasonableness of the witness's statement, the strength or weakness of the witness's recollection viewed in the light of all other testimony, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given and all of the other evidence in the case. How did the witness appear? Was the witness candid, frank, and forthright; or, did the witness seem to

be evasive or suspect in some way? How did the way the witness testified on direct examination compare with how the witness testified on cross-examination? Was the witness consistent or contradictory? Did the witness appear to know what he or she was talking about? Did the witness strike you as someone who was trying to report his or her knowledge accurately? These are examples of the kinds of common-sense questions you should ask yourselves in deciding whether a witness is, or is not, truthful. Often it is not what a person says but how he or she says it that moves us.

In passing upon the credibility of a witness, you may take into account any inconsistencies or contradictions as to material matters in his or her testimony. You should also take into account any evidence that the witness who testified may benefit in some way from the outcome in this case. Likewise, you should note any evidence of hostility or affection that the witness may have towards one of the parties. Such bias or interest in the outcome creates a motive to testify falsely. It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony and bear that factor in mind when evaluating the credibility of the testimony.

This is not to suggest that every witness who has an interest in the outcome of a case will testify falsely. It is for you to decide to what extent, if at all, the witness's interest has affected or colored his or her testimony.

If you find that any witness has willfully testified falsely as to any material fact, you have the right to reject the testimony of that witness in its entirety. On the other hand, even if you find that a witness has testified falsely about one matter, you may reject as false that portion of his or her testimony and accept as true any other portion of the testimony which you find credible or which you may find corroborated by other evidence in this case. A witness may be inaccurate,

contradictory, or even untruthful in some aspects, and yet be truthful and entirely credible in other aspects of his or her testimony.

You have heard testimony from witnesses who are police officers. You should not give the testimony of a police officer any more or less weight solely because they are a police officer. You must evaluate a police officer's testimony in the same way that you would evaluate the testimony of any other witness.

Finally, you have heard evidence about Plaintiff's prior conviction in 2006. That evidence may only be used to assess Plaintiff's credibility and his motive to resist arrest. It may not be used to infer a propensity for breaking the law or violence.

The ultimate question for you to decide in passing upon credibility is: did the witness tell the truth before you? It is for you to say whether his or her testimony at this trial was truthful in whole or in part.

**J.      Prior Inconsistent Statement**

You have heard evidence that certain witnesses may have made statements on earlier occasions which counsel argue are inconsistent with their trial testimony. If you find that a witness made an earlier statement that conflicts with that witness's trial testimony, you may consider that fact in deciding how much of the trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency; and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so, how much, if any, weight to be

given to the inconsistent statement in determining whether to believe all or part of the witness' testimony.

### K.  Use of Deposition Testimony

Some of the testimony before you is in the form of a deposition which has been received in evidence.  A deposition is simply a procedure where the attorneys for one side may question a witness or an adversary party under oath before a court stenographer prior to trial.  This is part of the pretrial discovery process, and each side is entitled to take depositions.  You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at this trial.

### L.  Stipulation of Facts

A stipulation of facts is an agreement among the parties that a certain fact is true. You must regard such agreed facts as true.

## II.  SUBSTANTIVE INSTRUCTIONS

I will turn now to my instructions on the substantive law to be applied to this case.

This is a civil case with claims brought by the plaintiff against the defendants. Parties who bring claims are called plaintiffs. The plaintiff in this case is Jonathan Banyan.  After a plaintiff brings claims, the defendants are then called upon to respond to the claims. The defendants in this case are New York City Police Officers Craig Sikorski and Joseph Tennariello.

You should consider plaintiff's claims against each of the defendants separately.  Each defendant is entitled to a fair consideration of the evidence relating to that defendant, and is not to be prejudiced by any finding you make for the other defendant.

I will now discuss each of the claims in this case and the elements of each of these claims.

A.    **Section 1983**

Plaintiff asserts a claim under a federal civil rights law, 42 U.S.C. § 1983, or "Section 1983" for short.  Section 1983 provides a remedy for individuals who have been deprived of their federal constitutional rights under color of state law.  Section 1983 states, in relevant part that:

> Every person who, under color of [state law], subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the [United States] Constitution and [federal] laws, shall be liable to the party injured [for damages].

Section 1983 itself does not establish or create any federally protected right.  Rather, it is the statute that allows people to enforce rights guaranteed to them by the United States Constitution, including their rights under the Fourth Amendment to the United States Constitution, to be free from excessive force.  Plaintiff alleges that the defendants deprived him of his constitutional right to be free from the use of excessive force under the Fourth Amendment. Defendants deny plaintiff's claims.

To establish claims under Section 1983, plaintiff must demonstrate, by a preponderance of the evidence, the following three elements:

First, that the acts complained of were committed by the defendant acting under color of state law;

Second, that this conduct deprived the plaintiff of a right protected by the United States Constitution; and

 Third, that the defendant's conduct was a proximate cause of the injuries and damages sustained by the plaintiff.

I will now explain each of these elements in greater detail.

### 1.    First Element – Action under Color of State Law

As to the first element — whether the defendants were acting under color of state law — I instruct you that there is no dispute in this case that, during their interactions with plaintiff, the defendants were acting as on-duty members of the New York City Police Department, and that they were therefore acting under color of state law.  Plaintiff has therefore established this element, and you do not have to consider it.

### 2.    Second Element – Deprivation of a Federal Right

In order for plaintiff to establish this second element of a Section 1983 claim, he must show that defendants' actions caused plaintiff to suffer the loss of his right to be free from excessive force under the Fourth Amendment; and that the defendants performed these acts intentionally or recklessly, rather than accidently.

Specifically, in order for plaintiff to establish this element of a Section 1983 claim, a plaintiff must prove two things by a preponderance of the evidence with respect to each defendant:

First, the plaintiff must prove by a preponderance of the evidence that the defendant you are considering took actions that the plaintiff claims violated plaintiff's constitutional rights. Section 1983 does not require the plaintiff to demonstrate that the defendant you are considering acted with the specific intent to violate plaintiff's federally protected rights.  It only requires that the effects of defendant's actions with respect to plaintiff were not accidental effects of otherwise lawful conduct.

Second, the plaintiff must prove that the defendant's conduct caused plaintiff to suffer the loss of a constitutional right, here to be free from excessive force under the Fourth Amendment.

Before I continue, I also wish to instruct you that you must consider separately each defendant's involvement, if any, in the alleged use of excessive force and return a separate verdict

for each defendant. In reaching your verdict, bear in mind that liability is individual. Your verdict must be based solely upon the evidence, or lack of evidence, concerning each defendant. In other words, each defendant is entitled to a fair consideration of his own defense, and is not to be prejudiced by the fact, if it should become a fact, that you find against any other defendant.

### i.    <u>**Deprivation of a Federal Right: Excessive Force**</u>

Plaintiff contends that the defendants subjected him to excessive force, and that therefore he was deprived of his rights guaranteed by the Fourth Amendment to the United States Constitution. Defendants dispute plaintiff's version of events, and contend that their actions were justified, reasonable under the circumstances, and in accordance with the law. Therefore, you must first determine whose version of events you believe.

The Constitution protects people from being subjected to unreasonable uses of force by police officers. A use of force can be applied through any physical means, such as, for example, blows inflicted, pushing, or shoving. Even if you find that there was some forcible contact between the plaintiff and the defendants, that mere fact would not be sufficient by itself to demonstrate that the defendants violated the plaintiff's constitutional rights. But under the Fourth Amendment, a police officer may only use such force as is "objectively reasonable" under all of the circumstances.

Reasonable force means the amount of force a reasonable and prudent police officer would use under the same facts and circumstances, without considering the intent or motivation of the particular defendant officer who actually used the force. In fact, in restraining an individual or taking an individual into custody, a police officer is not constitutionally required to be courteous. Even if the individual defendants acted with evil intent, the force used will not be considered excessive if it was reasonable under all of the surrounding circumstances. On the other hand, even if the individual defendants acted with good intent and in good faith, if the force used was unreasonable given the surrounding circumstances, then it was a constitutional violation. In other

13

words, a police officer's good intentions will not make an excessive use of force permissible, and his bad intentions will not make a reasonable use of force excessive.

In determining whether the defendant you are considering used unreasonable force in this case, you should consider the facts known to the defendant at the time, and other relevant circumstances at the time any force was used, including the severity of the alleged offense at issue, whether plaintiff posed an immediate threat to the safety of the defendants or others, and/or whether the plaintiff actively resisted arrest or attempted to evade arrest by flight. Because police officers are often forced to make split-second judgments about the amount of force that is necessary in a given situation, you must judge the reasonableness of the force used from the perspective of a reasonable police officer on the scene at the time, rather than with the 20/20 vision of hindsight.

Under the Fourth Amendment, an officer can only use force that was objectively reasonable under all of the circumstances and, therefore, whether the force was excessive is an issue for you to decide based on the degree of force that a prudent and reasonable police officer would have applied under the same circumstances disclosed in this case. An officer has the right to use such force as is necessary under a given set of circumstances. Not every push or shove by a police officer constitutes excessive force, even if it may later seem unnecessary in the peace and quiet of this courtroom. Minor scrapes, bumps or bruises potentially could occur, often unintended, during an arrest, and an officer cannot be held liable for every such incident. On the other hand, you may find that plaintiff was injured even if you do not find that plaintiff suffered ongoing or permanent injury. Although the severity of plaintiff's alleged injuries is not determinative, it is relevant to the consideration of whether there was force used and, if so, whether the alleged force was reasonable. It is also relevant to damages, as I will later instruct.

14

You must allow for the fact that police officers are forced to work in circumstances that are tense, uncertain, and rapidly evolving. They must make rapid judgments about their actions and about the amount of force that is necessary in a particular situation. The question is only whether the officer's actions are objectively reasonable in light of all the facts and circumstances confronting him.  In this regard, you may consider but do not have to determine, whether the defendant had less intrusive alternatives available or whether there were less harmful types of force available.  Rather, you are only to decide if the defendant acted within that range of conduct identified as objectively reasonable.  If you find that the amount of force used was greater than a reasonable person would have employed, the plaintiff will have established that the defendant exercised excessive force.  If you find that the amount of force used was not greater than a reasonable person would have employed, then you must find against the plaintiff on the claim of excessive force.

Finally, you have heard testimony about general police policies and procedures.  General police practices or protocols may be relevant in determining how a reasonable officer may comport himself under the circumstances presented to him.  However, the standard for excessive force derives from the Constitution and not whether a violation of a particular police practice or protocol was violated.  To determine if excessive force was used in violation of the Constitution, you must evaluate the totality of the circumstances and determine if the force was objectively reasonable by evaluating the degree of force that a prudent and reasonable police officer would have applied under the same circumstances.

### 3.    Third Element – Proximate Cause

The third element that plaintiff must prove with respect to a Section 1983 claim is that the defendants' conduct was a proximate cause of the injuries sustained by plaintiff. An act is a

proximate cause of compensable injury if it was a substantial factor in bringing about plaintiff's injury, and if the injury was a reasonably foreseeable consequence of the defendants' conduct.

The question is whether a reasonable person would regard the defendants' conduct as being a cause of the injury. If so, the conduct is a proximate cause.

A proximate cause need not always be the nearest cause either in time or in space. In addition, there may be more than one proximate cause of an injury or damage. Many factors or the conduct of two or more people may operate at the same time, either independently or together, to cause an injury.

### B.    Plaintiff's Arrest

I instruct you that this Court has already found that plaintiff's arrest was lawful. You may not consider the fact that he was arrested, or that he was not convicted or tried on robbery charges, in evaluating whether the force used by the officer was excessive or not.

## III.    DAMAGES

If you find that the plaintiff has proved, by a preponderance of the evidence, all of the elements of his claim for relief against the defendants, you must then decide if he suffered any injuries as a result of the violation of his rights and the appropriate damages to award.

The fact that I am instructing you as to the proper measure of damages does not indicate any view of mine as to which party is entitled to your verdict in this case. Instructions as to the measure of damages are given for your guidance only in the event that you should find that plaintiff has proven all of the element of his claim in accordance with my other instructions.

If you decide that both defendants are liable for violating plaintiff's rights, then you must simply determine the overall amount of damages that will fairly and justly compensate plaintiff's injury, without breaking that figure down into individual percentages for which each defendant is

liable. Each individual who is liable is jointly and severally liable for the entire amount of compensatory or nominal damages. The verdict form I will give you will assist you in recording the determinations, if any, that you make as to damages.

There are three types of damages you may consider: compensatory damages, nominal damages, and punitive damages. I will discuss each in turn.

### A.    Compensatory Damages

If you return a verdict for the plaintiff on his claim, then you may award him such sum of money as you believe will fairly and justly compensate him for any injury—including pain and suffering—that you believe he actually sustained as a direct consequence of the conduct of the defendants. These damages are called compensatory damages. The purpose of compensatory damages is to make the plaintiff whole – that is, to compensate the plaintiff for the damage that he has proven by a preponderance of the credible evidence.

Compensatory damages are not only for out-of-pocket expenses that a plaintiff may have borne. A prevailing plaintiff is also entitled to compensatory damages for physical injury, pain and suffering, and emotional and mental anguish that the plaintiff suffered because of the defendant's conduct.

Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize the defendant. You should not award compensatory damages for speculative injuries, but only for those injuries—including pain and suffering—which the plaintiff has actually suffered, or that the plaintiff is reasonably likely to suffer in the future.

Moreover, you shall award actual damages only for those injuries that you find plaintiff has proven by a preponderance of credible evidence to have been the direct result of conduct by the defendants you have found liable. That is, you may not simply award actual damages for any

17

injury suffered by plaintiff — you must award actual damages only for those injuries that are a direct result of actions by the defendants, and that are a direct result of conduct by the defendants that was a violation of plaintiff's rights.

The damages that you award must be fair and reasonable, neither inadequate nor excessive. It is plaintiff's burden to prove the amount of his damages and to prove that the damages were caused by the defendant's actions. If you decide to award compensatory damages, you should be guided by dispassionate common sense. Your determination of damages must not be based on speculation or guesswork. However, the law does not require a plaintiff to prove the amount of losses with mathematical precision, but only with the as much definiteness and accuracy as the circumstances permit. If you award compensatory damages you will have to determine, based on your common sense and experience, that amount of money that will fairly and reasonably make plaintiff whole or compensate plaintiff for the injuries and pain and suffering that plaintiff sustained as a consequence of any acts that violated his rights.

You are to use your sound discretion in fixing an award of compensatory damages, drawing all reasonable inferences where you deem appropriate from the facts and circumstances in evidence. Damages must not be based on speculation or sympathy. They must be based on the evidence presented at trial, and only on that evidence.

Plaintiff may not recover for any injury that existed prior to the incidents at issue, or for any injury which he suffered after the incident or that was not caused by the violation of his rights at issue here. You may, however, compensate the plaintiff to the extent that you find that defendants' violations of his rights further exacerbated prior injuries.

In addition, there is no claim in this case that the plaintiff sustained any loss of income or other economic loss. So, in calculating compensatory damages, you may not include any amount for such losses.

In sum, your award of compensatory damages, if any, should reasonably compensate plaintiff for such injury — including pain and suffering — as you find that plaintiff has sustained as a direct result of conduct by the defendants that was a violation of plaintiff's rights.

### B.    Nominal Damages

If you return a verdict for the plaintiff, but find that plaintiff has failed to prove by a preponderance of the credible evidence that plaintiff is entitled to any actual compensatory damages, then you must return an award of damages in the sum of one dollar.  This is to show that liability has been proved and that plaintiff has been deprived of a constitutional right, but that plaintiff has not proven that plaintiff suffered an actual injury as a result of that constitutional deprivation.  This type of damages is called "nominal damages."

### C.    Punitive Damages

If you find that plaintiff has proven his claim against the defendants, then you must decide whether, in your discretion, to award plaintiff punitive damages.

Keep in mind that the fact that I am giving you instructions on punitive damages should not be considered as an indication of any view on my part as to what your verdict should be or on whether punitive damages should be awarded. It is entirely up to you to decide whether or not punitive damages should be awarded in this case.

You may award punitive damages if you believe that the defendants should be punished for conduct that was motivated by an evil motive or intent, or that involved callous disregard or reckless indifference to plaintiff's rights.

Plaintiff is not entitled to punitive damages as a matter of right. You must make a judgment about the defendants' conduct. To make that judgment, it is important to keep in mind the reasons for awarding punitive damages: to punish a defendant for malicious conduct against a plaintiff or callous disregard or reckless indifference for a plaintiff's rights, and to deter the defendant or others like the defendant from engaging in similar conduct. Thus, you should consider whether the award of punitive damages will accomplish this dual purpose of punishment and deterrence.

## IV.    DELIBERATIONS OF THE JURY

Ladies and gentlemen of the jury, that concludes the substantive portion of my instructions to you. You are about to go into the jury room and begin your deliberations. I will now give you a few final instructions on those deliberations.

### A.    Selection and Duties of Foreperson

The first thing that you should do when you retire to deliberate is to select one of you to function as your foreperson. Traditionally Juror Number 1 serves as the foreperson, but that is not mandatory. You are free to select any member as your foreperson. The foreperson doesn't have any more power or authority than any other juror, and his or her vote or opinion doesn't count for any more than any other juror's vote or opinion. The foreperson is merely your spokesperson to the Court. The foreperson will send out any notes, and when the jury has reached a verdict, the foreperson will notify the marshal that the jury has reached a verdict, and you will come into open court and give the verdict.

### B.    Right to See Exhibits and Hear Testimony; Communication with the Court

All of the exhibits admitted into evidence will be sent to the jury room with you. If you want any of the testimony read, you may request that. Please remember that it is not always easy

to locate what you might want, so be as specific as you possibly can be in requesting portions of the testimony.

Your requests for testimony – in fact <u>any</u> communications with the Court – should be made to me in writing, signed, dated, and timed by your foreperson, and given to one of the marshals. Please make any notes as clear and precise as possible. Do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached and announced in open court by your foreperson.

### C.    Notes

Some of you have taken notes periodically throughout this trial. I want to emphasize to you, as you are about to begin your deliberations, that notes are solely to assist you as an aid to your memory. Do not share your notes with other jurors during deliberations. Notes that any of you may have taken may not be given any greater weight or influence than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence. All jurors' recollections are equal. If you can't agree on what you remember the testimony was, you can ask to have the transcript read back.

### D.    Duty to Deliberate; Unanimous Verdict

Shortly, you will retire to decide the case. You are to discuss the case only when all jurors are present. A majority of jurors together are only a gathering of individuals. Only when all jurors are present do you constitute the jury, and only then may you deliberate.

You must base your verdict solely on the evidence and these instructions as to the law, and you are obliged on your oath as jurors to follow the law as I instruct you, whether you agree or disagree with the particular law in question.

21

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for any party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

Remember at all times, you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case. Nothing said in these instructions and nothing in any verdict form prepared for your convenience is meant to suggest or convey in any way or manner any suggestion or hint as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

If you are divided, do *not* report how the vote stands and if you have reached a verdict, do not report what it is until you are asked in open court.

### E.    Verdict Form

In a few moments, I will give you the verdict form with the questions for you to answer and you will retire to deliberate on your decision. As I stated, the questions are not to be taken as

any indication that I have any opinion as to how they should be answered. I have no such opinion, and even if I did, it would not be binding on you.

You should answer every question except where the verdict form indicates otherwise. You should also proceed through the questions in the order in which they are listed and follow all instructions. Remember, all answers must be unanimous.

### F.    Return of Verdict

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it, and advise the marshal outside your door that you are ready to return to the courtroom.

Each of you must be in agreement with the verdict which is announced in court. Once your verdict is announced and officially recorded, it cannot ordinarily be revoked.

## V.    CONCLUSION

In conclusion, ladies and gentlemen, I am sure that if you listen to the views of your fellow jurors, consider all of the evidence, apply your common sense, and follow my instructions on the law, you will reach a fair verdict here. Thank you for your time and attention.

Court Exhibit 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN BANYAN,

                              Plaintiff,

          -against-                                        Case No. 17-cv-04942 (JLR)

POLICE OFFICER CRAIG SIKORSKI,
POLICE OFFICER JOSEPH TENNARIELLO,

                              Defendants.

JENNIFER L. ROCHON, United States District Judge:

## **VERDICT FORM**

**All Jurors must agree unanimously to the answers to each question.  Please proceed through the questions in order and follow all directions.**

**Question 1**

Has plaintiff proved by a preponderance of the evidence that he was subjected to excessive force on March 20, 2016 by:

    a.   Officer Craig Sikorski:        No _____       Yes _____

    b.   Officer Joseph Tennariello:    No _____       Yes_____

*If you answered "No" to both parts of Question 1, your deliberations are finished. Please proceed to the final page and sign this form.*

*If you answered "Yes" to either of the questions above, proceed to Questions 2.*

**Question 2:**

(a)    Has plaintiff proved, by a preponderance of the evidence, that he suffered any compensatory damages as a result of the injury or harm proximately caused by either Defendant?

           No_____       Yes_____

(b)    If you answered YES to Question 2a, what amount of money should plaintiff be awarded in compensatory damages that would fairly and adequately compensate plaintiff for any injuries proximately caused by the excessive force used?

      $_____

(c)    If you answered YES to any part of Question 1, but you did not award <u>any</u> compensatory damages to plaintiff in Questions 2(b), you must enter a nominal damages award of $1.

      $_____

*(Please proceed to Question 3)*

**Question 3:**  If you answered YES with respect to either defendant listed in Question 1, has plaintiff proved, by a preponderance of the evidence, that he is entitled to receive punitive damages from that defendant:

a.   Officer Craig Sikorski:        Yes _____        No _____

    If you answered YES regarding this defendant, state the amount of punitive damages that you award plaintiff: _____

b.   Officer Joseph Tennariello:   Yes _____        No _____

    If you answered YES regarding this defendant, state the amount of punitive damages that you award plaintiff: _____

*(Please proceed to the last page, page 4)*

3

**You have completed all questions.  Please proceed to the signature line below.**

**SIGNATURE LINE**

Foreperson, please sign and date the verdict sheet if it represents the unanimous verdict of all jurors.  Then, without disclosing your verdict, advise the Marshal, that you have reached a verdict and are ready to return to the courtroom to announce your verdict.

_____
Foreperson


Dated:     _____

Court Exhibit 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN BANYAN,

                    Plaintiff,

        -against-

POLICE OFFICER CRAIG SIKORSKI,
POLICE OFFICER JOSEPH TENNARIELLO,

                    Defendants.

Case No. 17-cv-04942 (JLR)

JENNIFER L. ROCHON, United States District Judge:

**SPECIAL VERDICT FORM**

**The Court requests that you answer the following questions. All of the questions concern the incident on March 20, 2016 about which you heard evidence at trial. Your answers to these questions must be unanimous.**

1. Did Defendant Craig Sikorski reasonably believe, even if mistaken, that Plaintiff was resisting arrest on March 20, 2016?

    Yes _____        No _____

2. Did Defendant Joseph Tennariello reasonably believe, even if mistaken, that Plaintiff was resisting arrest on March 20, 2016?

    Yes _____        No _____

3. Prior to using any force against Plaintiff on March 20, 2016, did Defendant Craig Sikorski reasonably believe, even if mistaken, that Plaintiff refused to cooperate with police officer instructions?

    Yes _____        No _____

4. Prior to using any force against Plaintiff on March 20, 2016, did Defendant Joseph Tennariello reasonably believe, even if mistaken, that Plaintiff refused to cooperate with police officer instructions?

    Yes _____        No _____

**You have completed all questions.  Please proceed to the signature line below.**

**SIGNATURE LINE**

Foreperson, please sign and date the verdict sheet.  Then, without disclosing your verdict, advise the Marshal, that you have reached a verdict and are ready to return to the courtroom for the announcement of your verdict.

_____
Foreperson


Dated:         _____

3

**17-cv-04942-JLR Banyan v. Sikorski et al**

**Date:** 4/11/25

**Time:** 12:52 pm

**Signature of Foreperson:**

The jury requests the testimony from officers Sikorsky and Tennariello as they relate to the punching of Mr. Banyan.

We also request both officers previous depositions as they relate to punching Mr. Banyan.

EXHIBIT
8
4/11/2025

PENGAD-Bayonne, N.J.

P49EBAN2                        Tennariello - Direct

1   Q.  Okay.  As he appears to you today, does he appear to be

2   between 235 and 250 pounds?

3   A.  Again, hard for me to say.  He's definitely 210-plus, in my

4   opinion.

5           MS. DAINOW:  Note my objection, your Honor.

6           THE COURT:  Overruled.

7           You may be seated, Mr. Banyan.

8           MR. RUSHING:  Apologies.

9           Thank you, Mr. Banyan.

10          Thank you, your Honor.

11  Q.  Did you take Mr. Banyan's size into account when you were

12  deciding how much force to employ?

13  A.  No.  Initially, I took the point of him not listening to my

14  direct orders into the account of why I pushed him in the

15  direction of the wall.  But as the situation progressed, his

16  size did take an effect on how much force was used.

17  Q.  Okay.

18          MR. RUSHING:  Your Honor, permission to read in

19  page 89, lines seven through ten?

20          THE COURT:  One moment.

21          I don't allow -- give me a moment.

22          I don't allow portions of question and answer, so if

23  you want to do the entire question and answer you can do that,

24  or you can move along.  It's up to you.

25          MR. RUSHING:  Understood, your Honor.  Where would you



**EXHIBIT**
**9**

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

 1   like it to be?
 2         THE COURT:  It just has to be a full question and a
 3   full answer, and I see the --
 4         MR. RUSHING:  Understood.
 5         THE COURT:  -- I see what you're referring to but it
 6   needs to be the complete question and answer.
 7         MR. RUSHING:  Okay.  It's a little bit long.  May I
 8   just take a moment to read the full answer to ascertain whether
 9   we're going to try to enter that?
10         THE COURT:  Yes.
11         MR. RUSHING:  Thank you, your Honor.
12         Okay.  Your Honor, I think that we would move to put
13   in 88:21 through 93.  Would that be your Honor's understanding
14   of the entire question and answer?
15         THE COURT:  Yes.
16         MR. RUSHING:  Thank you, your Honor.
17         And is that permissible?
18         THE COURT:  Yes.
19         MR. RUSHING:  Thank you, your Honor.
20   "Q.  And so what did you do then?
21   "A.  Well, I was trying to keep control of his left hand
22   because that could be -- you know, that cuff could be conceived
23   as a weapon and he was swinging it.  He was swinging it towards
24   me, swinging his hands down toward me and just swinging it
25   around.  Just anything to stop me from keeping control of it.

 1    At that point I had thought about using, you know, OC spray,

 2    which is pepper spray, just because at this point he was

 3    resisting and he was a lot bigger than me, so I couldn't reach

 4    his --

 5                THE COURT:  Read that again.  You just missed a --

 6                MR. RUSHING:  I missed a word?

 7                THE COURT:  Yeah.

 8                MR. RUSHING:  Apologies.  Okay.

 9    "Q.  -- OC spray, which is pepper spray, just because at this

10    point he was resisting and he was a lot bigger man than me.

11                MR. RUSHING:  Apologies.  I see that now.  That was

12    unintentional.

13    "Q.  -- he was a lot bigger man than me so I couldn't reach his

14    hand.  I couldn't, you know, keep control of that cuff, and my

15    biggest fear was getting hit with that because essentially

16    that's a weapon at this point.  Like I said, I had, you know,

17    started to go through the options in my head of, you know, how

18    to take the next skep.  And OC spray wouldn't have worked

19    because we were just too close to each other and, you know, I

20    was still trying to maintain that hand.  So, to pull OC spray

21    out and spray him, you know, and myself -- spray him, you know,

22    myself and him would have gotten sprayed.  It wouldn't have

23    done any good as far as gaining compliance.  So, it was at that

24    point, after I had exhausted all -- you know, I wasn't

25    obviously going to use my gun, that's not where we were at this

P49EBAN2                      Tennariello - Direct

1    point, that's when I struck Mr. Banyan in order to gain

2    compliance.

3              THE COURT:  Read the last sentence again.

4    "Q.  That's when I struck Mr. Banyan in order to try to gain

5    compliance.

6              THE COURT:  Thank you.

7              MR. RUSHING:  Thank you, your Honor.

8    Q.  Does that refresh your recollection about whether

9    Mr. Banyan's size was part of your calculous when determining

10   how much force to deploy?

11   A.  Yes.

12   Q.  And did you take into account his size?

13   A.  Yes.  Still do.  Just because him and I are both five-ten

14   doesn't mean his arms don't reach higher than mine do.  And at

15   that point, him holding the cuff above my head, the one cuffed

16   hand, I was basically jumping to try to gain control of it.

17   So, just because we're the same size, you could also take into

18   account the pitch of the sidewalk or anything like that.  But I

19   could tell you that at the time his arms were higher in

20   proximity than my arms.  So, height maybe not being taken into

21   account, I knew that I was not reaching that handcuffed hand.

22   Q.  Okay.  Thank you.

23              So, what happened after you pushed Mr. Banyan towards

24   the wall, in your words?

25   A.  I pushed Mr. Banyan towards the wall, and at this point he

P49EBAN2                         Tennariello - Direct

1    MS. DAINOW:  I'm sorry.  Objection, your Honor.  If we
2    could just have that read back one more time.  I think there
3    might have been an incorrect word that was stated.
4         THE COURT:  I think it may be concentrated on.
5         Is that correct with the witness?
6         THE COURT:  That's correct, concentrated.
7         THE COURT:  Okay.
8         MS. DAINOW:  Thank you.  Thank you.
9         MR. RUSHING:  Thank you all.
10   Q.  Okay.  So, did you at any point punch Mr. Banyan in his
11   face?
12   A.  Yes.
13   Q.  Can you tell me what led up to that?
14   A.  When Mr. Banyan was up against the wall, I was able to get
15   one handcuff on his hands.  At this point he was screaming,
16   cursing, he turned around and no longer was facing the wall but
17   was now facing me, but at this point now he has a handcuff on
18   his hand.  In our practice and our training, that could be used
19   as a weapon against us, so now he's handcuffed on one hand,
20   still screaming at me, cursing at me, and swinging his arms and
21   hands down in my direction.
22   Q.  Okay.  And so you punched him in the head?
23   A.  That's correct.
24   Q.  And at that point, had he made any contact with you?
25   A.  Not with the handcuff, no, but the arms and the -- the arms

P49EBAN2                    Tennariello - Direct

1    were swinging in my direction, and I was doing my best to keep

2    control of that handcuffed arm that was the -- what I was

3    concentrating on.

4    Q.   Had his arms made contact with you at that point?

5    A.   I don't -- nothing that was -- that stands out in my mind,

6    no.

7    Q.   Okay.  After you punched Mr. Banyan, what happened?

8    A.   At this point Officer Sikorski had come over to help -- to

9    assist with me because I was struggling with him.  He was

10   definitely overpowering me, and like I said, now he had that

11   handcuff on his hand, so that's what happened next.

12   Q.   So, why -- withdrawn.

13            When Officer Sikorski came over, did you feel that was

14   necessary?

15   A.   Yes.

16   Q.   Okay.  And why did you feel that was necessary?

17   A.   Because I was being completely overpowered by Mr. Banyan,

18   and that situation is not in control until that second handcuff

19   is on that person, no matter what they did.  So, he saw me

20   struggling and that was important.  I would have never been

21   able to do it myself.

22   Q.   When you punched Mr. Banyan in the head, did you consider

23   any alternatives?

24            MS. DAINOW:  Objection.  Mischaracterization of

25   testimony.

1          THE COURT:  Overruled.

2   A.   Yes.  As you read from my testimony, yes, I ran through

3   whether OC spray would work, which is a chemical spray that

4   would -- it's just a little messy, though.  It could get in his

5   eye -- we are very close to each other and I was concentrating

6   on not losing control of, as best I can, that handcuffed arm.

7   So, OC was the first thing that came to my mind, and that gets

8   in everybody's eyes sometimes and I think it would just

9   escalate the situation rather than make it end more safely,

10  which would be just to get him into custody and get that second

11  hand handcuffed.

12  Q.   Okay.  So, you first considered OC spray.  Was the next

13  option you considered punching him in the head?

14          MS. DAINOW:  Objection.

15          THE COURT:  Overruled.

16  A.   It's not just what I considered, it was the only thing that

17  I was able to do because I obviously wasn't going to pull out

18  my gun.  That's not where that situation or escalation of force

19  was.  But I was trying to maintain the upper part of his body,

20  and all I had was my right hand so I either had OC or a gun on

21  that side of my belt, and neither of those were, in my mind,

22  going to be effective in the correct way.

23  Q.   Okay.  So, the only three options in your mind at that time

24  were shooting -- or I should -- withdrawn.

25          At that time, the only three methods you felt you had

P49EBAN2                        Tennariello - Direct

1    to deploy were your firearm, striking him in the head, or using

2    OC spray; is that fair?

3    A.   That would have been all I was able to access because I did

4    have a baton on my left side, if I remember correctly.  But all

5    I typically used to keep on my right side where my OC spray and

6    my firearm, and I had my left arm doing my best to maintain

7    that handcuffed arm while he was swinging it around.

8    Q.   Understood.  So, by your testimony, you couldn't reach your

9    baton but you could reach your firearm and your right hand was

10   available which made it available for striking; is that correct

11   to say?

12   A.   That's correct.

13   Q.   Okay.  But did you consider striking him somewhere that was

14   not in his head?

15   A.   I considered it's just -- it was a -- it's context based.

16   So, I was holding the upper part of his body.  It would be

17   weird of me to try to pull away from that left hand.  My main

18   concern was not losing control of that left hand, so I was on

19   the upper part of his body, so that was why I deemed the head

20   the closest proximity for me to not pull that left hand off of

21   his cuffed hand, so I kind of just stayed on his upper body.

22   So, that was why that was the -- I was trying to gain pain

23   compliance and maybe get him into custody by that method, yes.

24   Q.   Have you ever been punched in the stomach?

25   A.   Have I ever been?  Yes.

P49EBAN2                         Tennariello - Direct

1   Q.  Did you double over?

2   A.  Not terribly, but it doesn't feel great.

3   Q.  Did you double over a little bit?

4           MS. DAINOW:  Objection; relevance.

5           THE COURT:  Overruled.

6   A.  Sure.

7   Q.  Okay.  So, your right hand at this moment, did you have the

8   option to punch him in the stomach?

9   A.  I could have punched him in the stomach, sure.

10  Q.  Okay.  And did you consider that that would have been a

11  less forceful alternative?

12  A.  It's not that I considered it to be a less forceful

13  alternative.  Like I said, I didn't want to pull -- let him

14  gain even an inch with that left land, so I didn't want to pull

15  my left hand down to punch lower.  I just kept everything on

16  the upper half of his body.

17  Q.  Can you explain to me how it would have required you to

18  pull your left hand down in order to punch someone your height

19  in the stomach --

20  A.  Sure.

21  Q.  -- with your right hand?

22  A.  Sure.  Because I was already on my tippytoes and jumping

23  trying to gain control of his hand and keep control of his

24  hand.  So, it would be weird for me to go back flat-footed to

25  try to punch him lower when I'm already squared off with the

P49EBAN2                    Tennariello - Direct

1     upper half of his body trying to maintain control, like I said,
2     of his hands that were above his head.  So -- and also try to
3     avoid getting hit by that handcuff, which was my main concern
4     for myself.
5     Q.  So, it's your testimony that you punched him in the head
6     while you were jumping?
7     A.  That's not my testimony.  I said that's what I was doing to
8     try to keep control of that handcuff.
9     Q.  Okay.  So, you were on your tippytoes then?
10    A.  I was definitely at points on my tippytoes and jumping to
11    try to maintain and keep control of that arm that he was
12    swinging around, mainly because, I mean -- ultimately to get
13    him in handcuffs -- the other handcuff and to get him to gain
14    compliance, but to also not get hit in the face with a steel
15    handcuff.
16    Q.  Was Mr. Banyan ever taken to the ground?
17    A.  Yes.
18    Q.  Can you describe how that happened?
19    A.  Yes.  Eventually backup arrived.  After -- it wasn't the
20    initial location.  Mr. Banyan actually, after officers -- well,
21    Lieutenant Sikorski came over to help me, he kind of dragged us
22    in a way.  As we were trying to stop him from moving, he was
23    moving along the wall and he was actually able to overpower us
24    and drag us along the whole building, and that's how we wound
25    up in front of Starbucks.  Backup arrived and they assisted us

1

2

3

4                    (In open court; jury present)

5                    THE COURT:  Mr. Rushing, you may continue.

6    BY MR. RUSHING:

7    Q    Detective Tennariello, we are back.  I'm sure you're aware

8    that you're still under oath.

9                    Did officer -- I'm going to call him officer, may not

10   be correct anymore.  Did Officer Sikorski punch Jonathan Banyan

11   in the encounter we've been discussing?

12   A    I don't know what Sikorski did.  I didn't see him punch

13   him.

14   Q    You didn't witness Sikorski punch Mr. Banyan?

15   A    No.  I was concentrating on that handcuff.  I didn't really

16   look away from that.

17   Q    Did you witness detective Sikorski striking Mr. Banyan in

18   any way?

19   A    Again, not that I noticed, but I wasn't paying attention to

20   what he was doing.

21   Q    So you did not see what Sikorski did at all?

22   A    No.

23   Q    Okay.  Could you tell me a little bit more about the

24   controlled takedown we discussed for a moment.  Who in your

25   memory initiated that?

P49JBAN3                        Tennariello - Direct

1   Q   Okay.  About how many punches did you land on Mr. Banyan?

2   A   One.

3   Q   Only one?

4   A   Only one.

5   Q   And how many strikes?

6           MS. DAINOW:  Objection.

7           THE COURT:  Overruled.

8   A   I punched him one time.

9   Q   You punched him one time and you never struck him in other

10  ways or other areas?

11  A   No.

12  Q   Okay.

13          MR. RUSHING:  Just one moment, your Honor.

14  Q   At what point did Mr. Banyan start resisting?

15  A   Mr. Banyan started resisting from the second that I told

16  him to get against the wall.  He didn't listen.

17  Q   Okay.  And so that was the moment you got out of the car?

18  A   Yes.

19  Q   And was he resisting before that?  I'm sorry.  I meant to

20  say after.  I was looking at a word.  Let me withdraw and

21  rephrase.

22          Did he ever stop resisting after that point?

23  A   The only point that there was no -- with the exception of

24  screaming and cursing the entire time, at the one point where

25  he did, I was able to get the one handcuff on him.  Probably be

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1             MS. DAINOW:  Objection.

2             THE COURT:  Ground?

3             MS. DAINOW:  Vague.  I mean, there's been a lot of

4    testimony about --

5             THE COURT:  I don't need anything more than "vague."

6    Thank you.  That's perfect.

7             Overruled.  Go ahead.

8             THE WITNESS:

9    A   Can you repeat the question.

10   Q   After Mr. Banyan went to the ground, why was it difficult

11   for you to place him in handcuffs?

12   A   He was still irate, actively resisting, screaming his head

13   off.  He was laying on his arms to the point where we couldn't

14   get them out from underneath him, kicking his feet, rolling

15   back and forth, just took a lot to get him in handcuffs.

16   Q   Okay.  So Mr. Banyan was taken to the ground, and after

17   that at some point he was laying on his arms?

18   A   Yes.

19   Q   Okay.  When he was standing up, was it possible for him to

20   be laying on his arms?

21   A   When he was standing up, could he be laying on his arms?

22   Q   Correct.

23   A   No.

24   Q   Thank you.  One moment.

25             I earlier asked you how many times you struck

1    Mr. Banyan in total, and is it correct that you said one time?

2    A    Yes.

3    Q    Does that include after Mr. Banyan was on the ground?

4    A    Yes.

5    Q    Okay.

6              MR. RUSHING:  I don't believe I have any more

7    questions for this witness right now.  Thank you very much,

8    Detective Tennariello, for your honesty and your time.

9              THE COURT:  Thank you very much.  Cross-examination or

10   direct?

11             MS. DAINOW:  Yes.  Thank you, your Honor.

12             THE COURT:  You may proceed.

13             MS. DAINOW:  Thank you, your Honor.

14   CROSS-EXAMINATION

15   BY MS. DAINOW:

16   Q    Good morning, Detective Tennariello.

17   A    Good morning.

18   Q    You were asked a lot of questions by plaintiff's counsel.

19   I just want to follow up on a few of them.

20             You testified you were the driver.  How were you able

21   to respond so quickly if you were driving the car?

22   A    Respond to?

23   Q    How were you able to respond to the events that unfolded?

24   A    With?

25   Q    With respect to the plaintiff.

1    A    He wasn't giving up, didn't want to get arrested, and

2    didn't care about my safety and maybe his as well.

3    Q    Did you perceive the way he was acting to be -- withdrawn.

4            Did you perceive him to be in any kind of stance at

5    that point?

6    A    Hard to say.  It wasn't an inviting stance.  It was -- you

7    know, he was squared up with me, and just like I said, holding

8    his hands as high as he possibly could to stop me from getting

9    control of them.

10   Q    And as you said before, the handcuff was made of steel; is

11   that right?

12   A    Yes.

13   Q    Okay.  After he was wildly -- withdrawn.

14           After he was swinging the handcuff in the air, what

15   did you do?

16   A    At that point, I -- that's when I had went over the options

17   of the next level of force that I could use.  So try to gain

18   compliance, pain compliance at this point would be my next

19   option.  And like I said before, I didn't -- OC spray or the

20   chemical spray wouldn't be effective there.  It would have been

21   all over everybody.  We were just too close to each other.  And

22   obviously not a firearm.  That's outlandish.  So the next point

23   I -- that's when I struck him.

24   Q    And just to be clear, how many times did you strike him?

25   A    Once.

P49JBAN3                          Tennariello - Cross

1    Q    And where did you strike him?

2    A    In the face/head area.

3    Q    Could you be any more specific?

4    A    I want to say maybe the left side of his face, head.

5    Q    And just to be clear for the jury, until both hands of a

6    suspect are handcuffed, who is in danger?

7    A    Everybody.

8    Q    And so right before you punched him that one time, was he

9    behaving in the same manner that you've described?

10   A    Yes.  He was screaming and cursing and, like I said,

11   swinging his arms.  Nothing changed.

12   Q    And you were still trying to gain control of the handcuff

13   at this point?

14   A    Yes.

15   Q    Did you need help at this point?

16   A    At that point, Craig Sikorski came over and tried to aid me

17   in getting that second handcuff on.

18   Q    How exactly did he help you?

19   A    He came over and he was trying to gain control of the -- so

20   now that he had one side of the body, I was able to concentrate

21   more on the cuffed hand.  Because like I said, that was my main

22   priority, not getting hit with that.  And he was pretty much

23   doing the same thing as me, trying to just gain control of that

24   arm.  That was the help that he was giving me.

25   Q    So were each of you on either side of plaintiff or

1    get us -- at this point from what we were holding onto his

2    clothing, any which way we can, he was kind of spinning along

3    the building to try to like almost roll us off him, like, get

4    our grip looser and was kind of like kicking his feet back and

5    just flailing and swinging every, like, part of his body, his

6    arms and his legs.

7    Q    How many times did he swing his arms?

8    A    The entire time until we actually were able to -- until

9    eventually when he was on the ground.

10   Q    Was he swinging them at you?

11   A    At me, away from me, in my direction, just all over the

12   place.

13   Q    Okay.  And when you said he was swinging them all over the

14   place, would it be fair to say -- withdrawn.

15         Did you observe him swinging them in Officer

16   Sikorski's direction at that point?

17   A    Again, I couldn't really see that side of the body where I

18   was kind of concentrating on my own side.

19   Q    Just to be clear, you only punched him one time?

20   A    That's correct.

21   Q    In the face?

22   A    Correct.

23   Q    Never in the body?

24   A    No.

25   Q    You didn't strike him at any other time during this entire

1    interaction?

2    A    No.

3    Q    What effect did you observe your punch to have on him?

4    A    Zero.

5    Q    You said that he was dragging you.  Can you describe for

6    the jury what you mean by that.

7    A    Sure.  Like I was saying before, we were trying to keep

8    hold of his clothing whichever way possible.  And he was moving

9    along that building, along the storefront.  And when I say

10   dragging, we weren't on the floor and him pulling us, you know.

11   But our feet were planted trying to keep him from going one

12   way, and he was just pulling us in the way that he was going

13   while still swinging his arms and doing the whole thing he was

14   doing.

15   Q    While he was dragging you, were you actively trying to use

16   any part of your body to stop him from doing that?

17   A    It was mostly just trying to not let go of his clothes

18   because at that the point we didn't want him to get away from

19   us.  Now he starts running.  Now it's a whole different

20   scenario, and he's running away from us.  And plus, we have a

21   handcuff on him.  The whole point is to get the second handcuff

22   on him.  So the most I could say, I planted my feet and just

23   held on to his clothing and, you know, his sleeves as tightly

24   as I possibly could.

25   Q    And you said you were trying to get handcuffs on him to at

P49EBAN4

BY MR. RUSHING:

Q.   Detective Tennariello, if you had not issued orders to the plaintiff to get against the wall, would you have pushed him against the wall?

          MS. DAINOW:  Objection.

A.   No.

          THE COURT:  Overruled.  It's cross-examination.

          Go ahead.

A.   No.

Q.   Okay.  So, you agree that issuing orders would have been the correct thing to do in that situation?

          MS. DAINOW:  Objection.

          THE COURT:  Overruled.

A.   Yes.

Q.   You have testified that after you punched him in the head, you did not punch him or strike him again; is that fair to say?

A.   Yes.

Q.   What were you doing if you weren't striking him?

A.   Struggling to control the cuffed hand and try to still not get hit by the other hand as well.

Q.   Can you go into a little bit more detail?

A.   Sure.  I was jumping up and down, holding onto the cuffed hand by the clothing or whatever I could get my hands on while also trying with my other hand to control the other hand as well.

P49EBAN4

1   Q.  Okay.  So, would you say you were grappling?  Is that fair?

2   A.  No.

3   Q.  Okay.  Would you --

4   A.  I was just doing anything I can to maintain control of his

5   arms by his clothing or by any means necessary.

6   Q.  But not -- any means necessary, not including punching.

7   A.  Correct.

8   Q.  Okay.  So, we've heard testimony that you are approximately

9   the same size as Mr. Banyan.  Without having had --

10              MS. DAINOW:  Objection.

11              THE COURT:  Ground?

12              MS. DAINOW:  That wasn't -- should we sidebar?  I know

13   your Honor doesn't want me to explicitly state the grounds in

14   front --

15              THE COURT:  That's okay.

16              MR. RUSHING:  I can rephrase the question and maybe I

17   can avoid the objection?

18              THE COURT:  Thank you.  Go ahead.

19   Q.  You've previously testified that you believe now that you

20   are approximately the same height as Mr. Banyan; is that fair?

21   A.  Yes.

22   Q.  Okay.  And you've testified earlier, and tell me if this is

23   correct, that you believe now that you and Mr. Banyan are

24   approximately the same weight?

25              MS. DAINOW:  Objection.

P49EBAN4

1          THE COURT:  Overruled, overruled.

2          Go ahead.

3    A.    Sure.  I mean, I guess if that person gets their jaw broken

4    or gets punched in the temple or something like that, that

5    would take a little while to heal, sure.

6    Q.    Have you ever heard of someone sustaining a similar-type

7    injury -- and I would just refer back to the previous question

8    for that standard -- but from pepper spray or OC spray, as you

9    have called it?

10         MS. DAINOW:  Objection; vague.

11         THE COURT:  Overruled if you can answer.

12   A.    Not to my knowledge.  I don't know.  I mean, I'm sure along

13   the lines there are been people who are maybe allergic to the

14   chemicals or something of that nature, but I personally -- no,

15   I have never come across that.

16   Q.    Okay.  So, when you elected to punch Mr. Banyan instead of

17   using the OC spray, isn't it true that you were really

18   considering your own safety more than Mr. Banyan's?

19         MS. DAINOW:  Objection.

20         THE COURT:  Overruled.  It's cross.

21   A.    No, that's not true at all.

22   Q.    Okay.  So, if there was no risk to you getting the OC spray

23   in your eyes, would you have deployed it instead?

24   A.    It's -- again, it's a situation-by-situation basis.  We

25   were way too close to each other, so --

P49EBAN4

1   Q.  So, even if the OC spray may have been safer, you still may

2   have elected to punch him in the head.

3   A.  The factor that we're missing here is that he was

4   handcuffed and I wasn't going to let go of that handcuff, so I

5   was never going to step back and OC spray him.  And I was going

6   to keep my hand on his as long as I possibly could.

7   Q.  Okay.  So, Jonathan's safety was not what convinced you to

8   use the OC spray.

9   A.  No.  Ultimately, it's everybody's safety.  Once he's in

10  handcuffs -- it's everybody's safety; mine, his, and everybody

11  around us.

12  Q.  Is it fair to say -- withdrawn.

13          Did you previously testify that your knee injury was a

14  result of Mr. Banyan being taken down to the ground?

15  A.  My knee injury was at some point, when I hit my knee on the

16  ground, whether it be when we went down to the ground initially

17  or when we were on the ground, that's when it happened.  In the

18  entire struggle.

19  Q.  Okay.  So, did Mr. Banyan take himself to the ground?

20  A.  No.

21  Q.  Okay.  It was other officers that took him to the ground?

22  A.  No.  Mr. Banyan took me to the ground with him.

23  Q.  Okay.  But other officers took Mr. Banyan to the ground.

24  A.  Correct.

25  Q.  Okay.  Can you please explain to me how a vest that doesn't

P49EBAN4                          Sikorski - Direct

1    out the situation.  We have to place you in handcuffs.  Calm

2    down.  Turn around.  Et cetera.

3    Q.  And do you think this effort to calm him down was working

4    at all?

5    A.  Initially, no, and then it seemed to have started to work.

6    Q.  So, when it started to work, did you to there until you had

7    defused the situation?

8    A.  No.  Once it started to work, I left and went to the other

9    two individuals with Lieutenant Rule because I thought the

10   situation was calming down to where Officer Tennariello could

11   handle Mr. Banyan alone.

12   Q.  Did Mr. Banyan and Officer Tennariello -- withdrawn.

13            Did you witness Officer Tennariello strike Mr. Banyan?

14   A.  Yes.

15   Q.  Where did he hit Mr. Banyan?

16   A.  I believe he punched him in the face.

17   Q.  Can you describe -- please describe what happened to the

18   encounter after that instance of violence.

19            MS. HOLOHAN:  Objection.

20   A.  Well, if you'll allow me --

21            THE COURT:  I'm going to sustain the objection.

22            Ask the question again, please.

23   Q.  How did the encounter change after Officer Tennariello

24   punched Mr. Banyan in the face?

25   A.  If you'll allow me, there's a little bit between the time

1    that -- the initial time that we had spoken about.  So, if I

2    could fill in the gap as to when I thought he was compliant as

3    to when -- or seemingly compliant as to when the punch

4    happened, there was a substantial amount of information that

5    transpired in-between, if you'll allow me.

6              MR. MITCHELL:  I defer to your Honor.  I think we've

7    heard a lot about that time already, but it's up to you and the

8    witness.

9              THE COURT:  You can answer the question in the best

10   way that you can.  Go ahead.

11   A.   So, as I said, I went over to Lieutenant Rule to try and

12   handcuff the other -- one of the other individuals that we had

13   stopped.  I went to handcuff that person.  As I reached for my

14   handcuffs, I heard the screams getting louder and the situation

15   started to get more and more volatile over by Officer

16   Tennariello and Mr. Banyan.  That alerted me, I turned back.

17             As I was reaching -- my handcuffs are next to my gun,

18   which is on my right side, so I remember reaching for my

19   handcuffs, I turned back, saw the interaction getting --

20   rising, and then I ran back to Officer Tennariello to assist

21   with Mr. Banyan.  At that point, shortly thereafter, I had

22   noticed the handcuff and Mr. Banyan's right hand up in the air.

23   He had broken free, and there was a loose handcuff now dangling

24   up in the air.  That was shortly thereafter he was swinging at

25   Officer Tennariello, swinging at myself.  I tried to grab his

1   left arm, and that is when Officer Tennariello punched him in

2   the face.  In that timeframe.

3   Q.  Okay.  And what happened after -- what happened next?

4   A.  What happened next after Officer Tennariello punched him in

5   the face, Mr. Banyan -- the situation became much more

6   volatile, much more violent overall.

7   Q.  Eventually, did Mr. Banyan end up on the ground?

8   A.  Eventually, yes, after quite a bit of time.

9   Q.  How much time?

10  A.  I don't specifically recall, but it's, I want to say, close

11  to 90 seconds to 120 seconds.  Maybe a minute or two.  But when

12  you're physically struggling with someone, that feels like a

13  lifetime, so it's tough to actually get the -- when you're in a

14  stressful situation, your mind starts to slow down as time --

15  so, to me it felt like 20 minutes.  Maybe it was a minute,

16  maybe it was 90 seconds, but it felt like a substantial amount

17  of time, especially when you're struggling with an individual.

18  Q.  So, you have a skewed perception of time with respect to

19  the physical encounter of Mr. Banyan?

20          MS. HOLOHAN:  Objection.

21          THE COURT:  Overruled.  Sorry.  Sustained.  Excuse me,

22  sustained.

23  Q.  Did you participate in a maneuver to bring Mr. Banyan to

24  the ground?

25  A.  Yes.

P49EBAN4                          Sikorski - Direct

1   Q.  Can you describe that?

2   A.  So, other officers were summoned by Lieutenant Rule.  I had

3   asked Lieutenant Rule to call for backup.  I think my radio was

4   dead at the time.  I think the battery had died.  But also, I

5   couldn't access my radio because I was -- I didn't want to take

6   my hands off Mr. Banyan because I felt it was unsafe, so I

7   remember yelling to Lieutenant Rule to please call for backup

8   and get other officers there.

9            Once they arrived, I remember two officers exited.

10  They came from -- at this point the situation had taken us

11  quite a distance around the corner in front of Starbucks.  From

12  where we started on Greenwich Avenue in front of the TD Bank,

13  taken us around the bank to Starbucks.  That's when, at some

14  point, another van came, a marked police van, had its lights on

15  like you could see in the video, other officers got out of the

16  vehicle, they came running over to us.  I was on one side of

17  Mr. Banyan struggling with him, trying to hold onto him,

18  Officer Tennariello was on the other side, and I believe one of

19  the officers came around to his rear, Mr. Banyan's rear, and

20  lifted his legs up to take him down in a controlled manner.

21  Q.  Did you strike Mr. Banyan when he was on the ground?

22  A.  At which point?

23  Q.  At any point after this maneuver that -- in which you and

24  other officers brought him to the ground level.

25  A.  Yes.

1    Q.  Where did you hit him?

2    A.  I believe I struck him in the back and in the side, on his

3    body.

4    Q.  How many times did you hit Mr. Banyan?

5    A.  I don't recall.  Multiple.

6    Q.  Was it more than three?

7    A.  Probably, yes.

8    Q.  Do you remember what -- withdrawn.

9            What position was Mr. Banyan in when you were punching

10   him?

11   A.  I struck him multiple times in multiple positions while he

12   was on his feet and while he was on the ground, so there

13   were -- it was various points throughout the struggle.

14   Q.  Did you strike him before the maneuver that brought him to

15   the ground for the first time?

16   A.  I may have.  Like I said, the situation moved from the

17   front of TD Bank a substantial distance around the block to

18   Starbucks.  So, I may have struck him while we were on our feet

19   there.  I know I was holding onto him, holding on for dear life

20   because I didn't think we were going to be able to get him in

21   cuffs alone, and I was anxiously awaiting the arrival of

22   backup.

23   Q.  And what would the purpose of those strikes have been when

24   you were going around the corner with Mr. Banyan with, at this

25   point, no backup?

1    A.   What would the purpose of them have been?

2    Q.   Correct.

3    A.   To get him to comply, to get him in handcuffs, to bring him

4    to the ground and stop resisting and stop fighting with us.

5    Q.   So, when you testified that you punched him -- excuse me.

6    Withdrawn.

7          How many times did you punch him while he was standing

8    up before he was ever brought to the ground?

9    A.   I don't recall.

10   Q.   After he was brought to the ground for that first time, did

11   Officer Tennariello punch Jonathan Banyan as well?

12   A.   I don't recall.  I don't know what Officer Tennariello did

13   other than that first punch.  The struggle -- I know Officer

14   Tennariello was holding onto him and I was holding onto him,

15   but I can't say specifically what he did at any point.  We were

16   both attempting to bring him to the ground, I know that.  We

17   were working in conjunction trying to handcuff him.  Bring him

18   to the ground and handcuff him.

19         MR. MITCHELL:  I'd like to refresh the witness's

20   memory.  This is the trial transcript at pages 70 through 71,

21   so that would be line 25 on page 70 to line three on page 71.

22         THE COURT:  Give me a moment.

23         And so you're looking to refresh?

24         MR. MITCHELL:  If you -- yes, because he says he

25   doesn't recall.

1      THE COURT:  Okay.  You can refresh if you'd like by

2   showing him the testimony himself, not reading it aloud, and

3   see if it refreshes a recollection.

4      MS. DAINOW:  If counsel can just indicate what pages,

5   what line number again?

6      THE COURT:  It's page 70.  I'll let him give the line

7   number.

8      It looks like it is 70, line 25 to line three of

9   page 71.

10  Q.  Sergeant Sikorski, do you recall if Officer Tennariello was

11  striking Mr. Banyan while he was on the ground?

12  A.  I'm -- are you asking me if I -- if that refreshed my

13  recollection?  I'm confused as to the question.

14  Q.  Yes.  Having seen what I showed you to refresh your

15  recollection, do you recollect that Officer Tennariello -- if

16  Officer Tennariello was punching or striking Mr. Banyan while

17  he was on the ground?

18  A.  I don't recall.  I said in that testimony, "I believe," so

19  I believe at that time, and I don't have clear knowledge as I

20  sit here today or a recollection that that occurred.  In that

21  testimony I said, "I believe."

22  Q.  So, you testified -- at that time you testified that you

23  believed Officer Tennariello was striking Mr. Banyan on the

24  ground.

25  A.  I don't think I said on the ground in there either, I think

1   it says he's on his right side, and he was struggling on his

2   right side.  What he was doing over there, I can only imagine

3   that he was also doing what I was doing on the left side.  It

4   was a rapidly evolving, very violent situation.

5   Q.  That's correct, Sergeant.  I apologize for saying "on the

6   ground."

7          But you did previously testify that you believed

8   Officer Tennariello struck him --

9          THE COURT:  Just a minute.  Just a minute.

10         If you want to ask him, now that he's given testimony,

11  whether he gave the following testimony with a question and

12  answer, you may do that.

13         Thank you.

14  Q.  Did you give the following testimony under oath?

15  A.  Yes.

16         THE COURT:  Well, why don't you read it?

17         MS. HOLOHAN:  Your Honor, may I be heard?

18         THE COURT:  Yes.

19         ████████████

20         ██████████  ██████████████████

21         ██████████  ████████████████████████████████

22  ████████████████████████████████████████████████████████

23  ██████████████  ██████████████████████████████

24  ████████████████  ████████████████████████████████████

25  ████████████████████████████████████████████████

1                (In open court)

2    BY MR. MITCHELL:

3    Q.   Sergeant, did you testify as follows:

4    "Q.  Did you observe any other officers striking him in any

5    way?

6    "A.  I believe Officer Tennariello struck him a couple of times

7    in the same fashion.  His torso, rear right side."

8                THE COURT:  He's asking you if you gave that

9    testimony.

10   A.   Yes.

11               THE COURT:  Thank you.

12               Mr. Mitchell, it's about our time for a break.  Is it

13   okay that we take a break now?

14               MR. MITCHELL:  Certainly, your Honor.

15               THE COURT:  Okay.  Great.

16               We will take our afternoon break.  We'll come back in

17   about 15 minutes or so.  Let's shoot for 2:50 if that's

18   possible, and then we are still planning to go until about

19   4:00.  I'll let you know if it's going to be a little bit more

20   than that.  If you have any issue with going a little longer

21   than that, please do tell my deputy, otherwise I'm going to try

22   to keep us on time but I want to see what we can do with this

23   afternoon.

24               Thank you very much, and we'll come back at 2:50.

25               (Jury not present)

P49JBAN5                         Sikorski - Cross

1    Rule, call for backup.

2    Q    What happened as you and Officer Tennariello were trying to

3    handcuff him?

4    A    At which point?

5    Q    At this point before backup arrives.  What are you doing?

6    A    So once I am trying to get his hand behind his back and the

7    cuff is still waving and we're still relatively stationary at

8    just to the right of the pole that we were talking about

9    earlier in front of TD Bank, that lasted for a few seconds.

10   And then Officer Tennariello punched Mr. Banyan in the face.

11   From that point, as I said earlier, the situation got even more

12   volatile.

13   Q    What was plaintiff doing that made the situation volatile?

14   A    So once he got punched in the face, the -- I felt that he

15   went from physically -- just physically resisting being

16   handcuffed to actually trying to hurt both myself and Officer

17   Tennariello.  It became drastically more violent, not just the

18   resistance of the cuffs and actually trying to hurt both myself

19   and my partner.

20   Q    Did you perceive that he was trying to get away from you?

21   A    Initially, for those few seconds, no.  But then he did

22   begin to while also -- while swinging his arms, elbows,

23   punches, he did begin to try to flee as well.

24   Q    When he's trying to flee, just to be clear, where are

25   yourself and Officer Tennariello in relation to the plaintiff?

**17-cv-04942-JLR Banyan v. Sikorski et al**

**Date:** 4/11/25
**Time:** 3:13 pm
**Signature of Foreperson:**

The Jury is divided.

EXHIBIT

PENGAD-Bayonne, N.J.

10
4/11/2025

**17-cv-04942-JLR Banyan v. Sikorski et al**

**Date:** 4/11/25

**Time:** 5:04 pm

**Signature of Foreperson:** _[signature]_

Jury is still undecided. May we reconvene Monday at 9:30AM?

EXHIBIT
11
4/11/2025
PENGAD-Bayonne, N.J.

**17-cv-04942-JLR Banyan v. Sikorski et al**

**Date:** 4/14/2025

**Time:**

**Signature of Foreperson:**

Unfortunately, the Jury is still Firmly divided. Is it possible (hypothetically) For the jury to come to a verdict in relation to one officer and not For the other?

**EXHIBIT**

PENGAD-Bayonne, N.J.

12

4/14/2025

**17-cv-04942-JLR Banyan v. Sikorski et al**

**Date:** 4/14/25

**Time:** 12:20 pM

**Signature of Foreperson:**

The jury has reached a verdict.

EXHIBIT

13

4/14/2025

Court Exhibit 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN BANYAN,

                          Plaintiff,

          -against-                                    Case No. 17-cv-04942 (JLR)

POLICE OFFICER CRAIG SIKORSKI,
POLICE OFFICER JOSEPH TENNARIELLO,

                          Defendants.

JENNIFER L. ROCHON, United States District Judge:

## SPECIAL VERDICT FORM

**The Court requests that you answer the following questions. All of the questions concern the incident on March 20, 2016 about which you heard evidence at trial. Your answers to these questions must be unanimous.**

1. Did Defendant Joseph Tennariello reasonably believe, even if mistaken, that Plaintiff was resisting arrest on March 20, 2016?

   Yes _____        No _____

2. Prior to using any force against Plaintiff on March 20, 2016, did Defendant Joseph Tennariello reasonably believe, even if mistaken, that Plaintiff refused to cooperate with police officer instructions?

   Yes _____        No _____

**You have completed all questions.  Please proceed to the signature line below.**

**SIGNATURE LINE**

Foreperson, please sign and date the verdict sheet.  Then, without disclosing your verdict, advise the Marshal, that you have reached a verdict and are ready to return to the courtroom for the announcement of your verdict.


_____
Foreperson



Dated: _____

EXHIBIT
15
4/4/2025
PENGAD-Bayonne, N. J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN BANYAN,

                Plaintiff,

    -against-

POLICE OFFICER CRAIG SIKORSKI,
POLICE OFFICER JOSEPH TENNARIELLO,

                Defendants.

Case No. 17-cv-04942 (JLR)

JENNIFER L. ROCHON, United States District Judge:

## **VERDICT FORM**

**All Jurors must agree unanimously to the answers to each question.  Please proceed through the questions in order and follow all directions.**

**Question 1**

Has plaintiff proved by a preponderance of the evidence that he was subjected to excessive force on March 20, 2016 by:

a.  Officer Craig Sikorski:       No ___✓___        Yes _____

b.  Officer Joseph Tennariello:   No _____    Yes ___✓___

*If you answered "No" to both parts of Question 1, your deliberations are finished. Please proceed to the final page and sign this form.*

*If you answered "Yes" to either of the questions above, proceed to Questions 2.*

**Question 2:**

(a)      Has plaintiff proved, by a preponderance of the evidence, that he suffered any compensatory damages as a result of the injury or harm proximately caused by either Defendant?

No___✓___            Yes_____

(b)      If you answered YES to Question 2a, what amount of money should plaintiff be awarded in compensatory damages that would fairly and adequately compensate plaintiff for any injuries proximately caused by the excessive force used?

$_____

(c)      If you answered YES to any part of Question 1, but you did not award any compensatory damages to plaintiff in Questions 2(b), you must enter a nominal damages award of $1.

$1.00_____

*(Please proceed to Question 3)*

2

**Question 3:** If you answered YES with respect to either defendant listed in Question 1, has plaintiff proved, by a preponderance of the evidence, that he is entitled to receive punitive damages from that defendant:

a.   Officer Craig Sikorski:        Yes _____        No _____

If you answered YES regarding this defendant, state the amount of punitive damages that you award plaintiff: _____

b.   Officer Joseph Tennariello:    Yes _____        No _____✓_____

If you answered YES regarding this defendant, state the amount of punitive damages that you award plaintiff: _____

*(Please proceed to the last page, page 4)*

3

**You have completed all questions.  Please proceed to the signature line below.**

**SIGNATURE LINE**

Foreperson, please sign and date the verdict sheet if it represents the unanimous verdict of all jurors.  Then, without disclosing your verdict, advise the Marshal, that you have reached a verdict and are ready to return to the courtroom to announce your verdict.

_____
Foreperson

Dated:     4/14/25
_____

4

**17-cv-04942-JLR Banyan v. Sikorski et al**

**Date:** 4/14/25

**Time:** 1:48pm

**Signature of Foreperson:** _[signature]_

The jury requests clarity around question 2. Specifically regarding the language "reasonably believe"?

EXHIBIT

16

4/14/2025

PENGAD-Bayonne, N.J.

**17-cv-04942-JLR Banyan v. Sikorski et al**

**Date:** 4/14/25

**Time:** 2:25pm

**Signature of Foreperson:**

The jury has reached a verdict.

EXHIBIT

17

4/14/25

PENGAD-Bayonne, N.J.



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN BANYAN,

                     Plaintiff,

      -against-                               Case No. 17-cv-04942 (JLR)

POLICE OFFICER CRAIG SIKORSKI,
POLICE OFFICER JOSEPH TENNARIELLO,

                     Defendants.

JENNIFER L. ROCHON, United States District Judge:

### **SPECIAL VERDICT FORM**

**The Court requests that you answer the following questions. All of the questions concern the incident on March 20, 2016 about which you heard evidence at trial. Your answers to these questions must be unanimous.**

1. Did Defendant Joseph Tennariello reasonably believe, even if mistaken, that Plaintiff was resisting arrest on March 20, 2016?

   Yes _____✓_____          No _____

2. Prior to using any force against Plaintiff on March 20, 2016, did Defendant Joseph Tennariello reasonably believe, even if mistaken, that Plaintiff refused to cooperate with police officer instructions?

   Yes _____~~~~_____          No _____✓_____ E.C.

**You have completed all questions.  Please proceed to the signature line below.**

**SIGNATURE LINE**

Foreperson, please sign and date the verdict sheet.  Then, without disclosing your verdict, advise the Marshal, that you have reached a verdict and are ready to return to the courtroom for the announcement of your verdict.

_____
Foreperson

Dated:    4/14/25

3